(Rev. 5/05)

**FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

(1) Donald Boyer 082420
(Name of Plaintiff)         (Inmate Number)

1181 Paddock Rd. Smyrna DE 19977
(Complete Address with zip code)

(2) AMIR FATIR 137016
(Name of Plaintiff)         (Inmate Number)

:     0 6 - - - 6 9 4

(Case Number)
( to be assigned by U.S. District Court)

1181 Paddock Rd., Smyrna, DE 19977.
(Complete Address with zip code)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

vs.

**CIVIL COMPLAINT**

(1) Stanley Taylor

(2) Paul Howard

**Scanned-_____**   *I*   *I*

(3) Thomas Carroll, et. al
(Names of Defendants)

• • Jury Trial Requested

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

F I L E D

NOV 1 5 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**I.    PREVIOUS LAWSUITS**

A.    If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number
including year, as well as the name of the judicial officer to whom it was assigned:

Boyer v. Litdenstein, CA No. 97-363

## II.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.   Is there a prisoner grievance procedure available at your present institution?   • (•Yes) • • No

B.   Have you fully exhausted your available administrative remedies regarding each of your present claims?   • (• Yes) • • No

C.   If your answer to "B" is Yes:

1.   What steps did you take? Filed grievances r appeals where grievances weren't dismissed.

2.   What was the result? Grievances dismissed and deared

D.   If your answer to "B" is No, explain why not: _____

## III.   DEFENDANTS (in order listed on the caption)

(1) Name of first defendant: ___SEE ATTACHED___

Employed as _____ at _____

Mailing address with zip code: _____

(2) Name of second defendant: _____

Employed as _____ at _____

Mailing address with zip code: _____

(3) Name of third defendant: _____

Employed as _____ at _____

Mailing address with zip code: _____

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

2

## IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1.    SEE ATTACHED

2.

3.

## V.    RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1.    SEE ATTACHED

2.  _____

    _____

    _____

    _____

    _____

3.  _____

    _____

    _____

    _____

    _____


I declare under penalty of perjury that the foregoing is true and correct.


Signed this ____24th____ day of ____October____, 2006.

_____
(Signature of Plaintiff 1)

_____
(Signature of Plaintiff 2)

_____
(Signature of Plaintiff 3)

4

# Certificate of Service

I, Donald Beyer , hereby certify that I have served a true

and correct cop(ies) of the attached: Boyer, et al. v. Taylor, et al.

1983 Civil Lawsuit _____ upon the following

parties/person (s):

TO: Carl Danberg, Esq.

Dept. of Justice

820 N. French St.

Wilm, DE 19801

_____

TO: _____

TO: _____

_____

_____

_____

_____

TO: _____

_____

_____

_____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United States Mail at the Delaware Correctional Center, Smyrna, DE 19977.

On this 14th day of November , 2006

Donald Beyer



CERTIFIED mail

I/M Donald Boyer
SBI# 082920   UNIT R-EAST
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

7006 0810 0003 0659 5226

to the Office of the Clerk U.S.
District Court lockbox
18 Boggs federal Building
844 King Street Wilmington DL.
19801.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

Donald Boyer, Andre Johnson, Donnie Weaver, )
Willis L. Grayson II, Amir Fatir, David B. Houston, )
Nicholas Rivera, Brady Muhammad, Warren Wyant, )
William H. Woodlin, Japhis Lampkins, and )
Daniel M. Woods, )

                Plaintiffs,

          v.

C.A. No. _____ ___

                      1 0 6 -   6 8 4

Stanley Taylor, Paul Howard, Ronald Hosterman, )
Thomas Carroll, Maureen Whalen, David Pierce, )
Jenny Havel, Cpl. Krumka, Officer Morgan, Janet )
Henry, Lisa Merson, Alan Machington, Cpl. Oney, )
Michael Little, Floyd Dixon, Correctional Medical )
Services, First Medical Services, Marvin Creasy, )
James P. Satterfield, Inspector Lt. Palowski, )
Michael McCramer, and David Hall, )
                Defendants.

Civil Rights Complaint
pursuant to 42 U.S.C.
Sec. 1983



FILED

NOV 1 5 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## A. Jurisdiction

This section 1983 complaint alleges that the civil rights of plaintiffs who are incarcerated the Delaware Correctional Center ("DCC") were violated and continue to be violated by the actions of the below-named defendants, which actions were directed againstad plaintiffs at DCC during 2004-2006 A.D.

1. Defendant Stanley Taylor ("Taylor") resides or works at 245 McKee Rd., Dover, DE 19904, and is employed as "Commissioner of Corrections." This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violations of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts.

2. Defendant Paul Howard ("Howard") resides or works at 245 McKee Rd., Dover, DE 19904, and is employed as "Bureau Chief." This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violations of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts.

3. Defendant Thomas Carroll ("Carroll") resides or works at 1181 Paddock Road, Smyrna, Delaware 19977 and is employed at "Warden" of the Delaware Correctional

Center. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

4. Defendant David Pierce ("Pierce") resides or works at 1181 Paddock Road, Smyrna, Delaware 19977 and is employed as "Deputy Warden" of the Delaware Correctional Center. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

5. Defendant Janet Henry ("Henry") resides or works at 1181 Paddock Road, Smyrna, Delaware 19977 and is employed as "Captain" of the Delaware Correctional Center. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

6. Defendant Ronald Hosterman ("Hosterman") resides or works at 1181 Paddock Road, Smyrna, Delaware 19977 and is employed as "Treatment Administrator" of the Delaware Correctional Center. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

7. Maureen Whalen ("Whalen") resides or works at 1181 Paddock Road, Smyrna, Delaware 19977 and is employed as "Educational Supervisor" of the Delaware Correctional Center. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

8. Defendant Jenny Havel ("Havel") resides or works at 1181 Paddock Road, Smyrna, Delaware 19977 and is employed as "Support Services Manager" of the Delaware Correctional Center. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

9. Defendant Cpl. Krumka ("Krumka") resides or works at 1181 Paddock Road, Smyrna, Delaware 19977 and is employed as "Property Room Supervisor" of the Delaware Correctional Center. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute

and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

10. Defendant Officer Morgan ("Morgan") resides or works at 1181 Paddock Road, Smyrna, Delaware 19977 and is employed as "Property Room Officer" of the Delaware Correctional Center. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

11. Defendant Lisa Merson ("Merson") resides or works at 1181 Paddock Road, Smyrna, Delaware 19977 and is employed as "Grievance Officer" of the Delaware Correctional Center. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

12. Defendant Alan Machington resides or works at 820 N. French Street, Wilmington, DE 19801 and is employed as "State Personnel Director" of the State of Delaware. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

13. Sergeant Marvin Creasy ("Creasy") resides or works at 1181 Paddock Road, Smyrna, Delaware 19977 and is employed as "D Building Sergeant" of the Delaware Correctional Center. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

14. Cpl. Oney ("Oney") resides or works at 1181 Paddock Road, Smyrna, Delaware 19977 and is employed as "Mail Room Officer" of the Delaware Correctional Center. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

15. Lieutenant Satterfield ("Satterfield") resides or works at 1181 Paddock Road, Smyrna, Delaware 19977 and is employed as "lieutenant and inspection officer" of the Delaware Correctional Center. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

4

16. Captain Michael McCramer ("McCramer") resides or works at 1181 Paddock Road, Smyrna, Delaware 19977 and is employed as "Grievance Chairperson" of the Delaware Correctional Center. This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

17. Defendant Inspector Palowski resides or works at 245 McKee Road, Dover, Delaware 19904, and is employed as "Buildings Inspector." This defendant, acting under color of law, permitted, authorized, encouraged, supported, ordered and/or ignored the below violation of statute and the U.S. Constitution. This defendant deliberately neglected to correct the violations explained in the below counts. This defendant is sued in his individual and official capacity.

A. JURISDICTION IS INVOKED PURSUANT TO 28 U.S.C. SECTIONS 1343 (a) (3) AND 42 U.S.C. SECTION 1983.

B. NATURE OF THE CASE

1. This is a class action civil complaint filed by prisoners at the delaware Correctional Center (DCC) alleging statutory and constitutional violations of their conditions fo confinement.

C. CAUSE OF ACTION

Count 1

1. The prison showers on A, B, C, D, E and F tiers in D-Building ("Medium One") contain deadly mold and fungus which places the health of plaintiffs in peril. Plaintiffs have no choice but to take a shower since prison regulations make regular shower-taking mandatory.

