IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DONALD BOYER, AMIR FATIR, and  )
WARREN WYANT,  )
  )
      Plaintiffs,  )
  )
      v.  ) Civil Action No. 06-694-GMS
  )
COMMISSIONER STANLEY TAYLOR,  )
PAUL HOWARD, RONALD  )
HOSTERMAN, WARDEN THOMAS  )
CARROLL, MAUREEN WHALEN,  )
DEPUTY WARDEN DAVID PIERCE,  )
JENNY HAVEL, CPL. KRUMKA,  )
OFFICER MORGAN, JANET HENRY,  )
LISA MERSON, ALAN MACHINGTON,  )
CPL. ONEY, MICHAEL LITTLE, FLOYD  )
DIXON, CORRECTIONAL MEDICAL  )
SERVICES, FIRST MEDICAL  )
SERVICES, MARVIN CREASY,  )
JAMES P. SATTERFIELD, INSPECTOR  )
LT. PALOWSKI, MICHAEL  )
MCCRAMER, and DAVID HALL,  )
  )
      Defendants.  )

**MEMORANDUM**

The plaintiffs, Donald Boyer ("Boyer"), Amir Fatir ("Fatir"), and Warren Wyant

("Wyant) (collectively "the plaintiffs") are inmates at the Delaware Correctional Center

("DCC"). They filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of their

constitutional rights, and as a class action civil complaint filed by prisoners at the DCC. (D.I.

10.) The plaintiffs appear *pro se* and were granted permission to proceed *in forma pauperis*

pursuant to 28 U.S.C. § 1915. (D.I. 26.) The court now proceeds to review and screen the

complaint pursuant to 28 U.S.C. § 1915 and § 1915A.

## I.    BACKGROUND

The plaintiffs' complaint was filed in this court on November 15, 2006 (D.I. 10), and

Boyer filed an amended complaint on January 5, 2007 (D.I. 18). The amended complaint

consists solely of exhibits A-1 through A-16.[1] Several plaintiffs originally filed the lawsuit, but a

number of them filed dismissals or did not provide forms necessary to proceed with the litigation.

Boyer, Fatir, and Wyant are the remaining plaintiffs, and all are housed in D-building at DCC.

They name the following defendants:  former Delaware Department of Correction ("DOC")

Commissioner Stanley Taylor ("Taylor")[2], former Bureau of Prisons Bureau Chief Paul Howard

("Howard")[3], Ronald Hosterman ("Hosterman"),Warden Thomas Carroll ("Warden Carroll"),

Maureen Whalen ("Whalen"), Deputy Warden David Pierce ("Pierce"), Jenny Havel ("Havel"),

Cpl. Krumka ("Krumka"), Officer Morgan ("Morgan"), Janet Henry ("Henry"), Lisa Merson

("Merson"), Alan Machington ("Machington"), Cpl. Oney ("Oney"), Michael Little ("Little"),

Floyd Dixon ("Dixon"), Correctional Medical Services ("CMS"), First Medical Services

("FMS"), Marvin Creasy ("Creasy"), James P. Satterfield ("Satterfield"), Inspector Lt. Palowski

("Palowski"), Michael McCramer ("McCramer"), and David Hall ("Hall").

The plaintiffs allege conditions of confinement claims in Counts 1 through 13, 15, 44,

and 46; deliberate indifference to serious medical and dental needs in Counts 11, 43, 47, and 50;

---

[1]Several of the exhibits filed as the "amended complaint" do not relate to any of the allegations contained in the original complaint, and, therefore, are not considered. (D.I. 18, Exs. A-14, A-15, A-16.)

[2]Taylor is no longer the Commissioner for the DOC. The current Commissioner is Carl C. Danberg.

[3]Howard is no longer the Bureau Chief for the Bureau of Prisons. The current Bureau Chief is Rick Kearney.

violations of the Americans with Disabilities Act in Count 14; unlawful search and seizure, cruel

and unusual punishment, and violations of the right due process and equal protection in Counts

16 through 19, 22, 23, 24, 28, 30, 31, 42, 44, and 49; violations of the Eight Amendment in

Counts 14 and 45; unlawful housing/classification in Counts 17, 18, 19, 30, 37, 38, and 49;

violations of the First Amendment in Counts 20, 21, 23, 28, 36, and 40; denial of access to the

courts in Counts 26, 27, 35, and 46; confiscation and destruction of Fatir's personal property in

Count 25; violations of the Thirteenth Amendment against slavery in Counts 29 and 36;

misappropriation of inmate funds in Counts 32 and 39; violation of the *Ex Post Facto Clause* in

Counts 18, 33, and 38; deprivation of the right to contact visits in Count 34; deprivation of the

right to education and misappropriation of funds in Count 41; and negligence in the hiring of

DOC personnel in Count 48. The plaintiffs seek injunctive relief and compensatory and punitive

damages.

## II.     STANDARD OF REVIEW

When a litigant proceeds *in forma pauperis,* 28 U.S.C. § 1915 provides for dismissal

under certain circumstances. When a prisoner seeks redress in a civil action, 28 U.S.C. § 1915A

provides for screening of the complaint by the court. Both 28 U.S.C. § 1915(e)(2)(B) and §

1915A(b)(1) provide that the court may dismiss a complaint, at any time, if the action is

frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary

relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable

basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

In performing the court's screening function under § 1915(e)(2)(B), the court applies the

standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Fullman v.*

*Pennsylvania Dep't of Corr.*, No. 4:07CV-000079, 2007 WL 257617 (M.D. Pa. Jan. 25, 2007)

(citing *Weiss v Colley*, 230 F.3d 1027, 1029 (7th Cir. 2000). The court must accept all factual

allegations in a complaint as true and take them in the light most favorable to plaintiff. *Erickson*

*v. Pardus*, –U.S.–, 127 S.Ct. 2197, 2200 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406

(2002). Additionally, a complaint must contain "'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, –U.S.–, 127

S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A complaint does

not need detailed factual allegations, however "a plaintiff's obligation to provide the 'grounds' of

his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Id.* at 1965 (citations omitted). The "[f]actual

allegations must be enough to raise a right to relief above the speculative level on the assumption

that all of the complaint's allegations in the complaint are true (even if doubtful in fact)." *Id.*

(citations omitted).

Because the plaintiffs proceed *pro se*, their pleading is liberally construed and their

complaint, "however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers. *Erickson v. Pardus*, –U.S.–, 127 S.Ct. 2197, 2200 (2007) (citations

omitted). Having said that, a civil rights complaint must state the conduct, time, place, and

persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353

(3d Cir. 2005) (citing *Boykins v. Ambridge Area Sch. Dist.,* 621 F.2d 75, 80 (3d Cir. 1980); *Hall*

*v. Pennsylvania State Police,* 570 F.2d 86, 89 (3d Cir. 1978)).