2. Defendants Taylor and Howard are responsible for the operations of all phases of the Department of Correction, including the Delaware Correctional Center. Those defendants are responsible for the upkeep of the facilities, making sure inspections are conducted properly and that damaged facilities are repaired.

3. Defendant Thomas Carroll is responsible for the operation of all phases of the Delaware Correctional Center. He is responsible for the upkeep of the facilities, making sure inspections are conducted properly and that damaged facilities are repaired.

4. Defendant David Pierce is responsible for the operation of all phases of the Delaware Correctional Center. He is responsible for the upkeep of the facilities, making sure inspections are conducted properly and that damaged facilities are repaired.

5. Defendant Henry is responsible for the operation of all phases of D-Building at the Delaware Correctional Center. She is responsible for the upkeep of the facilities, making sure inspections are conducted properly and that damaged facilities are repaired.

6. Defendant Dixon is responsible for the operation of all phases of D-Building at the Delaware Correctional Center. He is responsible for the upkeep of the facilities, making sure inspections are conducted properly and that damaged facilities are repaired.

7. Defendant Creasy is responsible for the operation of all phases of D-Building at the Delaware Correctional Center. He is responsible for the upkeep of the facilities, making sure inspections are conducted properly and that damaged facilities are repaired.

7. Defendant Satterfield is responsible for the operation of all phases of D-Building at the Delaware Correctional Center. He is responsible for the upkeep of the facilities, making sure inspections are conducted properly and that damaged facilities are repaired.

9. Defendant Palowski is responsible for the inspection of all phases of all buildings, including D-Building, at the Delaware Correctional Center. He is responsible for the upkeep of the facilities, making sure inspections are conducted properly and that damaged facilities are repaired.

10. The above defendants are responsible for assuring that Department of Correction ("DOC") buildings meet health standards but have neglected to order that the mold be revoed from D-Building showers by a HAZMAT (hazardous materials) team with expert skill, experience and equipment.

11. The above defendants neglected to act and did ignore the plaintiffs' requests to remove the mold and fungus.

### Count 2

1. D-Building lacks proper ventilation. The absence of a true ventilation system, corroded coils, clogged vents and overcrowding (twice the capacity) impairs breathing, causes respiratory ailmentws and infectious diseases.

2. Defendants Taylor, Howard, Carroll, Palowski, Pierce, Henry, Dixon, and Satterfield are responsible for the violation(s) in this count.

### Count 3

1. The bathroom on D-tier has no door. The bathroom door on E-tier is covered with mold and is unfit for human habitat.

2. Both bathrooms have two urinals, three toilets, peeling paint, mold in windows and near sinks, accumulated rust, filth and dirt all over and no stalls to provide a modicum of privacy.

3. Defendants have refused to provide bleach for cleaning and helping to reduce the bacteria, mold and infectious diseases which thrive in the bathrooms.

4. Cleaning and therefore disease prevention is left to the care of a $9 per month inmate janitor who has neither the equipment nor skill in cleaning behind a population, many of whom have deadly communicable diseases like mersa, AIDS and Hepatitis C.

5. D-Building was built and designed for half the present population.

6. When D-building was double-bunked, defendants made no upgrades or changes to the building's infrastructure. Exisiting systems have been overworked and stressed beyond the breaking point.

7. Defendants Taylor, Howard, Carroll, Pierce, Palowski, Henry, Dixon, and Satterfield are responsible for the violation(s) in this count.

### Count 4

1. Plaintiffs are double-bunked for "life" in rooms designed for one individual. This violates Anderson v. Redman and fails to provide the 64 square feet of living space per man required.

2. Such double-bunking forced upon plaintiffs who were imprisoned prior to DCC's unilateral policy change to avoid compliance with Anderson violates the due process clause of the United States Constitution and the Delaware Constitution as well as ex post facto clause of the U.S. Constitution.

3. Defendants Taylor, Howard, Carroll, Pierce, Palowski, Henry, Dixon, and Satterfield are responsible for the violation(s) in this count.

### Count 5

1. The soil at DCC is contaminated with radon and other lethal gases.

2. Defendants have placed plaintiffs' lives and health at risk by forcing them to live on land with contaminated soil.

3. Defendants have failed to conduct regular, proper tests of the soil or to act to make the soil safe.

4. Defendants have failed to make results of any tests taken available to plaintiffs or the public.

Palowski?

5. Defendants Taylor, Howard, Carroll, Pierce, Henry, Dixon, and Satterfield are responsible for the violation(s) in this count.

## Count 6

1. The water in D-building is contaminated with deadly minerals, fecal matter, bacteria and other lethal disease-causing microbes.

2. There is no adequate water filtration system to purify water that plaintiffs must drink.

3. The guards and other correctional staff were instructed not to drink the water at DCC. They bring in bottled water from outside the prison.

4. The one ancient water fountain is locked outside the tiers and is not usually accessible to plaintiffs except during recreation times (about 2 1\2 hours a day).

5. Defendants have misappropriated funds intended for water treatment.

6. Defendants have failed to establish or provide clean drinking water or bathing water for plaintiffs.

7. Defendant mentioned above have placed the plaintiffs helath at risk by refusing to correct and ignoring the bove mentioned counts.

8. Defendants Taylor, Howard, Carroll, Pierce, Palowski, Henry, Dixon, and Satterfield are responsible for the violation(s) in this count.

## Count 7

1. Due to overcrowded conditions and double-bunking the noise level in D-building is extremely high. Excessive loud noise can cause ear damages and result in hearing loss.

2. Defendants Taylor, Howard, Carroll, Pierce, Henry, Dixon, and Satterfield are responsible for the violation(s) in this count.

## Count 8

1. Cells in D-building lack chairs, steel cabinets, tables, T.V. stands, and ladders for top bunks. Several men over the years have fallen from top bunks receiving back injuries, etc.

2. The lack of tables for writing letters to family, friends, the courts and the media violates the First Amendment of the U.S. Constitution.

3. Lack of cabinets places personal property at risk and violates equal protection since cabinets are provided to men in the SHU and MUH.

4. Defendants' failure to provide two T.V. stands in D-building rooms that have two occupants violates equal protection since the SHU and MHU housing units provide two T.V. stands in all double-bunked rooms.

$\ell_a\backslash \omega \text{Sc} \overrightarrow{\iota}$ ,

5. Defendants Taylor, Howard, Carroll, Pierce, Henry, Dixon, and Satterfield are responsible for the violation(s) in this count.          $\wedge$

## Count 9

1. Peeling paint, bacteria growth, fungus and mold in F-tier showers endangers plaintiffs' health.

2. F-tier houses men who are sick and handicapped. The lack of handrails in F-tier showers violates the Americans With Disabilities Act (ADA) and puts plaintiffs' health at risk from accidents from slipping and falling.          $\ell_a\backslash \omega \text{St}$ ,

3. Defendants Taylor, Howard, Carroll, Pierce, Henry, Dixon, and Satterfield are responsible for the violation(s) in this count.          $\wedge$

## Count 10

1. D-building cells and tiers are not regularly sprayed to elminate vermin, including roaches, spiders, ants, mosquitos and rodents.

## Count 11

1. Handicapped and disabled inmates lack handrails to facilitate the safe entry and exit form top bunks and showers.

2. Ladders for aged, disabled, crippled and handicapped F-tier inmates arte not provided in violation of the Eighth Amendment of the U.S. constitution.

3. Failure to provide F-tier chronic care inmates with personnel trained in mental health treatment and a nurse and/or doctor to do rounds on the chronic carte tier amounts to deliberate indifference on the part of defendants.

4. Defendants Taylor, Howard, Carroll, Pierce, Henry, Dixon, and Satterfield are responsible for the violation(s) in this count.

## Count 12

1. D-building cells have cloth mattresses which inmates take turns using when they move into a cell.

2. Bodily fluids including urine, semen and blood seeps into the mattresses and exposes plaintiffs to deadly, incurable, infectious diseases.

3. The mattresses have no waterproof covering to protect plaintiffs from disease.

4. Defendants Taylor, Howard, Carroll, Henry, Pierce, Dixon, Satterfield and Creasy are responsible for the violation(s) in this count.

## Count 13

1. D-building's exhaust and intake vents don't exist in most cells and are in a state of disrepair in the cells where they do exist.

2. The D-building cells lack a positive and negative flow in a semi-closed, double-bunked environment, contributing to respiratory diseases.

3. Defendants Taylor, Howard, Carroll, Henry, Pierce, Dixon, Satterfield and Creasy are responsible for the violation(s) in this count.

## Count 14

1. Housing mentally disabled inmates which physically disabled men on the F-tier chronic care unit violates the American With Disabilities Act.