## III.   DISCUSSION

### A.  Class Action

The "Nature of the Case" section of the complaint states that "[t]his is a class action civil complaint filed by prisoners" at the DCC alleging "statutory and constitutional violations of their conditions of confinement."  (D.I. 10, ¶ B.)  A class action can only be maintained if the class representative "will fairly and adequately represent the interests of the class."  Fed.R.Civ.P. 23(a)(4).  "When confronting such a request from a prisoner, courts have consistently held that a prisoner acting *pro se* 'is inadequate to represent the interests of his fellow inmates in a class action.'"  *Maldonado v. Terhune*, 28 F.Supp.2d 284, 299 (D.N.J. 1998) (citing *Caputo v. Fauver*, 800 F.Supp. 168, 170 (D.N.J. 1992)); *see Awala v. New Jersey Dep't of Corr.*, No. Civ.A. 05-2362FLW, 2005 WL 2044910 (D.N.J. Aug. 23, 2005), *appeal dismissed*, No. 05-4899, 2007 WL 295276 (3d Cir. Jan. 31, 2007).  Indeed, none of the plaintiffs could act as a "lead plaintiff" since it is long established that "a prisoner proceeding *pro se* may not seek relief on behalf of his fellow inmates."  *Alexander v. New Jersey State Parole Bd.,* 160 Fed. Appx. 249, 249 n.1 (3d Cir. 2005) (citing *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant . . . to represent his fellow inmates in a class action")).  Accordingly, the court will not permit this lawsuit to proceed as a class action.

### B.  Conditions of Confinement

Conditions of confinement claims are found in Counts 1 through 13, 15, 44, and 46.  A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life.  *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992);

*Wilson v. Seiter,* 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought

against a prison official it must meet two requirements: (1) the deprivation alleged must be,

objectively, sufficiently serious; and (2) the prison official must have been deliberately

indifferent to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

Deliberate indifference is a subjective standard in that the prison official must actually have

known or been aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel,* 256 F.3d

120, 125 (3d Cir. 2001).

Many of plaintiffs' claims allege health issues caused by uninhabitable conditions in D-

building such as mold, fungus, improper ventilation, filthy bathrooms, soil and water

contamination, insufficient access to water, soiled mattresses, and double bunking with inmates

carrying infectious disease. Accordingly, the plaintiffs will be allowed to proceed on the

conditions of confinement claims contained in Counts 1, 2, 3, 4, 5, 6, 9, 12, 13, and 15.

The court will dismiss the remaining conditions of confinement claims found in Counts 7

8, 10, 11, 44, and 46 as frivolous and for failure to state a claim upon which relief may be

granted. Count 7 alleges excessive noise in D-building at DCC, but rather than allege the

plaintiffs suffered any actual damage, the plaintiffs speculate that the noise can cause damage and

result in hearing loss.

Count 8 is frivolous. The plaintiffs allege their rights have been violated because the

cells in D-building lack chairs, steel cabinets, tables, television stands, and ladders for top bunks.

The Eighth Amendment protects against cruel and unusual punishment. The failure to provide

such amenities cannot result in the finding of a violation of constitutional magnitude.

Count 10 attempts to allege a conditions of confinement claim because D-building cells

are not regularly sprayed to eliminate vermin. The claim, however, is not raised against any specific defendant. Nor does it allege any harm to any individual plaintiff. Therefore, the claim will be dismissed without prejudice.

Count 11 alleges that the housing conditions in the F-tier are inadequate due to lack of handrails for top bunks and showers for handicapped and disabled inmates; lack of ladders in F-tier for aged, disabled, crippled, and handicapped inmates; and failure to provide F-tier chronic care inmates with mental health medical personnel. There are no allegations that any of the inmates are housed on F-tier or that they are handicapped, disabled or mentally ill. Therefore, they have no standing to bring the claim raised in Count 11.

In Count 44, the plaintiffs allege their rights have been violated because they are served non-organic, non-kosher meat rather than organic fresh fruits and vegetables, vegetarian diets and organic or kosher meats. They allege, generally, that they are forced to eat old, rotting, diseased meat and poultry, consume large quantities of carbohydrates, and are denied fresh vegetables. Count 44 fails to state a claim upon which relief may be granted. Inmates are not entitled to organic food, vegetarian diets, or kosher meals. Special diets may be provided for medical and religious reasons. The complaint contains no averments that would support finding a violation on such grounds. The plaintiffs also allege, generally, that they are forced to eat old, rotting, and diseased meat and poultry, but fail to allege when the forced eating took place, and which defendants was responsible for forcing the plaintiff to consume the spoiled food. It is unclear if the plaintiffs allege they were physically "forced" rather than "forced" due to lack of any alternative edible foods.

Count 46 alleges generally that there is mold in the library which is a health hazard and it

"puts inmates' heath in peril."[4]  The allegations are so general that it is impossible for the

defendants to form an adequate response.  Accordingly, the claim will be dismissed without

prejudice.

Based upon the foregoing, the court will dismiss without prejudice the conditions of

confinement claims found in Counts 7, 8, 10, 11, 44, and 46 as frivolous and for failure to state a

claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and §

1915A(b)(1).  The plaintiffs may proceed with the conditions of confinement claims found in

Counts 1, 2, 3, 4, 5, 6, 9, 12, 13, and 15.

### C.  Medical Needs

The plaintiffs raise medical needs claims in Counts 11, 43, 47, and 50.  The Eighth

Amendment proscription against cruel and unusual punishment requires that prison officials

provide inmates with adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976).

However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical

need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that

need.  *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of

serious harm and fails to take reasonable steps to avoid the harm.  *Farmer v. Brennan*, 511 U.S.

825, 837 (1994).  A prison official may manifest deliberate indifference by "intentionally denying

or delaying access to medical care."  *Estelle v. Gamble*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the

treatment provided is reasonable.  *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000).

---

[4]Count 46 also raises an access to courts claim which will be discussed in Section III. J.

An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

None of the Counts alleging deliberate indifference to a serious medical or dental need rise to the level of a constitutional violation. Count 11 alleges that the defendants Taylor, Howard, Carroll, Palowski, Pierce, Henry, Dixon, and Satterfield failed to provide F-tier chronic care inmates with mental health medical personnel during rounds. This claim does not allege deliberate indifference, but instead, disagrees with the type of medical care provided to inmates. Further, there are no allegations in the complaint that any of the plaintiffs are F-tier chronic care inmates with mental health problems.

Counts 43 and 47 allege deliberate indifference to serious medical and dental needs by subjecting the plaintiffs to certain types of medical and dental treatment and denying the plaintiffs alternative means of medical and dental treatment, such as allopathic medicine or holistic dentistry. The plaintiffs do not allege they have been deprived of medical or dental treatment. What they want is the ability to choose what type of treatment they will receive, something to which they have no constitutional right.