2. Housing sane inmates with insane inmates places the lives of plaintiffs at risk.

3. Plaintiff Fatir was housed with an inmate who is a mental health patient on psychotic drugs. That inmate woke up and stabbed Plaintiff Fatir without provocation

4. The DCC administration soon returned the assailant to population and medium security.

5. Forcing sane and insane inmates to live in the same rooms violates the American With Disabilities Act, demonstrates deliberate indifference and violates the U.S. Constitution's prohibition against cruel and unusual punishment.

6. Defendants Taylor, Howard, Carroll, Henry, Pierce, Dixon, Satterfield and Creasy are responsible for the violation(s) in this count.

## Count 15

1. Forcing plaintiffs to bunk in the same rooms with sick inmates who have infectious, communicable diseases puts plaintiffs' lives at risk and violates the Eighth Amendment's prohibition against cruel and unusual punishment and demonstrates deliberate indifference on the part of defendants.

2. Defendants Taylor, Howard, Carroll, Henry, Pierce, Dixon, Satterfield and Creasy are responsible for the violation(s) in this count.

## Count 16

1. Defendants were given $20 million to renovate D-building to make it a hospital ward/chronic care unit.

2. Defendants misappropriated the funds and stuck sick, disabled inmates onto F-tier and simply called the ordinary prison tier a "chronic care unit," without providing any of the facilities that are essential to a true chronic care unit.

3. Plaintiffs' Fourth Amendment right against unlawful search and seizure and their Fifth and Fourteenth Amendment right to due process of law were violated by defendants' malfeasance.

Fixck medical)

cms,

4. Defendants Taylor, Howard, Carroll, Henry, Pierce, Havel, Dixon, Satterfield and Creasy are responsible for the violation(s) in this count.

### Count 17

1. Plaintiff Fatir achieved minimum security classification in 1987 and outside classification status in 1988. He achieved outside-off grounds status in 1991 or 1992, i.e., he was able to perform work away from the prison and did perform such tasks as delivering materials to the Attorney General's office at 820 N. French Street, Wilmington, Delaware.

2. Fatir was transferred to Arizona in 1996 and was placed in the SHU supermax upon his return to DCC in December 2004.

3. The SHU is a punishment unit for men who have been found guilty of violating serious rules and been classified to SHU pursuant to such violations.

4. Fatir's right to due process was violated by the revocation of his minimum security outside off-grounds classification status.

5. Fatir's placement in the SHU and later the MHU punishment housing units for 13 months violated the U.S. Supreme Court's ruling which prohibits placement in SHU supermax without a disciplinary hearing.

6. Placement in the SHU supermax without a disciplinary hearing violates due process and amounts to cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution.

7. Fatir's placement in the SHU was purportedly pursuant to a "new policy" created by Warden Carroll which allegedly required all people returning from out-of-state to be housed in the SHU.

8. Such a policy is arbitrary, capricious and violtive of the Eighth Amendment and the Supreme Court's ruling.

9. Defendant Carroll lacked the legal authority to place Plaintiff Fatir in SHU since Fatir had violated no rule or law. Fatir had not been convicted at the adjustment board. Placement in SHU violated Fatir's constitutional rights.

10. Since every person entering DCC from out-of-state is not put in SHU, Fatir's placement in SHU violated equal protection guaranteed by the Fourteenth Amendment of the U.S. Constitution.

12. Fatir had no write-up convictions during his stay in Arizona nor has he had any write-up convictions at all for two decades.

13. Defendants Taylor, Howard, Carroll, Hosterman, and Pierce are responsible for the violation(s) in this count.

### Count 18

1. The new "point system" of classification sentences Fatir, after the fact, to spending the rest of his life in either maximum or medium security. He can never return to the minimum classification he earned nearly twenty years ago. Fatir's perpetual restriction to maxium or medium security violates the ex post facto clause of the U.S. Constitution since Fatir was sentenced twenty-nine (29) years before the "point system" was imagined and had committed no offense to lose the minimum outside off-grounds classification already achieved.

2. Application of the "point system" to Fatir violates the Fourteenth Amendment of the U.S. Constitution which states that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

3. Because Fatir escaped 30 years ago, three points were placed on his point total. That violates double jeopardy and ex post facto since Fatir already served his sentence plus months in the hole and years of maxium security punishment for that very escape. To punish him again and deny him the minimum security classification already attained violates double jeopardy and ex post fact.

4. Defendants Taylor, Howard, Carroll, Hosterman, and Pierce are responsible for the violation(s) in this count.

## Count 19

1. All prisoners who enter DCC from out-of-state are not forced to live in SHU.

2. Placement of Fatir in SHU violates his Fourteenth Amendment right to equal protection of the laws.

3. Defendants Taylor, Howard, Carroll, Hosterman, and Pierce are responsible for the violation(s) in this count.

## Count 20

1. Books sent to Fatir were seized by the DCC mailroom staff and destroyed.

2. Fatir was never notified that the books had arrived nor why they had been seized before the destruction of his books occurred.

3. Fatir purchased The Catcher in the Rye. It was seized. He was never notified of the book's arrive.

4. The mailroom staff also seized Natural Cures They Don't Want You to Know About, Ishmael, and The Multi-Orgasmic Woman.

5. DCC lacks appropriate forms to indicate that a book is being withheld. DCC also lacks forms to be used to appeal such seizure.

6. After repeated inquiries about the book entitled The Multi-Orgasmic Woman,
the mailroom finally sent Fatir a vague notice that it had withheld "obscene material," but
would not inform Fatir of what that material was or why it had been deemed "obscene."
The mailroom would not even provide the title of the material and Fatir only later found
out that it was the book entitled The Multi-Orgasmic Woman. However, the book had
already been discarded or destroyed by the time Fatir learned what was being withheld.

7. Fatir appealed the seizure to Defendant Havel who was, at the time, the
Support Services Manager (a position which is in charge of the mailroom). Fatir wrote
three letters to the mailroom and Defendant Oney and three letters to the Support
Services Manager. The mailroom still discarded Fatir's book and falsely claimed that
Fatir never wrote to indicate what he wanted done with the book.

8. The Multi-Orgasmic Woman is not obscene. It falls well within the prison's
guidelines which state that books of an educational nature which have sexual content are
permitted.

9. Inmate Housing Rules for Medium Security at the Delaware Correctional
Center page 6 (enacted 6/8/05 and signed by Warden Thomas L. Carroll) states:
"Sexually explicit material is any pictorial or written depiction of actual or simulated
sexual acts including sexual intercourse, oral sex, and/or masturbation; any pictorial or
written demonstration, depiction, or symbolization of nudity, frontal or otherwise; and
any prmotion of sexual activity of any manner. All sexually explicit items are considered
conraband **except publications containing nudity illustrative of medical, educational,
and anthropological content and material of a news information type such as
publications covering activities of gay or religious groups. To be permitted into the**

**Delaware Correctional Center, the sexually explicit material must have scholarly value or general social or literary value.** No distinction is made between depiction of heterosexual or homosexual activity in enforcing this policy. As with all items not permitted, when a sexually explicit publication, picture, or other item is received at DCC through the mail, a notice will be sent to te inmate and the sender notifying them that the item is not permitted into the Institution. The inmate will have five days tonotify the Institution Mail Room of how to dispose of the item (donate to a charitable organization, mail out of Institution at inmate's expense, or appeal the Mail Room rejection to the Support Services Manager). Failure to notify the Mail room of the requested method of dispositon within five days will result in the item being disposed of according to the institutional operating policies" (emphasis added).

10. The Multi-Orgasmic Woman was written by world-reknown Taoist scholar and teacher Mantak Chia. It is an educational book of "scholarly value" which should never have been rejected by the DCC mailroom.

11. The Multi-Orgasmic Woman falls well within DCC's own policy of materials which are excepted by the constitutionally questionable prohibition against materials with sexual content generally.

12. DCC didn't follow its own policy because the Mail Room did not properly notify Fatir of the books having arrived nor did the Mail Room provide Fatir with the five-day opportunity to appeal the decision to reject his books.

13. Seizure of Fatir's books violates his Fourth Amendment protection against unreasonable search and seizure, his First Amendment right to read materials his jailers

may dislike and his right to due process since his books were seized and destroyed without a hearing, a chance to present his case and without proper notification.

14. Defendants Taylor, Howard, Carroll, Pierce, Havel and Oney are responsible for the violation(s) in this count.

## Count 21

1. DCC's arbitrary censorship by rejection of magazines such as Playboy, pictures and books which may have a sexual content but are not legally defined as "obscene" violates plaintiffs' First Amendment right to freedom of the press and freedom to read materials of their choice.