Count 50 alleges a deliberate indifference to Fatir's serious medical condition known as sleep apnea. The complaint alleges that Fatir has repeatedly requested treatment for the condition, and that the defendants have failed to provide treatment. Count 50 is not adequately

pled, as it is not directed towards any defendant and does not contain any facts to advise the defendants when Fatir allegedly requested, and was denied medical care.

Based upon the foregoing, the court will dismiss without prejudice the medical needs claims found in Counts 11, 43, 47, and 50 as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).  The plaintiffs will be allowed to amend Count 50.

### D.  American with Disabilities Act

Count 14 alleges the defendants Taylor, Howard, Carroll, Henry, Pierce, Dixon, Satterfield, and Creasy violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, in F-tier when mentally disabled inmates were housed with inmates suffering such disability.[5]  The plaintiffs may not maintain an action under the ADA against the individual defendants identified in Count 14 because the ADA does not imposes liability upon individuals. 42 U.S.C. § 12131(1); *Favilla v. City of Passaic*, 146 F.3d 149 n.1 (3d Cir. 1998).  Moreover, there are no allegations contained in the complaint that any of the plaintiffs are qualified individuals with disabilities as defined under the ADA.  42 U.S.C. § 12102(2)(A).  Accordingly, the ADA claim contained in Count 14 will be dismissed without prejudice as frivolous and for failure to state a claim upon which relief may be granted pursuant  28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### E.  Eighth Amendment

Counts 14 and 45 allege violations of the Eighth Amendment.  The court will dismiss

---

[5]Count 14 also alleges that Fatir's constitutional rights under the Eighth Amendment were violated when the defendants failed to protect him from his mentally ill cell-mate.  The issue will be addressed in Section III. E.

both Counts.  Count 14 alleges that Fatir was housed with a mentally disabled inmate who

stabbed Fatir without provocation.  To prevail on an Eighth Amendment failure to protect claim,

a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk

of serious harm (the objective element); and (2) prison officials  acted with deliberate

indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health

or safety (the subjective element).  *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994); *see

also Griffin v. DeRosa*, 153 Fed. Appx. 851 (3d Cir. 2005).  Here, there are no allegations that

prison officials knew of and disregarded an excessive risk to Fatir's health or safety.  Further,

Count 14 does not advise the defendants the date of the alleged assault.  Therefore, the court will

dismiss the failure to protect claim contained in Count 14.

Count 45 alleges cruel and unusual punishment in violation of the Eighth Amendment in

the use of box handcuffs.  The complaint alleges the handcuffs cut off the circulation and place

inmates with high blood pressure, heart ailments and/or circulatory ailments in danger of stroke,

cardiac arrest and/or death.

In some instances, the use of excessively tight handcuffs is a constitutional violation.  *See

Kopec v. Tate*, 361 F.3d 772 (3d Cir. 2004) (police officer's alleged actions of placing

excessively tight handcuffs on arrestee and needless failure to respond for ten minutes to

arrestee's pleas to loosen them, and which resulted in permanent nerve damage, constituted

excessive force).  Count 45, as alleged, does not state a claim for a constitutional violation.

Nowhere in the complaint is it alleged that any of the plaintiffs have the medical conditions

referred to in Count 45.  Nor does Count 45 allege any occasion when the plaintiffs were

handcuffed in an excessively tight manner or that any of the plaintiffs suffered physical harm as a

result of tight handcuffs. Finally, Count 45 does not indicate when or where such alleged activity took place.

Based upon the foregoing, the court will dismiss without prejudice the Eighth Amendment claims contained in Counts 14 and 45 as frivolous and for failure to state a claim upon which relief may be granted pursuant 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### F. Housing/Classification

The complaint contains several counts alleging due process and equal protection violations. Most of the allegations revolve around housing assignments and security classifications. Count 17 alleges a violation of Fatir's right to due process and equal protection when, following a transfer from an Arizona institution to DCC, he was placed in the Security Housing Unit ("SHU") in December 2004 without a disciplinary hearing and later transferred to the Medium-High Housing Unit ("MHU"). Fatir alleges he was placed in SHU and MHU for thirteen months. In Counts 17 and 19, Fatir alleges a violation of his right to equal protection, because "every person entering DCC from out-of-state is not put in SHU."

Count 18 alleges that the point system now used by DCC violates the *Ex Post Facto* and Double Jeopardy Clauses because the new system of classification will never allow Fatir to return to the minimum security classification he earned twenty years ago. Count 30 alleges that the S-1 building, the only single room building in DCC, has a far greater proportion of white inmates housed there than the approximately twelve percent of the white prison population. Count 37 alleges a violation of the plaintiffs' liberty interests and due process rights by forcing them to live under maximum security conditions when they are classified as medium or security level inmates. Count 38 alleges that the denial of the plaintiffs' right to be classified for release

options such as furloughs, special visits, education release, outside work status, and off-grounds work status violates the *Ex Post Facto* Clause because these options were available when the plaintiffs were initially incarcerated. Finally, Count 49 alleges violations of the right to due process and against cruel and unusual punishment because inmates are placed in twenty-four hour lockup without a hearing.

In reviewing an alleged due process violation, it must be determined whether the alleged violation implicates a constitutionally protected property or liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). "Liberty interests protected by the Fourteenth Amendment may arise from two sources-the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). In a prison setting, states may create protected liberty interests. These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484 (internal citations omitted). Notably, neither Delaware law nor DCC regulations create a liberty interest in a prisoner's classification within an institution. *See* Del. Code Ann. tit. 11, § 6529(e). Moreover, "'[a]s long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" *Hewitt*, 459 U.S. at 468 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

It has thus been determined that the transfer of a prisoner from one classification is

unprotected by "'the Due Process Clause in and of itself,'" even though the change in status

involves a significant modification in conditions of confinement. *Hewitt*, 459 U.S. at 468

(citation omitted); *Moody v. Daggett*, 429 U.S. 78 (1976 ); *see also Lott v. Arroyo,* 785 F.Supp.

508, 509 (E.D. Pa. 1991) (plaintiff transferred from group home to correctional facility had no

constitutionally enforceable right to participate in work release program); *Brown v. Cunningham,*

730 F.Supp. 612 (D. Del.1990) (plaintiff's transfer from general population to administrative

segregation, without being given notice and opportunity to challenge it, was not violation of

plaintiff's liberty interest). The plaintiffs allegations in Counts 17, 18, 19, 30, 37, and 38 make

complaints of their housing or security classification. As discussed, the plaintiffs have no

constitutional protection from changes in their classification or housing under the Due Process

clause. Therefore, the housing/classification claims in Count 17, 18, 19, 30, 37, and 38 fail to

state a claim and they will be dismissed.