2. DCC's censorship is religious, not penological, in nature and therefore violates the c First Amendment's constitutional requirement of separation of church and state.

3. From the opening of DCC to approximately 2000 prisoners at DCC were permitted to receive Playboy, Penthouse, Players, Oui, Hustler and any book or magazine that did not contain actual penetration (i.e., "hardcore porn").

4. Defendants cannot prove "actual injury" caused by adhering to the Constitutionally firm principles in effect prior to relatively recent prohibition of materials which might offend the far right wing of the Christian fundamentalist movement.

5. Actions by defendants which prohibit the reading and/or viewing of publications and pictures which discuss sex or show nudity is arbitrary, capricious and reflects a right wing Southern Christian fundamentalist evangelical ultra-conservative bias.

17

6. Defendants Taylor, Howard, Carroll, Pierce, Havel and Oney are responsible for the violation(s) in this count.

### Count 22

1. DCC arbitarily decided to deny travelers checks after Jenny Havel took over the Support Services Manager's position from Joe Hudson in 2005.

2. Defendant Havel is not qualified to hold the position of Support Services Manager.

3. In Defendant Havel's ignorance of how travelers checks are to be processed she arbitrarily and capriciously decided that travelers checks are prohibited.

4. Prior to Defendant Havel's promotion to Support Services Manager travelers checks were processed the same as money orders.

5. Defendant Havel failed to provide the required 30 day advance notification before a new policy can be instituted in the Delaware Department of Correction. Such notice is mandatory and required by DCC policy and SOP.

6. Defendant Havel's rejection of travelers checks violates the Fourth Amendment of the U.S. Constitution's protection against unreasonable search and seizure.

7. Defendant Havel's occupation of a position for which she is unqualified places plaintiffs at risk and subjects them to the whmisical decision she makes to cover up for her ignorance of appropriate postal and financial procedures.

8. Prior to Defendant Havel's promotion to Support Services Manager, Fatir receive s travelers checks in both the Delaware Correctional Center and the Arizona State Prison without problem or incident.

9. Because Fatir receives travelers checks from England (where U.S. money orders are not available without paying an exhorbitant rate of exchange), denail of travelers checks, after accepting them for many years, violates equal protection as guaranteed by the Fourteenth Amendment.

10. Defendants Taylor, Howard, Carroll, Pierce, Havel and Oney are responsible for the violation(s) in this count.

## Count 23

1. Plaintiff Fatir is unable to call England on the current phone system. He has been unable to place calls to England since 2004.

2. Fatir's wife lives in England.

3. Other prisoners can call family and friends withint the U.S.A.

4. Failure to provide a means for Fatir to call his wife in England violates the Fourteenth and First Amendments of the U.S. Constitution.

5. Defendants Taylor, Howard, Carroll, Pierce and Havel are responsible for the violation(s) in this count.

## Count 24

1. DCC charges first class for all outgoing mail, regardless of whether the mail is a TV that could go parcel post, books which could go bookrate, overseas mail which could go surface mail or printed material which could go second, third or fourth class rate.

2. Forcing prisoners including plaintiffs to mail out all materials at the most expensive rate and failing to allow materials to be mailed at cheaper available rates violates the Fourth Amendment of the U.S. Constitution and the Fourteenth

Amendment's equal protection clause since all other citizens, including prisoners in every other state and U.S. territory, can utilize any of the various postage rates.

3. Overcharging for postage subjects plaintiffs to price-fixing, price gauging and monopolistic practices.

4. As wards of the state, plaintiffs have the right to have defendants conduct business affairs which use plaintiffs' money in a manner that is not exploitative of plaintiffs' captivity.

5. Defendants Taylor, Howard, Carroll, Pierce, Havel and Oney are responsible for the violation(s) in this count.

## Count 25

1. The vast majority of Plaintiff Fatir's property was withheld, discarded, destroyed and/or sent out-of-state upon his return to DCC from Arizona.

2. Defendant Morgan stated that his property was not given to him because he was housed in SHU.

3. Plaintiff Fatir is a minimum security prisoner who should never have been put in the SHU.

4. Seizure and denial of fatir's property violated the Fourth Amendment's protection against unreasonable search and seizure and due process.

5. Defendants Taylor, Howard, Carroll, Pierce, Havel, Krumka and Morgan are responsible for the violation(s) in this count.

## Count 26

1. Defendants Krumka and Morgan seized and destroyed Fatir's legal papers when he was illegally held in the SHU and/or MHU.

2. That action violated the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.

3. Defendants Taylor, Howard, Carroll, Pierce, Havel, Krumka and Morgan are responsible for the violation(s) in this count.

### Count 27

1. The DCC grievance procedure violates the District Court's ruling in <u>North Emerson West v. Redman</u>.

2. The grievance procedure violates separation of powers because the executive branch (the Delaware Department of Correction) infringes upon the judicial branch by deciding when a matter can be brought to court.

3. The grievance procedure violates plaintiffs' Sixth Amendment right of access to the courts.

4. Defendants Taylor, Howard, Carroll, Henry, Pierce, Merson and McCramer are responsible for the violation(s) in this count.

### Count 28

1. The prison phone system forces inmates to prevail upon their families to sign up with Verizon and thus pay a much higher phone rate than, for example, Cavalier which the prison formerly used as a vendor.

2. That practice amounts to price fixing and forces plaintiffs to participate in an illegal banking operation since prisoners must get their families to have money placed into a de facto savings account with Verizon if the families refuse to switch over from their long distance carrier to Verizon.

3. Defendants accrue financial benefit from forcing inmates to call via Verizon. Those benefits come in the form of kickbacks which are euphemistically called "bonuses" which DOC's top official receive (especially around Christmas time) for contracting the extremely lucrative inmate telephone system with a particular company.

4. DCC is required to refrain from exploiting its "wards of the state."

5. Forcing inmates to make calls via Verizon only violates equal protection, freedom of speech and the Fourth Amendment prohibition against unreasonable search and seizure.

6. Defendants Taylor, Howard, Carroll, Pierce and Havel are responsible for the violation(s) in this count.

### Count 29

1. Delaware Department of Correction ("DOC") receives federal money to hold inmates for at least 85% of their sentences.

2. DOC received and continues to receive federal money to build, staff, maintain and fill such units as SHU and MHU.

3. Slavery is the use of human captivity for the financial benefit and/or gain of others.

4. In violation of the Thirteenth Amendment to the U.S. Constitution, DOC has subjected plaintiffs to slavery by using and/or extending their captivity for financial gain.

5. Defendants Taylor, Howard, Carroll, Pierce and Havel are responsible for the violation(s) in this count.

### Count 30

1. S-1 is the only completely single room building in DCC.

22

2. DCC is more than 75% black.

3. S-1 building has a far greater proportion of Caucasian inmates living in S-1 single rooms than the approximately 12% of the prison population which whites comprise.

4. Defendants are racially discriminating against black plaintiffs by showing manifest preference to white inmates in housing assignments.

5. The racial discrimination in housing committed by defendants violates the equal protection clause of the Fourteenth Amendment, the Civil Rights Act and the Fair Housing Act.

6. Defendants Taylor, Howard, Carroll, Pierce and Hosterman are responsible for the violation(s) in this count.

### Count 31

1. Defendants, DCC and the DOC shows preference and racial bias in preference to white inmates in assigning jobs.

2. The DCC population is 75% to 80% black.

3. Black inmates are overwhelmingly assigned demeaning menial labor jobs like janitor, cook or washing pots and dishes in the prison kitchen.

4. In great disproportion to their numbers, white inmates are assigned skilled, better paying, more prestigious jobs like clerks, computer operators, teachers aides, plumbers, electricians, maintenance men, painters and law library clerks.

5. Out of approximately 16 education teachers aides positions at DCC, approximately 13 are staffed by white inmates, yet whites comprise only 12% of the inmate population.

6. Defendants Taylor, Howard, Carroll, Pierce, Whelen, Hosterman and Little are responsible for the violation(s) in this count.

### Count 32

1. Commissary account moey is only legally permitted to be spent for inmate recreation purposes.

2. Defendants have misappropriated millions of dollars that belong to plaintiffs and the rest of the DCC inmate population.

3. Seizure, misuse, outright theft and misappropriation of the inmate commissary account violates the Fourth Amendment protection against unreasonable search and seizure and Delaware's Constitution and statutes.