The plaintiffs also allege violations of the *Ex Post Facto* Clause in Counts 18 and 38 as to

the point system now used for classification, and as to the denial of the right to release options no

longer offered. Count 18 contains the additional allegation of violation of the Double Jeopardy

Clause. Both Counts fail under these theories. The court is unaware of "any decisional authority

which holds that a mere change in custodial status either amounts to an 'increase' in the 'measure

of punishment' for *ex post facto* purposes or qualifies as a second 'punishment' for double-

jeopardy purposes." *Welch v. Epps*, 103 Fed. Appx. 828 (5th Cir. 2004) (citing *Garner v. Jones*,

529 U.S. 244, 249-50 (2000); *Hudson v. United States*, 522 U.S. 93, 98-99 (1997); *United States*

*v. Galan*, 82 F.3d 639, 640 (5th Cir. 1996); *see also Marvel v. Ryan*, Civ.A. No. 87-268 MMS,

1987 WL 61190 (D. Del. Aug. 13, 1987) (administrative regulations which adversely affect an

inmate's eligibility for furloughs as well as changes in eligibility for work-release status are not subject to the constitutional prohibitions against *ex post facto* laws). The plaintiffs claims in Counts 18 and 38 do not fall under the provisions of the *Ex Post Facto* and Double Jeopardy Clauses. Therefore, the court will dismiss without prejudice those claims contained in Counts 18 and 38.

The plaintiffs complain of a twenty-four hour lockups without a hearing and with a loss of privileges. The Third Circuit has held that a state prisoner's confinement in administrative segregation for 15 months did not impose an atypical and significant hardship on the prisoner. *Griffin v. Vaughn*, 112 F.3d 703, 706-09 (3d Cir. 1997); *see Sack v. Canino*, No. Civ. A. 95-1412, 1995 WL 498709, *1 (E.D. Pa. Aug. 21, 1995) (assuming that the plaintiff was not afforded the protections called for by *Wolff*, because the sanction of 30 days disciplinary confinement did not implicate a liberty interest, such infraction did not violate the plaintiff's due process rights). A short period of time, such as a twenty-four hour lockup, does not implicate a liberty interest, and therefore, the Court will dismiss Count 49.

As the plaintiffs have not articulated a protected liberty interest with respect to their discipline, confinement, and loss of privileges, housing or classification, their due process, *ex post facto*, and double jeopardy claims have no arguable basis in law or in fact. Therefore, the court will dismiss without prejudice Counts 17, 18, 19, 30, 37, 38, and 49 as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### G. Renovation Fund

In Count 16, the plaintiffs allege unlawful search and seizure and violations of their right

to due process. More specifically, they allege the defendants misappropriated funds allocated to

renovate D-building and instead placed inmates onto a "chronic care unit" without providing

facilities essential to such a unit.

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him

of a federal right, and that the person who caused the deprivation acted under color of state law.

*West v. Atkins,* 487 U.S. 42, 48 (1988). Under the Fourteenth Amendment individuals are

entitled to due process if the state deprives them of a property interest that is protected by the

constitution. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). If there is a valid

property interest, then plaintiffs cannot be deprived of same without due process. *Gillihan v.*

*Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989). The United States Constitution, however, does

not create a protected interest in property. *Board of Regents of State Colleges v. Roth*, 408 U.S.

564, 577 (1972). Rather, protected property interests "stem from an independent source such as

state law-rules or understandings that secure certain benefits and that support claims of

entitlement to those benefits." *Id.* Here, there are no allegations that the plaintiffs have a valid

property interest in the monies allegedly given to the defendants to renovate D-building. In the

absence of such a property interest, the plaintiffs have failed to state a claim upon which relief

may be granted. Also, the plaintiffs' Fourth Amendment allegations of an unlawful search and

seizure are frivolous. Accordingly, the court will dismiss without prejudice Count 16, as

frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C.

§ 1915(e)(2)(B) and § 1915A(b)(1).

**H. First Amendment**

Several counts in the complaint allege First Amendment violations. The plaintiffs will be

allowed to proceed with Counts 20 and 21 and that portion of Count 36 alleging that the

plaintiffs are limited to receive by mail, two books per person. The plaintiffs will also be

allowed to proceed with Count 23 alleging that Fatir is unable to telephone his wife in England.

Count 28 alleges violations of the right to equal protection, free speech, and unreasonable

search and seizure because inmates are forced to make telephone calls using the Verizon

telephone system rather than a less expensive telephone long distance carrier. Inmates have First

Amendment rights notwithstanding their incarceration, but these rights are necessarily

circumscribed because of the legitimate penological and administrative interests of the prison

system. *See Vester v. Rogers*, 795 F.2d 1179, 1182 (4th Cir. 1986) ("Although a prisoner does

not shed his first amendment rights at the prison portals, it is equally true that lawful

incarceration brings about the necessary withdrawal or limitation of many privileges and

rights."). The exact nature of telephone service to be provided to inmates is generally to be

determined by prison administrators, subject to court scrutiny for unreasonable restrictions."

*Almahdi v. Ridge*, 201 Fed. Appx. 865 n.2 (3d Cir. 2006) (quoting *Fillmore v. Ordonez*, 829

F.Supp. 1544, 1563-64 (D. Kan. 1994) (other citations omitted).

Even though prisoners may have a First Amendment right to reasonable telephone use,

"[t]here is no authority for the proposition that prisoners are entitled to a specific rate for their

telephone calls." *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000). Similar to *Johnson*,

in the present case the complaint alleges no facts from which one could conclude that the rate

charged is so exorbitant as to deprive prisoners of phone access altogether. Moreover, other

courts relying upon *Johnson* have dismissed First Amendment claims where the plaintiff

challenged the telephone rate charged by a correctional facility. *See e.g., Orr v. Dawson,* No.

CV06-53-S-BLW, 2006 U.S. Dist. LEXIS 68943, at *23-24 (D. Idaho 2006) (dismissing

plaintiff's claim that defendants engaged in price gouging on the telephone service provided to

inmates because "there is no authority for the proposition that prisoners are entitled to a specific

rate for their telephonic calls"); *Woods v. Carey,* No. CIVS050049MCEDADP, 2005 WL

3436366, at *2 (E.D. Cal. 2005) (dismissing plaintiff's claim that prison conspired with a

telephone company to overcharge prisoners for long distance telephone calls); *Fulton v. MCI*

*Worldcom, Inc.*, No. CV F 03 6949 REC DLB, 2006 U.S. Dist. LEXIS 32037, at *5 (E.D. Cal.

2006) ("[t]he First Amendment does not require that prisoners have their choice of telephone

services or that they be given a specified rate for their telephone calls").

The plaintiffs do not complain they were denied access to telephone use.  Additionally,

the plaintiffs lack standing to assert any claim their family members may have with Verizon.

Based upon the foregoing, the court finds that the allegations in Count 28 fail to state a claim

under the First Amendment.  Similarly, the allegations in Count 28 do no implicate violations of

equal protection or against unreasonable search and seizure:  in addition, those claims are

frivolous.