4. Defendants Taylor, Howard, Carroll, Hosterman, Pierce and Havel are responsible for protecting the money from the commissary account which belongs to plaintiffs and the inmate population who are all wards of the state.

5. Defendants have capitalized upon and exploited their wards by stealing their commissary account money.

6. Defendants used inmate commissary account money to put up a fence around D-building that severely cut off the available recreation, curtailing 90% of the available yard.

7. Defendants then misleadingly called the fence, which all but eradicated recreation, a "recreation fence" (as if inmates were permitted to climb it for recreation and frolic) to justify the misappropriation of commissary funds.

8. Using inmate commissary funds for fence erection violates the Fourth Amendment of the U.S. Constitution.

Count 33

1. Plaintiffs have been and are being charged $6.00 or $4.00 for hospital visits and $2.00 for medication orders.

2. As plaintiffs were incarcerated before the effective date of the law permitting medical payments to be seized from wards of the state, charging plaintiffs violates the ex post facto clause of the United States Constitution and the Fourth Amendment guarantee of protection from unreasonable search and seizures.

3. Defendants Taylor, Howard, Carroll, Pierce, Havel, Correctional Medical Services and First Medical Corporation are responsible for the violation(s) in this count.

Count 34

1. Plaintiffs have a statutory right to contact visits. When plaintiffs were incarcerated visiting was a right, not a privege as defendants presently claim.

2. Defendants have erected a large cement wall between prisoners and visitors elminating the "contact" part of contact visits and making communication extremely difficult and, in some cases, impossible.

3. The arbitrary wall barrier erection violates policy and permissions provided by official memo (written by then Warden Walter W. Redman) that clearly allowed inmates and visitors to hold hands during visits.

4. The visiting room's Berlin Wall forces inmates and visitors to should and scream to be heard above the din created by everyone trying in vain to communicate.

5. Defendants won't allow people to even touch the wall, much less have any actual contact with their children, grandchildren, parents, wives, friends or siblings.

6. Prohibition of real contact visits violates due process, DOC policy, ex post facto and DOC' mission, purpose and obligation to promote the maintenance of family relationships between prisoners and their families.

7. As the stated purpose of visits is to maintain and strengthen family bonds, the cement wall barrier obstructs that important part of DOC's purported rehabilitation mission.

8. DCC limits visits to 45 minutes on the weekend and 90 minutes on weekdays. Visitors must travel, in most cases, from Wilmington, Philadelphia, New Jersey and New York to get a paltry 45 minute visit, and even the alleged 45 minutes are routinely curtailed at the whim of correctional officers by five, ten minutes or fifteen minutes.

9. Weekday 90 minute visits are forced to halt their visits, get up, leave the building, and then return (after ten to fifteen minutes). The visitors have to go to the gatehouse to sign in a second time for the second 45 minutes if they wish to resume their visit.

10. That procedure amounts to harrassment and an attempt to discourage visitation.

11. No other state or federal prison in the other 49 states limits visits to a paltry 45 minutes.

12. Neighboring states such as Pennsylvania, Maryland, New Jersey and New York permits visits for up to eight hours.

13. Despite claiming to be a state prison, DCC's visiting is operated like a county jail.

14. Small children cannot see over the wall, so their visits are with the cement wall, not their father or grandfather who cannot be seen behind the wall. Neither prisoners nor their visits are permitted to stand up – on threat of termination of the visit and writeup – so a person who is not tall enough to see over the wall cannot even see the person with whom they are visiting.

15. The visiting restrictions violate the right of freedom of assembly guanteed by the First Amendment to the U.S. Constitution and the Fourteenth Amendment guarantee of equal protection since prisoners in neighboring states and the entire rest of the United States are free to visit without such cruel, assinine restrictions.

16. The Berlin Wall renders communication arduous at best and impossible at worst violates the free speech clause of the Constitution's First Amendment.

17. Defendants Taylor, Howard, Carroll, Pierce and Havel are responsible for the violation(s) in this count.

### Count 35

1. Plaintiffs have a Sixth amendment right of access to the courts and a First Amendment right to petition government for the redress of grievances.

2. This court established a proper grievance procedure in North Emerson West v. Redman, 530 F.Supp., 546.

3. Defendants' grievance system (as presently conducted in defiance of West) violatates the District Court's ruling in West.

4. Defendants' grievance system (as presently conducted in defiance of <u>West</u>) has no actual value or benefit to plaintiffs. It soely serves defendants' interest by delaying or preventing plaintiffs from accessing the courts.

5. The defendants' grievance system (as presently conducted in defiance of <u>West</u>) has no power togrant the grievant's petition. At best it is a six month to a year referral service to the warden. The Deputy Warden almost always intercepts the referral and often many more months pass before the Deputy Warden decides to make a recommendation to the warden. As often as not the grievance falls through the cracks at the Deputy Warden's level and proceeds no further.

6. But if he receives the various "recommendations," and agrees with any finding on behalf of the prisoner, the Warden himselft must refer to matter to the Bureau Grievance Coordinator.

7. The Bureau Grievance Coordinator must then refer the grievance to the Bureau Chief who may sit on the grievance for many more months before finally making a decision which is usually against any relief being granted to the prisoner.

8. The entire process may take years before any actual relief is granted to the prisoner who filed the grievance.

9. Over 6,000 inmates statewide must wait until a single Bureau Chief – who must have duties in addition to deciding which grievances to grant and which to deny – makes a decision before relief can be granted on the grievance.

10. As the grievance board is powerless to grant the inmate's petition, forcing inmates to go to a powerless referral body is futile and in violation of court rulings that

free citizens from jumping through hoops to satisfy so-called exhaustion requirements whose real effect is to block citizens from gaining relief.

11. DOC's grievance procedure's only actual function is to obstruct inmates' right of access to the court in violation of the First and Sixth Amendment and to deny due processs of law in violation of the Fifth and Fourteenth Amendments.

12. Under West, the resident grievance board had actual power to grant relief if the inmate manged to prevail. In such a case, the warden could appeal the resident grievance board's decision. Conversely, the inmate could appeal if he or she lost the grievance.

13. Defendants Merson and McCramer obstruct the grievance process by dismissing the vast majority of grievances without conducting a hearing. Those defendants create false, bogus and made-up reasons to justify the bulk of the dismissals. One oft-used justification is that the grievant made a request and, defendants claim, requests cannot be made to the grievance board. However, the grievance form requires the grievant to fill in the section called "Action requested by grievant." Thus the grievant is placed in a catch-22. If he does not fill out the "Action requested by grievant" section the grievance is dismissed for being incomplete. Yet if he does fill that section out then it is dismissed for making a request.

14. Defendant Merson intimidates and threatens inmates and has retaliated against some (including Plaintiff Japhis Lamkins and Inmate Jamal L. Northern) by writing them up for filing the grievance. Such unconscionable behavior violates DOC's own grievance policy which forbids any retailation against inmates for accessing the grievance process.

15. This court must abolish the defunct, unconstitutional DOC grievance system and must cease to force plaintiffs to attempt to exhaust grievances via a futile system which fails to afford due process and which places prisoners at risk of retaliation.

16. The Prison Litigation Reform Act – which paved the way for abuses such as those carried on by defendants -- itself is unconstitutional because it violates separation of powers by allowing Congress (the Legislative branch) to usurp the authority of the judiciary and allows the Executive Branch (under which prison administrators function and who are the very people against whom redress of grievance is sought) to decide what grievances can reach the court and when they can get there, if at all.

17. Plaintiffs have suffered from the corrupt grievance procedure and ask this court for relief.

18. Defendants Taylor, Howard, Carroll, Pierce, McCramer, Merson are responsible for the violation(s) in this count.

## Count 36

1. DCC only allows two books to be sent to inmates via mail. All books and magazines must be sent by a bookstore, publisher or vendor.

2. The two book limitation is arbitrary, serves no legitimate penological interest and only serves to perpetuate Delave slavery by limiting prisoner-slaves' ability to read just like previous slavemasters forbade or restricted reading by their captives prior to 1865.

3. The two book limitation promulgated by defendants violates the Fourteenth Amendment's prohibition against slavery and Plaintiffs' First Amendment right of

freedom of the press. In addition, it violates Johnson v. Anderson, the controlling case for prisoner rights in Delaware, decided by this court.

4. Defendants Taylor, Howard, Carroll, Pierce, Oney and Hosterman are responsible for the violation(s) in this count.

## Count 37

1. Plaintiffs have the right to live under the actual conditions which correspond to their levels of classification.

2. Despite claiming to have plaintiffs in medium or minium, all DCC is actually "maximum security," closed custody and control movement.