Count 40 alleges that the plaintiffs are prohibited from owning or having access to

typewriters, computers, or word processors in violation of the First Amendment.  They also

allege a violation of their right to equal protection because select inmates are allowed to use

typewriters and computers.  The plaintiffs allege that because they are prohibited from owning or

having access to typewriters, computers or word processors, they have virtually "no chance" of

getting personal writings published.  The plaintiffs allege that very recently typewriters and

computers have been made available for legal work.

If a prisoner's access to the courts does not include a federally protected right to use a typewriter, *Twyman v. Crisp*, 584 F.2d 352, 358 (10th Cir. 1978), then surely there is no federally protected right for personal use of a typewriter, computer or wordprocessor. *See Lehn v. Hartwig*, 13 Fed. Appx. 389, 392 (7th Cir. 2001) (prisoners certainly have no constitutional right to a computer); *Taylor v. Coughlin,* 29 F.3d 39, 40 (2d Cir. 1994) (no constitutional right to access the courts with a typewriter with specific memory capabilities); *Jones v. Vidor,* 977 F.2d 581 (Table), 1992 WL 259298, at *1 (6th Cir.1992) ("officials are not required to provide prisoners with typewriters to facilitate their access to the courts"); *Sands v. Lewis,* 886 F.2d 1166, 1172 (9th Cir. 1989) (First Amendment does not require that inmate have access to typewriter in his cell); *American Inmate Paralegal Assoc. v. Cline,* 859 F.2d 59, 61 (8th Cir. 1998) (no constitutional right to a typewriter). The claim is frivolous and it will be dismissed without prejudice.

Based upon the foregoing, the court will dismiss the First Amendment claims found in Counts 28 and 40 as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). The plaintiffs may proceed with the First Amendment claims found in Counts 20, 21, 23, and 36.

### I. Equal Protection

Counts 22, 24, 30, 31, 42, and 44 raise equal protection claims. Under the Equal Protection Clause, persons who are similarly situated should be treated in the same manner. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To state a claim for an equal protection violation in a prison setting, an inmate "must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination . . .

. He must also show that the disparity in treatment cannot survive the appropriate level of scrutiny, which, in a prison setting, means that [a plaintiff] must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.'" *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation, quotation marks, and alterations omitted); *see also Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985). Courts have consistently held that in the absence of a fundamental right or a protected class, equal protection only requires that a regulation which results in unequal treatment of an inmate bear some rational relationship to a legitimate penological interest. *See McGinnis v. Royster*, 410 U.S. 263 (1973); *Hodges v. Klein*, 562 F.2d 276 (3d Cir. 1977). If the challenged state action involves a "suspect" classification based on race, alienage or national origin, or infringes on a fundamental constitutional right, a court must apply the strict scrutiny standard. *FCC v. Beach Communications, Inc.*, 503 U.S. 307, 313 (1993). "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

Count 22 alleges unreasonable search and seizure and violation of the right to equal protection because of a new prison policy implemented in 2005 wherein the DCC would no longer accept traveler's checks on behalf of inmates. More specifically, the complaint alleges that the policy change affects Fatir as he receives traveler's checks from England. Fatir alleges that for many years he received travelers checks while was housed in Arizona and Delaware institutions without problem or incident. The complaint alleges that United States money orders are unavailable in England without paying an exorbitant rate of exchange. Fatir alleges the change in policy violates his right to equal protection.

Fatir does not allege interference of a fundamental right or that he is a member of a protected class. Nor does not he alleges he is treated differently from any other inmate. Indeed, the allegations in the complaint indicate that the policy applies equally to all inmates. Accordingly, Count 22 fails to state a claim upon which relief may be granted.

Count 24 alleges violations of the Fourth and Fourteenth Amendments because DCC charges first class mail rates for all outgoing mail, even if the item could be mailed for a lesser cost. The plaintiffs allege this violates their right to equal protection because all United States citizens can utilize any of the various postage rates. As noted, to state a claim for an equal protection violation in a prison setting, an inmate must demonstrate that he was treated differently than others with whom he is similarly situated. The allegations in the complaint are that all DCC inmates are treated the same in the calculation of outgoing postage rates. The plaintiffs may be treated differently than "all other citizens," however "all other citizens" are not incarcerated, and therefore, not similarly situated with the plaintiffs. Accordingly, Count 24 fails to state a claim upon which relief may be granted.

Count 30 alleges that S-1 building, the only single room building in DCC, has a far greater proportion of white inmates housed there than the approximately twelve percent of the white prison population. The plaintiffs allege race discrimination in violation of the equal protection act and fair housing act. Count 30 does not allege that any of the plaintiffs are members of a suspect class, when or if they sought housing in the S-building, or which defendant was personally involved in any alleged discrimination. As currently pled, the defendants cannot adequately respond to Count 30. Therefore, it will be dismissed, without prejudice, with leave to amend.

Counts 31 and 42 allege unlawful racial bias and discrimination in job hiring and preference to white inmate in prison job assignments in violation of the Civil Rights Act, Equal Employment Opportunity Act, and the equal protection clause. The plaintiffs make general, all encompassing allegations that the highest paying inmate jobs are held by white inmates despite the fact that the inmate population is overwhelmingly black.

Counts 31 and 42 fail to state a claim upon which relief may be granted. Neither Count alleges that any of the plaintiffs are members of a suspect class, when or if they sought jobs within the prison system, or which defendant was personally involved in any alleged discrimination. As currently pled, the defendants cannot adequately respond to Counts 31 and 42. Therefore, they will be dismissed, without prejudice, with leave to amend.

Count 44 alleges a violation of the plaintiffs' right to equal protection because Jewish inmates are provided kosher meals, but kosher meals are refused to Gentiles and African-American inmates. The plaintiffs allege this amounts to "state-sponsored religion in violation of the First Amendment." The claim is frivolous. "[A]bsent religious or medical[ly] peculiar circumstances, a prisoner does not have a right to a specialized diet while incarcerated, vegetarian or otherwise." *Word v. Croce*, 169 F.Supp.2d 219, 226 (S.D.N.Y. 2001) (quoting *Maulding v. Peters*, No. 92 C. 2518, 1995 WL 461914, at *5 (N.D.Ill. Aug. 2, 1995). Moreover, the DCC has a constitutional obligation to serve an inmate a religious diet. An inmate requesting a special diet on the basis of a sincerely held religious belief has "a constitutionally protected interest upon which the prison administration may not unreasonably infringe." *See DeHart v. Horn*, 227 F.3d 47, 52 (3d Cir. 2000).

Based upon the foregoing, the court will dismiss without prejudice the equal protection

-22-

claims found in Counts 22, 24, 30, 31, 42, and 44 as frivolous and for failure to state a claim

upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). The

plaintiffs will be given leave to amend Counts 30, 31, and 42.

### J. Access to Courts

Counts 26, 27, 35 and 46 contain various allegations of denial of access to courts.

Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v.*

*Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give inmates access to law libraries

or direct legal assistance). "Many courts have found a cause of action for violation of the right of

access stated where it was alleged that prison officials confiscated and/or destroyed legal

materials." *Zilich v. Lucht*, 981 F.2d 694, 695 (3d Cir. 1992) (citations omitted).

A violation of the First Amendment right of access to courts is only established where a

litigant shows that he was actually injured by the alleged denial of access. The actual injury

requirement is a constitutional prerequisite to suit. *Lewis v. Casey*, 518 U.S. 343, 351 (1996);

*Christopher v. Harbury*, 536 U .S. 403, 415 (2002) (explaining that the constitutional right of

access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury

by being shut out of court"). An actual injury is shown only where a nonfrivolous, arguable

claim is lost. *Christopher,* 536 U.S. at 415.

Count 26 alleges the unlawful seizure and destruction of Fatir's legal papers by Krumka

and Morgan during the time Fatir was housed in SHU and MHU. Count 26, as currently pled,

fails to state a claim upon which relief may be granted. Count 26 does not apprise the defendants

when the alleged destruction occurred. Nor does the count allege an actual injury by Fatir.

Accordingly, it will be dismissed, with leave to amend.

Count 27 alleges the prison grievance procedure is unlawful and violates the separation of powers because the executive branch (i.e., DOC) infringes upon the judicial branch in deciding when a matter can be brought to court. The plaintiffs do not allege they are deprived of the ability to file a grievance or that they have suffered an actual injury. Count 27 will be dismissed without prejudice as frivolous and for failure to state a claim upon which relief may be granted.

Count 35 alleges that the DCC grievance process is unconstitutional due to delay in not processing and hearing grievances in a timely manner. The plaintiffs allege that Merson and McCramer obstruct the grievance process by dismissing most grievances without a hearing.

Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances. *Booth v. King*, 346 F.Supp.2d 751, 761 (E.D. Pa. 2004). This is because inmates do not have a constitutionally protected right to a grievance procedure. *Burnside v. Moser*, 138 Fed. Appx. 414, 415 (3d Cir. 2005). Nor does the existence of a grievance procedure confer prison inmates with any substantive constitutional rights. *Hoover v. Watson*, 886 F.Supp. 410, 418-419 (D. Del.), *aff'd* 74 F.3d 1226 (3d Cir. 1995). Count 35 fails to state a claim upon which relief may be granted. Therefore, the court will dismiss Count 35 as it has no arguable basis in law or in fact.

In Count 46 the plaintiffs allege there is mold in the law library ceiling and that the danger posed by mold obstructs their right to the access the courts. Count 46 does not allege the plaintiffs were not allowed to visit the law library. Nor do they allege they were on the losing end of a nonfrivolous, arguable claim due to the library conditions. The claim is frivolous and will be dismissed.

-24-

The court will dismiss without prejudice the access to courts claims contained in Counts 26, 27, 35, and 46 as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Fatir will be given leave to amend Count 26.

### K. Fatir's Personal Property

Count 25 alleges the unlawful confiscation and/or destruction of Fatir's personal property upon his return to DCC from an Arizona institution. A prisoner's due process claim based on random and unauthorized deprivation of property by a state actor is not actionable under § 1983, whether the deprivation is negligent or intentional, unless there is no adequate post-deprivation remedy available. *See Parratt v. Taylor,* 451 U.S. 527, 542 (1981), *overruled on other grounds by,* 474 U.S. 327 (1986); *Hudson v. Palmer,* 468 U.S. 517, 533 (1984). Plaintiff has available to him the option of filing a common law claim for conversion of property. Inasmuch as Delaware law provides an adequate remedy for plaintiff, he cannot maintain a cause of action pursuant to § 1983. *See Hudson,* 468 U.S. at 535; *Nicholson v. Carroll*, 390 F.Supp. 2d 429, 435 (D. Del. 2005); *Acierno v. Preit-Rubin, Inc.*, 199 F.R.D. 157 (D. Del. 2001) (other citations omitted). As currently presented, Count 25 lacks an arguable basis in law or in fact and must, therefore, be dismissed as frivolous. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

### L. Thirteenth Amendment

Counts 29 and 36 contain allegations that DCC has subjected the plaintiffs to slavery. The Thirteenth Amendment prohibits slavery and involuntary servitude. U.S. Const. amend. XIII. The claims are frivolous and do not merit discussion. To the extent that Counts 29 and 36 allege slavery and/or involuntary servitude, each lacks an arguable basis in law or in fact and

must, therefore, be denied as frivolous *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

### M. Inmate Accounts

Count 32 alleges that the defendants have misappropriated "millions of dollars"
belonging to the plaintiffs and the "rest of the DCC inmate population." Count 32 alleges that
the defendants used inmate commissary account funds to erect a fence surrounding D-building.
They allege using the inmate commissary funds in this way violated their Fourth Amendment
rights. To the extent that Count 32 raises a claim for the "rest of the DCC inmate population",
the claim is dismissed. The plaintiffs, however, will be allowed to proceed with Count 32 on
their own behalf.

Similarly, Count 39 alleges the taking of funds allegedly belonging to the plaintiffs.
Count 39 alleges that the plaintiffs have a right to interest accrued on their inmate accounts and
the inmate commissary fund. The plaintiffs allege the interest is seized from the accounts and
used by the DOC and the defendants in violation of the Fourth Amendment and federal and state
antitrust laws. The plaintiffs will be allowed to proceed with Count 39 to the extent it alleges an
unlawful taking of property. The remainder of the claims in Count 39 will be dismissed without
prejudice.

### N. Medical Payments

Count 33 alleges the defendants are unlawfully charging the plaintiffs nominal amounts
for hospital visits and medication orders in violation of the *Ex Post Facto* Clause and the Fourth
Amendment. The plaintiffs allege the violations because they were incarcerated prior to the time
the law changed permitting the seizure of medical payments from wards of the state. There are
no allegations the plaintiffs have been denied or delayed medical treatment of medication as a

result of the policy.

Initially, the court notes that co-pay policies are constitutionally permissible if they do not interfere with timely and effective treatment of serious medical needs. *See Reynolds v. Vagner*, 128 F.3d 166, 174 (3d Cir. 1997) (finding co-pay policy constitutional); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404 (9th Cir. 1985); *Piper v. Alford*, No. 3:02-CV-2640-P, 2003 WL 21350215, (N.D. Tex. June 4, 2003) (finding jail policy requiring payment for medical services did not raise constitutional issue); *Bihms v. Klevenhagen*, 928 F.Supp. 717, 718 (S.D. Tex. 1996) (same).