3. The de facto maximum security condition of confinement violates plaintiffs' liberty interest and due process rights to live under conditions that correspond to their medium or minimum classification level. Housing medium and minimum security plaintiffs under maximum security conditions also violates ex post facto.

4. Due process and ex post facto are violated by defendants forcing medium and minimum security classified plaintiffs to live under maximum security conditions since the re-tooling of DCC to function as a maximum security prison was instituted after plaintiffs had already achieved medium and/or minimum security classification status.

5. Defendants arbitrarily changed minimum and medium security conditions to maximum and committed fraud by continuing to call those security housing areas "medium" and "minimum" while deliberately making the actual living conditions maximum security conditions.

6. Current medium and minimum security inmates enjoy less recreation, tighter security, more intimidation with police dogs and mace (chemical warfare), more

restrictive movement and fewer opportunities than plaintiffs enjoyed in "old maximum" (now C-Building) in the 1970's and 1980's.

7. Medium and minimum security conditions in the federal Bureau of Prisons and neighboring state departments of corrections are vastly superior to Delaware's so-called medium and minimum housing units' conditions of confinement.

8. By forcing maximum security conditions of confinement upon medium and minimum classified plaintiffs violates due process, ex post facto, double jeopardy and equal protection.

9. Plaintiffs have a liberty interest invested in actual medium and minimum security conditions.

10. Opportunities, programs, jobs and release options available in an actual medium and minimum are not available in DCC's fraudulent medium and minimum units which are actually just maximum units dressed up in penological drag.

11. Defendants Taylor, Howard, Carroll, Pierce, Satterfield, Henry, Creasy, Palowski, Krumka, Morgan and Hosterman are responsible for the violation(s) in this count.

## Count 38

1. When plaintiffs were incarcerated they were legally eligible to apply for and, if warranted by their progress, receive classification for furloughs and special visits, i.e., visits to home accompanied by a guard. They were also eligible for education release, outside work status, and off-grounds work status. Although laws remain on the books to allow classification to these programs, defendants will not classify prisoners to them.

2. Defendants have arbitrarily denied plaintiffs their right to request and receive classification to the above release options, programs, reduction of security levels and privileges, and rights established by state law through Title 11 Delaware Code section 6500.

3. Denial of plaintiffs' right to classification to the above release options, programs, reduction of security level and privileges violates due process, ex post facto and equal protection.

4. Denial of plaintiffs' right to classification to the above release options violates the Fourteenth Amendment of the U.S. Constitution's provision that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

5. Defendants Taylor, Howard, Carroll, Pierce, Creasy, Satterfield, and Hosterman are responsible for the violation(s) in this count.

### Count 39

1. Plaintiffs have a right to the interest accrued from money in the inmate accounts and the inmate commissary fund.

2. The interest accrued from inmate accounts is seized and used by the Department of Correction and defendants.

3. The DOC is operating an illegal bank withyout a license and seizing money which rightly belongs to its wards of the state.

4. Seizure and expropriation of the interest from inmates' accounts violates the Fourth Amendment of the U.S. Constitution's prohibition against unreasonable searches

and seizures. It also violates federal laws and state statutes and regulations prohibiting monopolistic trade practices. It also violates federal and state antitrust laws.

5. Defendants Taylor, Howard, Carroll, Pierce, Hosterman and Havel are responsible for the violation(s) in this count.

### Count 40

1. The First Amendment of the U.S. Constitution guarantees to plaintiffs the right to freedom of speech and freedom of the press.

2. That right becomes empty and meaningless unless plaintiffs have a reasonable chance of actually getting their words and ideas disseminated through publication.

3. Editors of nearly every magazine, book publisher and newspaper in the United States refuse to even consider publishing an article, essay, press release or book unless it is typed. Handwritten papers stand virtually no chance of getting published.

4. Defendants prohibit plaintiffs from owning or having access to typewriters, computers or word processors – with the exception of typewriters and computers very recently made available in the law library for legal work only. (It must be pointed out that the computers are deliberately set up to prevent any inmate from saving any document, including legal documents. Thus briefs, motions, et al., have to be fully typed during a single law library period.)

5. In keeping with "the ever-evolving standards of society," use of a computer is as essential and fundamental to free expression and communication as use of an inkpen was when the Supreme Court first recognized inmates' right to freedom of speech.

6. Denial of typewriters, word processors, email capacity, computers and accesss to the internet violates the First Amendment to the U.S. Constitution.

7. Because defendants do allow a select few inmates to use typewriters and computers, denial of same right to plaintiffs violates both equal protection and due process.

8. Defendants Taylor, Howard, Carroll, Pierce, Hosterman and Havel are responsible for the violation(s) in this count.

### Count 41

1. Defendants receive federal and/or state funds to create and operate vocational technical educational programs and classes for prisoners.

2. DCC has no vocational technical (Vo-tech) classes.

3. Defendant Whalen is responsible for the creation and operation of Vo-tech programs.

4. DOC has misappropriated the federal and/or state allocated funds for Vo-tech programs.

5. Defendant Whalen has failed to create the Vo-tech classes she is required to create as part of her job.

6. Plaintiffs have a right to participate in the vo-tech educational training defendant Whalen and other defendans have failed to create.

7. Misappropriation of federal and/or state funds that were designated for plaintiffs' vocational education is a violation of plaintiffs' Fourth Amendment protection against unreasonable searches and seizures.

8. Defendants Taylor, Howard, Carroll, Pierce, Hosterman and Whalen are responsible for the violation(s) in this count.

## Count 42

1. As a recipient of federal grant money, DOC is required to operate the receiving programs according to federal civil rights laws.

2. DOC does not function in compliance with federal civil rights laws.

3. DOC functions as an apartheid, whites-only quasi-concentration camp.

4. DOC hires a "token black" inmate or two, upon occasion, to disguise its blatant apartheid practices.

5. The education department, the law library, motor pool, Concrete Design Systems, Commissary, Maintence, Paint Crew, Plumbing Crew, Electrical Crew practice blatant racial discrimination in hiring.

6. Jobs in the above operations are the highest paying, most prestigious and most coveted ones among inmates. Yet in a prison that is 75% to 80% black, the overwhelming majority of such jobs are given to whites.

7. DCC's blatant racial bias and discrimination in job hiring violates the Civil Rights Act, Equal Employment Opportunity and the equal protection clause of the Fourteenth Amendment to the U.S. Constitution.

8. Defendants Taylor, Howard, Carroll, Pierce, Hosterman and Whalen are responsible for the violation(s) in this count.

## Count 43

1. Allopathic medicine neither cures nor prevents disease.

2. Plaintiffs have a right to have diseases and illnesses cured, prevented and treated by licensed homeopathic, naturopathic, chiropractic and/or herbalist healthcare practitioners.

3. Other than in rare cases of emergency surgery, allopathic medicine only treats symptoms and ignores the causes of disease.

4. Allopathic medicine only dispenses dangerous and expensive drugs with lethal side-effects, performs usually unnecessary surgeries or bombards the patient with turturous and deadly radiation.

5. Allopathic medicine ahs never cured anyone of any disease.

6. Forcing plaintiffs to subject themselves to allopathic procedures by denying them any alternative amounts to cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution.

7. Failure to provide plaintiffs with the choice of getting real healing via homeopathic, chiropractic, naturopathic, herbalist and/or other alternative medicine amounts to deliberate indifference on the part of defendants.

8. Defendants Taylor, Howard, Carroll, Pierce, CMS and First Medical are responsible for the violation(s) in this count.

### Count 44

1. Non-organic, non-kosher meat is disease-laden, poisonous, antibiotic filled and disease-causing. It is also filled with dangerous sterioids including human growth hormone.

2. non-organic, non-kosher meat causes, inter alia, colon cancer, diabetes, prostate cancer, mad cow disease, liver disease and tooth decay.

37

3. Failure to provide organic, fresh vegetables, organic, fresh fruits, vegetarian diets and organic or kosher meats to plaintiffs places their health and lives at risk. That failure also costs the State of Delaware (taxpayers) millions of dollars in healthcare costs for inmates.

4. Forcing plaintiffs to eat meals filled with old, rotting, diseased meat and poultry, denying them any fresh vegetables (except an occasional bit of lettuce), forcing them to consume meals filled with a superabundance of carbohydrates amounts to cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution. It also amounts to deliberate indifference on defendants' part.

5. Defendants do provide kosher means to a couple of Jewish inmates, but refuse to provide the same meals to the overwhelming majority of the population. This refusal violates equal protection.