The co-pay policy does not violate the *Ex Post Facto* Clause.  The United States Constitution provides that "No State shall . . . pass any . . . ex post facto Law, . . . ." U.S. Const. Art I, 10, cl. 1.  An *ex post facto* law is one that "retroactively alters the definition of crimes or increases the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990).  It prohibits the infliction of a "punishment" upon a citizen. *United States v. O'Neal,* 180 F.3d 115, 122 (4th Cir. 1988).  A co-pay policy is not "punishment" for purposes of the *Ex Post Facto* Clause. *Id.*; *see also Baker v. Gonzalez*, No 06-CV-91-HRW, 2007 WL 141050 (E.D. Ky. Jan 17, 2007); *Harris v. Ozmint*, 2006 WL 2471835, *5-6 (D.S.C. Aug. 24, 2006) (South Carolina inmate co-pay program is not an unconstitutional *ex post facto* law because charges for medical services are clearly not punitive in nature); *Hicks v. Battle,* No. 5:03-CV-307(DF), 2006 WL 3230465 (M.D. Ga. Nov. 7, 2006) (rejecting *ex post facto* claim for medical co-pays); *Gardner v. Wilson*, 959 F.Supp. 1224, 1229 (C.D. Cal. 1997) (rejecting *ex post facto* claim).

As is evident from the foregoing, the policy requiring medical co-pay does not violate the *Ex Post Facto* Clause.  Accordingly, Count 33 fails to state a claim upon which relief may be

granted, and it will be dismissed without prejudice by the court.

### O. Contact Visits

Count 34 alleges that when the plaintiffs were originally incarcerated they had a statutory

right to contact visits. The plaintiffs take exception to a barrier[6] erected by DOC contending that

the barrier violates an official memo written by former DCC Warden Walter W. Redman

("Warden Redman") allowing inmates and visitors to hold hands. Redman was DCC's warden

from April 1, 1976 to May 31, 1991.

The plaintiffs complain that not allowing contact visits violates their right to "due

process, DOC policy, *ex post facto* and DOC' mission, purpose and obligation to promote the

maintenance of family relationships between prisoners and their families." The plaintiffs also

complain of "paltry" 45 minute weekend visits and 90 minute weekday visits. The plaintiffs rely

upon a memorandum written by former Warden Redman, at the very latest, sixteen years ago, if

not longer. The plaintiffs allege they have a statutory right to contact visits, but provide no

citation to such a statute.

It is now generally accepted that inmates do not have an absolute right to unlimited or

unregulated contact visits. *Bagwell v. Brewington-Carr,* No. Civ.A. 97-714-GMS, 2000 WL

1239960, at *4 (D. Del. Aug. 25, 2000) (citing *Bazzetta v. McGuinness*, 124 F.3d 774, 779 (6th

Cir. 1997); *Toussaint v. McCarthy*, 801 F.2d 1080, 1113 (9th Cir. 1986) (collecting cases from

the various circuits); *see also Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979) (noting that

visitation privileges "must yield, where necessary, to preserve institutional security"). If the

prison regulations governing contact visits are reasonably related to a legitimate penological

---

[6]Described as the "Berlin Wall".

interest (such as maintaining a safe, secure, and orderly institution), then the policies will pass

constitutional muster. *See Inmates of the Allegheny County Jail v. Pierce,* 612 F .2d 754, 758

(3d Cir. 1979) (quoting *Bell v. Wolfish,* 441 U.S. 520, 538-39 (1979). The prohibition of contact

visits is a reasonable response to legitimate concerns of prison security. *Pierce,* 612 F .2d at 759.

When an inmate is not precluded from visiting with members of his family and others, but only

from physical contact with those individuals, the restriction is specifically tailored to meet the

perceived security problem. *Id.* at 159-60.

As is apparent from the allegation in Count 34, prison official at DCC have apparently

decided that the best way to maintain order and stability within the prison is to eliminate contact

visits. Moreover, there are no allegations that the plaintiffs are completely prohibited from

receiving visitors. Indeed, the plaintiffs allege visits are allowed, albeit with the visitors

separated by a large wall. Count 34 lacks an arguable basis in law or in fact and must, therefore,

be dismissed as frivolous. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

**P. Education**

Count 41 alleges the defendants have failed to provide vocational and technical education

programs for plaintiffs. Count 41 specifically alleges that Whalen failed to create vocational/

technical classes. Additionally, the complaint alleges a misappropriation of federal and/or state

funds designated for the plaintiffs' vocational education in violation of the Fourth Amendment's

protection against unreasonable search and seizures.

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him

of a federal right, and that the person who caused the deprivation acted under color of state law.

*West v. Atkins,* 487 U.S. 42, 48 (1988). Unfortunately for the plaintiffs, prisoners have no

-29-

constitutional right to an education. *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989);

*Rizzo v. Dawson*, 778 F.2d 527, 530-31 (9th Cir. 1985); *Garza v. Miller*, 688 F.2d 480, 486 (7th

Cir. 1982); *Longendorfer v. Roth*, No. 92-2180, 1992 WL 95919, at *1 (E.D.Pa. Apr. 23, 1992).

Also, as discussed in Section III. G., the plaintiffs have no property interest in federal and/or state

funds and, therefore, have failed to state a claim upon which relief may be granted.  Count 41

lacks an arguable basis in law or in fact and will, therefore, be denied pursuant to 28 U.S.C. §

1915(e)(2)(B) and § 1915A(b)(1).

### Q. Hiring Practices

Count 48 alleges gross negligence by the state personnel office in the hiring or promoting

of unqualified individuals to fill DOC positions.  Count 48 makes specific reference to

Machington, Director of the State Personnel Department.

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him

of a federal right, and that the person who caused the deprivation acted under color of state law.

*West v. Atkins,* 487 U.S. 42, 48 (1988).  Count 48 does not allege that the plaintiffs have been

deprived of a federal right, and it must be dismissed for this reason alone.

Moreover, it appears that the plaintiffs seek to hold Machington liable based solely upon

his supervisory position.  Supervisory liability cannot be imposed under § 1983 on a respondeat

superior theory.  *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658

(1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  In order for a supervisory public official to be held

liable for a subordinate's constitutional tort, the official must either be the "moving force

[behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the

person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (citing *City of Canton*

*v. Harris*, 489 U.S. 378, 389 (1989)). There is nothing in the complaint to indicate that

Machington was the "driving force [behind]" the plaintiffs' allegations. Additionally, the

complaint does not indicate that he was aware of the plaintiffs' allegations and remained

"deliberately indifferent" to their plight. *Sample v. Diecks*, 885 F.2d at 1118. Therefore, the

court will dismiss without prejudice Count 48 as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)

and § 1915A(b)(1).

## IV.    CONCLUSION

Based upon the foregoing analysis, the court will dismiss without prejudice Counts 7, 8,

10, 11, 14, 16, 17, 18, 19, 22, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 37, 38, 40, 41, 42, 44, 45, 46,

47, 48, 49, and  50. The court will dismiss that portion of Count 36 alleging slavery; that portion

of Count 32 raising a claim for the "rest of the DCC inmate population"; and that portion of

Count 39 alleging violations of federal and state antitrust laws. The court will dismiss the

following defendants:  Maureen Whalen, Cpl. Krumka, Officer Morgan, Lisa Merson, Alan

Machington, Michael Little, Correctional Medical Services, First Medical Services, Michael

McCramer, and David Hall.