6. Providing kosher meals to Jews but refusing such meals to Gentiles and African-American inmates amounts to state-sponsored religion in violation of the First Amendment to the U.S. Constitution.

7. Defendants Taylor, Howard, Carroll, Pierce, CMS and First Medical Services are responsible for the violation(s) in this count.

## Count 45

1. Box handcuffs cut off circulation in the wrists and arms and places inmates with high blood pressure, heart ailments and/or circulatory ailments in danger of stroke, cardiac arrest and/or death.

2. Box handcuffs are placed on prisoners traveling outside the prison to court or hospital.

3. Box handcuffs were never adequately tested to determine whether they are safe.

4. Placing box handcuffs on plaintiffs violates the Eighth Amendment of the United States Constitution's prohibition against cruel and unusual punishment and reflects deliberate indifference on the part of defendants.

5. Defendants Taylor, Howard, Carroll, Pierce, and David Hall are responsible for the violation(s) in this count.

## Count 46

1. Defendants have allowed mold in the ceilings of the law library which is a health hazzard and puts inmates' health in peril. The danger posed by the ceiling mold obstructs plaintiffs' right to access to the courts in violation of the First and Sixth Amendments to the U.S. Constitution.

2. Defendants Taylor, Howard, Carroll, Pierce, Whalen, Hosterman, Henry and Little are responsible for the violation(s) in this count.

## Count 47

1. Metal fillings inserted inside teeth is toxic to the body and injurious to the liver, kidneys, heart, pancreas and the central nervous system.

2. By failing to provide holistic dentistry and an alternative to mercury amalgam fillings defendants have violated the Eighth Amendment of the U.S. Constitution's prohibition against cruel and unusual punishment and shown deliberate indifference to the health concerns of plaintiffs.

3. Defendants Taylor, Howard, Carroll, Pierce, First Medical, and CMS are responsible for the violation(s) in this count.

. 39

## Count 48

1. Positions in DOC and DCC such as Commissioner, Bureau Chief, Warden, Deputy Warden, Treatment Administrator, Support Services Manager, Superintendent of Security (Security Chief) and others have educational requirements.

2. Such educational requirements protect plaintiffs, prisoners, DOC staff and the public from errors, misjudgements, biases and ignorance of laws and procedures perpetuated by unqualified staff members who get hired and/or promosted by who they know instead of their actual qualifications.

3. The duty of the state personnel office is to hire and/or promote individuals who meet the educational requirements of the positions they seek.

4. The personnel office has been grossly negligent in perfomring its duty. In one case, a man with only a third grade education (Robert Snyder) was promoted to a Warden III position, purportedly because of his close friendship with Senator James Vaughn.

5. Defendant Alan Machington is the Director of the state Personnel Department.

6. Defendant machington has deliberately neglected to obey state laws, policies and regulations regarding hiring or promoting of personnel who meet the statutory educational requirements.

7. Plaintiffs have been subjected to the rule, supervision and oversight of adminstrators who are statutorily unqualified to perform their duties.

8. Defendants Taylor, Howard, Carroll, Pierce, Hosterman, and Machington are responsible for the violation(s) in this count.

## Count 49

1. Plaintiffs are given what are called "24 hour lockup" or "24 hour loss of all privileges" such as visits, commissary, postage purchases, phone calls, recreation and yard by any correctional officer. No hearing is provided the inmate who receives a "24." The sole officer is the judge, jury and executioner.

2. Permitting any officer to give a 24 hour lock up or loss of privileges without a hearing is a violation of due process and the Sixth and Eighth Amendments to the Delaware and U.S. Constitutions.

3. Defendants Taylor, Howard, Carroll, Pierce, Henry, Dixon, Creasy and Satterfield are responsible for the violation(s) in this count.

## Count 50

1. Plaintiff Fatir suffers from sleep apnea, a condition which is potentially fatal.

2. Fatir has repeatedly requested treatment for sleep apnea. Defendants have failed to provide any treatment.

3. Fatir chokes and gags all night during his oft-interrupted sleep as he struggles to breathe.

4. Defendants failure to provide treatment to Fatir amounts to deliberate indifference and violates the Eighth Amendment of the U.S. Constitution.

## Conclusion

Wherefore, the plaintiffs in this complaint pray that this honorable court will grant them a hearing to prove the allegations in open forum so that the truth can come to light for all concerned.

The undersigned are the true representatives of this complaint which we humbly submit to this honorable court.

Respectfully submitted,

Willie L Brayson, II    Warren Wynn +

Daniel M. Woods

Donald Boyer    Amber Shiner

Donnie O. Weaver    David Hatton

Jasphis Lamphis Jr

Nicholas Guvera

Brody Muhammad

William H Woods

Date: _____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

Donald Boyer, et al.,                    )
                                         )
            Plaintiffs                   )
      v.                                 )        Civil Action No. _____
                                         )
Stanley Taylor, et al.,                  )
                                         )
            Defendants.                  )

**Relief Requested**

**A. Injunctive Relief**

1. Plaintiffs request that this Court order buildings B, C, D and E at the Delaware Correctional Center declared unfit for human habitation and shut down immediately.

2. Plaintiffs request that all double-bunking of prisoners in cells designed for one prisoner be ceased immediately and that the double-bunks be removed from cells in B, C, D, E, MHU 21, MHU 22, MHU 23, and W.

3. Plaintiffs request that all triple-bunking of prisoners in V-Building be returned to the two man cells at designed.

4. Plaintiffs request that this Court order defendants to provide regular professional removers of mold, fungus and other disease-causing agents for the maintenance of showers and bathrooms.

5. Plaintiffs request that this Court order defendants to provide inmate janitors with the necessary cleaning materials – including but not limited to – bleach, stripper, cleanser and soap for the daily maintenance of bathrooms, showers, tiers and rooms.

6. Plaintiffs request that this Court order defendants to remove all contaminants from the soil in and around DCC, including but not limited to radon.

7. Plaintiffs request that this Court order defendants to remove all contaminants from the water used in DCC, including but not limited to deadly minerals, lead, fecal matter, bacteria and protozoa.

8. Plaintiffs request that this Court order defendants to provide proper tests of the soil and water in DCC, such tests to be conducted by unbiased testing professionals who are not a part of any state agency.

9. Plaintiffs request that this Court order defendants to eliminate the excessive noise levels in the double-bunked buildings by enforcing existing rules regarding radio and TV use, by providing sound barrier pads for the walls.

10. Provide cabinets, chairs, tables, TV stands and, where necessary, ladders for all cells.

11. Provide handicapped units with handrails, ramps, on-duty nurses and doctors, physical therapy and paid inmate helpers to assist handicapped and paralyzed inmates.

12. Plaintiffs request that this Court order defendants to provide professional exterminators to rid the living facilities of vermin and pests.

13. Plaintiffs request that this Court order defendants to provide fire-retardant, plastic-covered mattresses and pillows.

14. Provide return vents in all units.

15. Plaintiffs request that this Court order defendants to conduct air-quality tests and to cease housing prisoners in buildings in which the air quality is beneath standard.

16. Plaintiffs request that this Court order defendants to cease housing physically disabled inmates with mentally disabled inmates.

17. Plaintiffs request that this Court order defendants to cease housing healthy inmates with those who have infectious diseases.

18. Plaintiffs request that this Court order defendants to provide an unbiased accounting firm to meticulously pore over the records and books of all aspects of this case which pertain to misappropriation of funds including, but not limited to, the inmate commissary account, the moneys which were meant to renovate D-building to turn it into a chronic care unit, moneys used for building fences, moneys received (including materials such as foods from farm subsidies) from the federal government.

19. Plaintiffs request that this Court order defendants to return, with appropriate interest, the $20 that was meant to be used to renovate D-building and turn it into a chronic care unit.

20. To return, with appropriate interest, all monies taken from the inmate commissary fund over the past 30 years which were not used for recreational purposes. Such monies include, but are not limited to, the so-called recreation fence, guards' overtime, guards' uniforms, placing commissary account money into private accounts to draw interest (as Support Services Manager Paisley admitted to doing in 1984) and all other improper and illegal misuses of the inmate commissary account.

21. Plaintiffs request that this Court order defendants to cease to apply the classification point system to plaintiffs whose crimes (or alleged crimes) occurred prior to the effective date of the classification point system.

22. To restore Plaintiff Fatir's minimum, out-side, off-ground classification.

23. To cease warehousing inmates in SHU and MHU for the purpose of acquiring more money from the federal government and/or from the state budget.