The plaintiffs will be allowed to proceed on Counts 1, 2, 3, 4, 5, 6, 9, 12, 13, 15, 20, 21,

and 23; Count 32 only on behalf of the plaintiffs; the First Amendment claim alleging restriction

of books claim in Count 36; and the unlawful taking of interest in Count 39. The plaintiffs will

be given leave to amend Fatir's access to the courts claim found in Count 26; the equal

protection/race discrimination claims found in Counts 30, 31 and 42; and Fatir's medical needs

claim in Count 50.  An appropriate order will be entered.

_____
UNITED STATES DISTRICT JUDGE

_____July 16_____, 2007
Wilmington, Delaware

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD BOYER, AMIR FATIR, and WARREN WYANT, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 06-694-GMS ) |
| COMMISSIONER STANLEY TAYLOR, PAUL HOWARD, RONALD HOSTERMAN, WARDEN THOMAS CARROLL, MAUREEN WHALEN, DEPUTY WARDEN DAVID PIERCE, JENNY HAVEL, CPL. KRUMKA, OFFICER MORGAN, JANET HENRY, LISA MERSON, ALAN MACHINGTON, CPL. ONEY, MICHAEL LITTLE, FLOYD DIXON, CORRECTIONAL MEDICAL SERVICES, FIRST MEDICAL SERVICES, MARVIN CREASY, JAMES P. SATTERFIELD, INSPECTOR LT. PALOWSKI, MICHAEL MCCRAMER, and DAVID HALL, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**ORDER**

At Wilmington this _16th_ day of _July_____, 2007, for the reasons set forth in the

Memorandum issued this date,

1. The claims against the defendants Maureen Whalen, Cpl. Krumka, Officer Morgan,

Lisa Merson, Alan Machington, Michael Little, Correctional Medical Services, First Medical

Services, Michael McCramer, and David Hall are **DISMISSED** without prejudice as frivolous

and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §

1915(e)(2)(B) and § 1915A(b)(1).

2.  Counts 7, 8, 10, 11, 14, 16, 17, 18, 19, 22, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 37, 38, 40, 41, 42, 44, 45, 46, 47, 48, 49, and  50 are **DISMISSED** without prejudice as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).  Count 36 alleging slavery; Count 32 raising a claim for the "rest of the DCC inmate population"; and Count 39 alleging violations of federal and state antitrust laws are **DISMISSED** without prejudice as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

3.  The plaintiffs are **GRANTED** given leave to amend the following:  Count 16,  Fatir's access to the courts claim; Counts 30, 31, and 42 equal protection/race discrimination claims; and Count 50 Fatir's medical needs claim.  The plaintiffs shall have thirty (30) days to file amendments to Counts 16, 30, 31, 42, and 50.  If an amended complaint is not filed within the time provided, the case will proceed on the complaint and amended complaint found at D.I. 10 and D.I. 18.  The plaintiffs are advised that each remaining plaintiff is required to sign any amendment or pleading with the court.

4.  The court has identified what appear to be cognizable claims within the meaning of 28 U.S.C. § 1915A(b) in  Counts 1, 2, 3, 4, 5, 6, 9, 12, 13, 15, 20, 21, and 23; Count 32 as to the unlawful taking of funds on behalf of the plaintiffs; Count 36 as to the First Amendment claim alleging restriction of books claim; and Count 39 as to the unlawful taking of interest.  The foregoing counts are brought against the defendants former Commissioner Stanley Taylor, former Bureau Chief Paul Howard, Ronald Hosterman, Warden Thomas Carroll, Deputy Warden David Pierce, Jenny Havel, Janet Henry, Cpl. Oney, Floyd Dixon, Marvin Creasy, James P. Satterfield, and Lt. Palowski.

-2-

IT IS FURTHER ORDERED that:

1. The clerk of the court shall cause a copy of this order to be mailed to the plaintiffs.

2. Pursuant to Fed. R. Civ. P. 4(c)(2) and (d)(2), the plaintiffs shall complete and return to the clerk of the court an **original** "U.S. Marshal-285" form for **remaining defendants Stanley Taylor, Paul Howard, Ronald Hosterman, Warden Thomas Carroll, Deputy Warden David Pierce, Jenny Havel, Janet Henry, Cpl. Oney, Floyd Dixon, Marvin Creasy, James P. Satterfield, and Lt. Palowski** as well as for the Attorney General of the State of Delaware, 820 N. FRENCH STREET, WILMINGTON, DELAWARE, 19801, pursuant to DEL. CODE ANN. tit. 10 § 3103(C). **The plaintiffs shall provided the court with copies of the complaint (D.I. 10) and the amended complaint (D.I. 18) for service upon each of the remaining defendants. The plaintiffs are notified that the United States Marshal will not serve the complaint and amended complaint until all "U.S. Marshal 285" forms have been received by the clerk of the court. Failure to provide the "U.S. Marshal 285" forms for the remaining defendant(s) and the attorney general within 120 days from the date of this order may result in the complaint being dismissed or defendant(s) being dismissed pursuant to Federal Rule of Civil Procedure 4(m).**

3. Upon receipt of the form(s) required by paragraph 2 above, the United States Marshal shall forthwith serve a copy of the complaint (D.I. 10), the amended complaint (D.I. 18), this order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver" form upon the defendant(s) identified in the 285 forms.

4. Within **thirty (30) days** from the date that the "Notice of Lawsuit" and "Return of Waiver" forms are sent, if an executed "Waiver of Service of Summons" form has not been

received from a defendant, the United States Marshal shall personally serve said defendant(s)

pursuant to Fed. R. Civ. P. 4(c)(2) and said defendant(s) shall be required to bear the cost related

to such service, unless good cause is shown for failure to sign and return the waiver.

5. Pursuant to Fed. R. Civ. P. 4(d)(3), a defendant who, before being served with process

timely returns a waiver as requested, is required to answer or otherwise respond to the complaint

within **sixty (60) days** from the date upon which the complaint, this order, the "Notice of

Lawsuit" form, and the "Return of Waiver" form are sent. If a defendant responds by way of a

motion, said motion shall be accompanied by a brief or a memorandum of points and authorities

and any supporting affidavits.

6. No communication, including pleadings, briefs, statement of position, etc., will be

considered by the court in this civil action unless the documents reflect proof of service upon the

parties or their counsel.

7. **NOTE:** *** When an amended complaint is filed prior to service, the court will

**VACATE** all previous service orders entered, and service **will not take place**. An amended

complaint filed prior to service shall be subject to re-screening pursuant to 28 U.S.C. §1915(e)(2)

and § 1915A(a). ***

8. **NOTE:** *** Discovery motions and motions for appointment of counsel filed prior to

service will be dismissed without prejudice, with leave to refile following service. ***

UNITED STATES DISTRICT JUDGE