24. Plaintiffs request that this Court order defendants to cease to censor books, magazines (including Playboy, Penthouse, Huster, Players and similar publications) and pictures which may contain nudity but which do not fall under the societal definition of "obscenity."

25. Plaintiffs request that this Court order defendants to permit plaintiffs to continue to have travelers checks processed and the money placed into their accounts.

26. Plaintiffs request that this Court order defendants to provide the appropriate 30 day notifications before any new rule is enforced.

27. Plaintiffs request that this Court order defendants to provide a means for plaintiffs to make calls outside the country.

28. Plaintiffs request that this Court order defendants to provide the full range of mailing classes that any post office and any other prison provides including second, third, and fourth class rates, parcel post, book rate and overseas mail.

29. Plaintiffs request that this Court order defendants to cease their telephone contract with Verizon and to establish a negotiating committee or team for a new telephone contract which would include plaintiffs, representatives of outside prison support organizations, and prison administrators.

30. That a committee consisting of plaintiffs, outside prisoner support organizations and federal ombudsmen be established to determine how funds received from inmate telephone contracts, overcharges, price-gauging and monopolistic practices are to be dispensed.

31. That the present grievance procedure be abolished and the one established by the District Court's ruling in North E. West v. Redman be reinstituted.

Case 1:06-cv-00694-GMS   Document 10-2   Filed 11/15/2006   Page 46 of 52

32. That DOC be ordered to cease to deliberately hold prisoners up to and beyond 85% of their sentences in order to qualify for federal money.

33. To order defendants to cease their practice of racial discrimination in denying black inmates equal housing opportunities in S-1.

34. That this court order defendants to cease to spend money from the inmate commissary fund on anything except inmate recreation, as required by law, including using the commissary fund to pay for the printing and publication of The Isthmus newspaper which is not recreational and which has become a propaganda organ for the prison administration.

35. That the "recreation fence" around D-building be torn down immediately.

36. That defendants cease to seize money from plaintiffs for hospital visits and medication.

37. Plaintiffs request that this Court order defendants to tear down the cement wall in the visiting room.

38. That "special visits" return to the 3 or more hours required by policy for visits which come from beyond a 100 mile radius.

39. That the 45 and 90 minute visits be abolished and visits of no less than three hours be established.

40. That the two-book limitation be eradicated and that prisoners be permitted to have fifteen books and magazines in their possession and that a system of storage be established so that additional books and magazines (beyond the 15) be exchanged.

41. That defendants cease to operate medium and minimum units according to maximum security protocols.

6

42. Plaintiffs request that this Court order defendants to allow plaintiffs to request and receive classification to furloughs, special visits, education release, outside work, off-grounds work and work release where such classification is warranted by plaintiffs' institutional conduct and record. In all such cases where requests are denied, plaintiffs request that defendants be ordered to provide detailed and explicit reasons for such denials to this court.

43. That DOC cease to take the interest from the money in inmates' individual accounts and the inmate commissary fund.

44. That DOC be ordered to allow prisoners to purchase computers and printers.

45. That prisoners be afforded access to emails and to the internet.

46. That Defendant Whalen be ordered to establish Vocational Educational programs. That all monies designated for Vo-tech education but otherwise spent be reimbursed with interest.

47. That DCC cease its racially discriminatory practices in hiring for the better-paying inmate jobs including but not limited to those in education, law library, regular library, maintenance, commissary, paint crew, plumbing and electrical crew.

48. Plaintiffs request that this Court order defendants to provide alternative medical treatment for prisoners including, but not limited to, homeopathic, naturopathic, chiropractic and herbalist practitioners.

49. That defendants provide alternative dental treatment which does not use toxic mercury amalgams and other pollutants.

50. That defendants provide kosher meals or vegetarian (with fresh vegetables) to plaintiffs who desire them.

51. That defendants cease to sponsor religion by providing special meals to Jews but denying such to non-Jews.

52. That defendants cease to sponsor religion by denying and/or censoring publications which may be objectionable to the ultraconservative religious right.

53. Plaintiffs request that this Court order defendants to cease to place dangerous box handcuffs on prisoners, including plaintiffs, when they depart the institution.

54. Plaintiffs request that this Court order defendants to conduct rigorous tests to determine the effects on the circulation and health of people upon whom box handcuffs are placed.

55. Remove mold from the drop ceiling and ventilation system in the law library.

56. Plaintiffs request that this Court order defendants to cease to hire and/or promote individuals who do not meet the minimum educational requirements for the positions they seek and that all those who presently hold positions for which they are educationally unqualified be demoted to positions which meet their educational achievement.

57. That defendants cease the practice of giving 24 hour loap's and lockups without hearings and all previously written 24's be expunged from plaintiffs' records.

## Compensatory Damages

1. To reimburse Plaintiff Fatir for all books seized, discarded or destroyed by the mailroom.

2. That defendants reimburse plaintiffs for all property that came from Arizona but was denied him upon entry into DCC.

8

3. That defendants bare the cost of reproduction of all legal papers destroyed and/or discarded by property officers Morgan and Krumka which were sent from Arizona.

4. That all kickbacks received from inmate telephone contracts, all overcharges prisoners and their families have borne due to price-gauging and monopolistic practices be reimbursed to plaintiffs. and that a committee consisting of plaintiffs, outside prisoner support organizations and federal ombudsmen determine how those funds are to be dispensed.

5. That all present and past prisoners held beyond 85% of their time be paid $200 for each day held longer than they should have under Delaware's statutory requirement to rehabilitate and return prisoners to the community as soon as is practicable.

6. That defendants reimburse plaintiffs for all money seize for hospital visits and medication.

7. That the interest from all inmate accounts be reimbursed to inmates.

8. That defendants pay each plaintiff $10,000 in compensatory damages.

## Punitive Damages

1. Plaintiffs request that this Court order defendants to pay $25,000,000.00 in punitive damages.

## Parties

1. Donald Boyer # 082420, D-Building, 1181 Paddock Rd., Smyrna, DE 19977.

2. Andre Johnson, SHU, 1181 Paddock Rd., Smyrna, DE 19977.

3. Donnie Weaver, D-Building, 1181 Paddock Rd., Smyrna, DE 19977.

4. Willis L. Grayson II, D-Building, 1181 Paddock Rd., Smyrna, DE 19977.

5. Amir Fatir, # 137010, D-Building, 1181 Paddock Rd., Smyrna, DE 19977.

6. David B. Houston, D-Building, 1181 Paddock Rd., Smyrna, DE 19977.

7. Nicholas Rivera, V-Bldg., 1181 Paddock Rd., Smyrna, DE 19977.

8. Brady Muhammad, D-Building, 1181 Paddock Rd., Smyrna, DE 19977.

9. Warren Wyant, D-Building, 1181 Paddock Rd., Smyrna, DE 19977.

10. William H. Woodlin, T-2, 1181 Paddock Rd., Smyrna, DE 19977.

11. Japhis Lampkins, D-Building, 1181 Paddock Rd., Smyrna, DE 19977.

12. Daniel M. Woods, D-Building, 1181 Paddock Rd., Smyrna, DE 19977.

## IN THE MATTER OF EXHAUSTION

1. Plaintiffs have filed grievances for the non-classification counts in this complaint.

2. The prison grievance procedure does not permit grievances for classification issues.

3. Pursuant to Department of Correction policy, classification issues have been appealed, by letter, to the warden of the institution.

4. DOC provides no forms for classification appeals.

5. Several of the grievances were filed multiple times over more than a year's period of time because defendants declined, refused or neglected to docket said grievances or grant a hearing.

6. Several grievances were summarily dismissed by the grievance officers thereby halting any further appeals as appeals and appeal forms can only occur after a hearing has taken place.

7. Where possible, plaintiffs have appealed grievances as far as the grievance procedure permits.

8. In attempting to exhaust all grievance requirements, some plaintiffs have been threatened, verbally abused and written up by the grievance officers.

2

Act.

Respectfully submitted,

Donald Boyle

Donald J. Boyer

Donald Boyer # 082420
DCC
1181 Paddock Rd.
Smyrna, DE 19977
November 13, 2006

Clerk
U.S. District Court
844 King St.
Wilm., DE 19801

FILED

NOV 15 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

RE: Boyer, et al. v. Taylor, et al.

Dear Sir:

Enclosed is an original and two copies of
a 1983 civil Action for the court. Also
sent is a copy for each defendant.

A copy has been mailed to the Attorney
General of Delaware, Carl Danberg.

Altogether an original and 24 copies of this
civil action have been mailed to this court.

Thank you.

Very truly yours,
Donald Boyer