# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

Boyer, et al.,                                    )
        Plaintiffs,                         )
    v.                                            )          C.A. No. 1:06-cv-694-GMS
Taylor, et al.,                                   )
        Defendants.                        )

## MOTION TO AMEND THE COMPLAINT

Pursuant to Rules 15(a) and 19(a), Fed. R. Civ. P., Plaintiff Amir Fatir, pro se, requests

leave to file an amended complaint adding parties and claims.

1. This is plaintiffs' first amendment to the complaint.

2. Parties have yet to be served and thus the discovery process has not yet begun

or ended.

3. No prejudice will be experienced by the opposing party by granting this

motion.

4. This Court should grant freely to amend a complaint. *Forman v. Davis*, 371

U.S. 178, 182, 83 S. Ct. 227 (1962); *Interroyal Corp. v. Sponseller*, 889 f.2d 108, 112 (6th

Cir.), *cert denied*, 494 U.S. 1091 (1990).

Date:  July 11, 2007

FILED

JUL 1 6 2007

RG scam
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Respectfully submitted,

Amir Fatir

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

Boyer, et al.,                              )
              Plaintiffs,                   )
      v.                                    )          C.A. No. 1:06-cv-694-GMS
Taylor, et al.,                            )
              Defendants.                   )

### PROPOSED AMENDED COMPLAINT
**Added Parties**

Added to the complaint as Defendants are Rosalie Vargas, Sgt. Bailey, Sgt. Kuschel, Lt.
Forbes.

Rosalie Vargas ("Vargas") resides or works at 1181 Paddock Road, Smyrna, DE
19977 and is employed as "Correctional Officer" at the Delaware Correctional Center.
This defendant, acting under color of law, performed the below violation of statute and
the U.S. Constitution detailed in Count 49.

Sgt. Kuschel ("Kuschel") resides or works at 1181 Paddock Road, Smyrna, DE
19977 and is employed as "Sergeant" at the Delaware Correctional Center. This
defendant, acting under color of law, performed the below violation of statute and the
U.S. Constitution detailed in Count 51.

Lt. Forbes ("Forbes") resides or works at 1181 Paddock Road, Smyrna, DE
19977 and is employed as "Lieutenant" at the Delaware Correctional Center. This
defendant, acting under color of law, performed the below violation of statute and the
U.S. Constitution detailed in Count 52.

Sgt. Bailey ("Bailey") resides or works at 1181 Paddock Road, Smyrna, DE
19977 and is employed as "Sergeant" at the Delaware Correctional Center. This

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

defendant, acting under color of law, performed the below violation of statute and the

U.S. Constitution detailed in Count 52.

## Added and/or Amended Causes of Action

### Count 49

Count 49 is amended as follows:

Paragraph 3 now reads, "Officer Rosalie Vargas issued Plaintiff Fatir a 24 hour

lock-up in violation of his right to due process. That 24 hour lock-up was used by

Defendant Michael Little to deny Fatir a job in the prison law library."

Paragraph 4 as amended now reads: "Defendants Taylor, Howard, Carroll,

Pierce, Henry, Dixon, Creasy, Satterfield, and Vargas are responsible for the violation(s)

in this count."

### Count 51

1. Sgt. Kuschel and Lt. Forbes forced Plaintiff Fatir to do slave labor in violation

of the 13th Amendment to the U.S. Constitution and due process afforded by the Fifth and

Fourteenth Amendments to the U.S. Constitution.

2. Sgt. Kuschel and Lt. Forbes did punish Fatir for bringing a book to the dining

hall when the regulations of DCC do not prohibit him from so doing. Inmate Housing

Rules, page 25, XIII. **FOOD SERVICE**, section F states: "Inmates are not permitted to

take condiments or commissary items to the Dining Hall." Books are not permitted and,

in fact, are routinely allowed with some lieutenants even reminding prisoners, "Don't

forget to pick up your books when you leave the dining hall."

3. Fatir was forced to perform unpaid slave labor without the benefit of a hearing

of any sort to determine 1) if a rule had been violated, 2) if Fatir had committed the

2

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

violation, 3) if the orders given Fatir were legal and authorized and 4) what the appropriate punishment should be if Fatir had violated any rule.

    4. Rule infractions are heard and judged by the institution's Adjustment Board. Neither Lt. Forbes nor Sgt. Kuschel work on the Adjustment Board and are not authorized to enforce corporal punishment at their whim and fancy.

    5. After Fatir performed the unpaid slave labor as commanded by Lt. Forbes and Sgt. Kuschel, Sgt. Kuschel sought to retaliate further by sending an email to Captain Hazzard seeking to have Fatir moved out of Minimum security because Fatir had the audacity to ask whether he had committed any type of violation and whether Defendants Kuschel and Forbes were authorized to force slave labor corporal punishment upon Fatir.

    Defendants Forbes and Kuschel are responsible for the violation(s) in this count.

### Count 52

    1. Plaintiff Fatir followed the appropriate procedure and sought to resolve his complaint against Defendants Forbes and Kuschel by discussing the issue with unit staff prior to filing a grievance. Section XIX of the Inmate Housing Rules, page 30, states: "When an inmate has a complaint, he **must** first discuss it with the housing unit staff because most problems can be resolved at this level. If no solution is found, the inmate may then submit his complaint in writing on the Institutional Grievance Form" [emphasis added].

    2. While Fatir was in the process of discussing the complaint with Lt. Salas, who was in charge of the unit that day, Sgt. Bailey butted in and told Fatir he had no right to know any of the rules and told Fatir to "file a grievance!"

3

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

3. Later that day Sgt. Bailey saw Fatir posting the grievance inside the grievance box and followed Fatir to the Inmate Activity Center where he was scheduled to meet his counselor to discuss her request that design a program for prisoners with 90 days or less. Bailey took Fatir's I.D., ordered Fatir to follow him back to W-building, summoned two other officers (Lewis and Folke) to come with him into a closed, windowless room with Fatir and there threatened him with both physical harm and with being sent to SHU Supermax.

4. Bailey told Fatir he was never to "challenge me or my staff" by asking if certain rules existed. He told Fatir he could not question anything he (Bailey) said. "Whatever I say is a rule," shouted Bailey, "is a rule." And he threatened Fatir with more harm if Fatir did not acknowledge that he (Bailey) was "god" in W-Building (Minimum Security).

5. Bailey ordered Lewis and Folke to write Fatir up if they found "any rules, policies or procedures whatsoever" in his possession and to send him straight to the SHU without a hearing or trial.

6. Officer Lewis chimed in, "No, he should go to the hole."

7. Bailey then insisted that Fatir verbally acknowledge that he was the unquestioned authority and "god" of W-Building. When Fatir refused to acknowledge that Bailey was his god – which would be a serious violation of Fatir's faith – Officer Lewis then stood up (after having sat down) and balled his fists as if on the verge of striking Fatir and pressed close to Fatir in a threatening manner. When Fatir did not permit the threatening words and gestures to provoke him Bailey wrote an email to Captain Hazzard stating that Fatir should be moved from W-Building for "organizing."

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

That was both a false statement and a violation of the Correctional Code of conduct's prohibition against making false reports.

8. On page 3, paragraph 4 of BOP 4.4 the grievance policy of the Bureau of Prisons ("BOP") prohibits any type of retaliation for filing a grievance: "The IGP prohibits reprisals against staff or inmates for their use or participation in the process." Sgt. Bailey's reprisals against Fatir for using the grievance process is a violation of BOP 4.4.

9. Sgt. Bailey violated DOC policy by retaliating against Fatir for filing a grievance and by accosting Fatir for obeying the proper procedure of discussing the situation with unit staff before filing a grievance in accordance with Section XIX, pg. 30 of the Inmate Housing Rules.

10. Sgt. Bailey's retaliatory, harassing and threatening actions violate Fatir's 5th and 14th Amendment Constitutional right of due process of law and his Sixth Amendment right of access to the courts since filing a futile grievance with the very people who have injured a prisoner is – because of the unconstitutional and unconscionable Prison Litigation Reform Act – necessary before a prisoner can exercise his purported right to access the courts.

11. By positioning himself as a "god" who cannot be questioned and by insisting that Fatir acknowledge him as "god of W-Building," Bailey did violate the 13th Amendment to the U.S. Constitution's prohibition against slavery.

12. Bailey further violated Fatir's First Amendment right to petition government for redress of grievance and his First Amendment right to refuse to worship any "god" in which he does not believe.

5

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

14. Defendants Taylor, Howard, Carroll, Pierce, Merson, McCramer and Bailey are responsible for the violations in this count.

### Count 21

Count 21 is amended to add the following:

7. Plaintiff Fatir was mailed a book entitled *Shakti: the Feminine Power of Yoga* by Victoria Davis which was rejected by the institution, allegedly for containing one or more nude illustrations.

8. The procedure for challenging rejected publications is flawed because the receiver never gets to see the material rejected and so is unable to ascertain whether or not the rejected material even contains what the prison administration claims it contains.

9. Censorship of *Shakti* is improper and violative of Fatir's First Amendment rights. If further violates *Wolf v. Ashcroft*, 297 F.3d 305 (3d Cir. 2002) and *Ramirez v. Pugh*, 379 F. 3d 122 (3d Cir. 2004).

10. DCC's censorship of non-obscene material violates Fatir's ex post facto protection since such censorship was not promulgated or permitted by DCC for the first 29 years of his incarceration.

11. DCC's censorship of non-obscene material also the 14th Amendment to the U.S. Constitution which states: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." If Fatir's freedom from censorship of non-obscene material is considered a "privilege," then that privilege is protected by the 14th Amendment and the acts of his jailers to abridge that privilege is a violation of the 14th Amendment. Since he had prior immunity against such censorship, DCC's current abridgement of his immunity violates the 14th Amendment.

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

12. DCC's censorship is overly broad, arbitrary and capricious. It violates DOC's own policy # 4.5 which holds that

> "The Warden may reject a publication only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity. The Warden may not reject a publication solely because its content is religious, philosophical, political, and social or because its content is unpopular or repugnant. Publications, which may be rejected by a Warden, include, but are not limited to, publications, which meet one of the following criteria:
>
> * It depicts or describes procedures for the construction or use of weapons, ammunition, bombs or incendiary devices;
>
> * It depicts, encourages, or describes methods of escape from correctional facilities or blueprints or descriptions of DOC institutions;
>
> * It depicts or describes procedures for brewing alcoholic beverages or the manufacture of drugs;
>
> * It is written in code;
>
> * It depicts, describes or encourages activities which may lead to the use of physical violence or group disruption;
>
> * It encourages or instructs in the commission of criminal activity;
>
> * It is sexually explicit material, which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity.

7

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

To assist staff in determining which materials may pose the type of threat, which warrants exclusion, the following guidelines are given.

1. A Warden may determine that sexually explicit material of the following types is to be excluded as potentially detrimental to the security and good order, or discipline of the institution, or as facilitating criminal activity:

   * Sado-masochistic

   * Bestiality

   * Involving children

2. Additionally:

   * The Warden must prohibit a sexually explicit publication if it is determined to pose a threat to the institution or is contrary to law. Child pornography materials, which are prohibited by law, are examples.

   * Sexually explicit material does not include material of a news or information type. Publications concerning research or opinions on sexual, health, or reproductive issues, or covering the activities of gay rights organizations or gay religious groups, for example, should be admitted unless otherwise a threat to legitimate institution interests.

   * Literary publications should not be excluded, solely because of homosexual themes or references, if they are not sexually explicit in a manner, which threatens legitimate institution interests.

8

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

> \* Sexually explicit material may nonetheless be admitted if it has
> scholarly value, or general social or literary value.
>
> Where a publication is found unacceptable, the Warden shall promptly
> advise the inmate in writing of the decision and the reasons for it. The
> notice must contain reference to the specific article(s) or material(s)
> considered objectionable. Inmates/Offenders may appeal any denial of
> publications. In questionable cases, institution staff should consult
> with legal stiff prison to and denial [sic]."

13. In rejecting *Shakti: the Feminine Power of Yoga*, defendants did not adhere to their own policy, BOP 4.5. *Shakti* does not contain obscenity, sadomasochism, bestiality or anything involving children.

14. The Warden did not notify Fatir of rejection within the prescribed time period nor indicate precisely what articles or materials were objectionable. In a form letter dated 5/25/07 Support Services Officer Carol Powell stated that *Shakti* was "rejected because it contains pictures that are sexually explicit / obscene in nature." Here the real bias and transgression of policy is indicated. Warden Carroll and DCC staff are defining any and all nudity as "sexually explicit/obscene in nature" and that is in diametric opposition to the Court decisions in this circuit and DOC's own policy as well as DOC's settlement agreement with Tightwad magazines.

15. DCC's censorship is overly broad and rejects all material that contains any nudity whatsoever, even nudity which meets the standards set by DOC's own policies.

16. DCC's censorship hides beneath the guise of "legitimate penal purpose of rehabilitation," but it actually operates to placate the fundamentalist Christian right

9

wing's endeavor to force Christian fundamentalist biases upon those who do not adhere to their pseudo-moral biases. Such censorship, driven by religious zealotry, violates the Constitution's requirement of a clear separation of church and state and plaintiffs' to their First Amendment right of freedom of the press and speech.

17. Since *Shakti* is a book about yoga it meets DCC's own exception to censorship afforded scholar works, educational materials and religious materials which may contain nudity.

18. Fatir is a published author whose writings analyze, critique and explain yogic philosophy including tantra yoga which is the ancient yoga system for sublimation of sexual energies created by the Black Dravidians of Ethiopian descent who inhabited the Indus Valley around 4000 B.C. and created the yoga system that has spread to the Western hemisphere today. Fatir's extensive writings on yoga, Taoism, Qaballah, Egyptian metaphysics, politics, alternative health, Islam, and Christianity be can read on http://amirfatir.tripod.com.

19. Denial of Fatir his right to read and study integral components of yoga when yoga is an essential part of Fatir's religion is a denial of Fatir's First Amendment right to practice, study and read about his religion instead of force-feeding Christian fundamentalists biases upon him under the guise of prison rehabilitation. When the fact that Treatment Administrator Ron Hosterman has publicly stated that he doesn't believe anyone can be rehabilitated, the false claim of rehabilitation as a reason for denying Fatir's right to read a yoga book is a travesty and a mockery of the very Constitution that high state prison officials swore to "uphold."

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

## Count 53

1. The movies *Borat* and *The Last King of Scotland* won academy awards. Yet DCC prohibited plaintiffs from viewing them because, allegedly, they contain some nudity. In the case of *Borat*, any comic nudity was blocked out and in the case of *Last King*, the nudity was intended to show the extreme cruelty of Ugandan President Idi Amin Dada's regime. It is racial bigotry and religious bias for defendants to permit the viewing of naked Jews in *Shindler's List* as "rehabilitative" but ban the viewing of naked Africans in *The Last King of Scotland* as obscene. Plaintiffs ask this court to remove the yoke of DOC's virulent racial bigotry and backward Jim Crow cultural ignorance from their necks and to require that DOC find its way out of the mythical antebellum Deep South into the 21st Century.

2. The purported purpose of the DOC is to rehabilitate prisoners and prepare them to return to society. By such overreaching censorship the administration accomplishes the exact opposite. *Borat* was historical in the sense that no movie had ever been filmed in the manner in which it was filmed. It also helped Americans – who are among the planet's least introspective and self-critical – to view its pervasive anti-Arab racism in an atmosphere of humor in this post-9/11 "open season on rag heads" climate. *The Last King of Scotland* covered an important part of African history and politics and was vitally significant to an 80% Black prison population which is inundated by the DOC brass with black exploitation movies that inspire black-on-black crime, denigration of women and the genocidal culture of drug criminality and modern day jigaboo buffoonery (also known as Thug Life). True treatment professionalism would require that anyone

11

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

who got driven to wild sexual behavior due to either *Borat* or *Last King* be examined and treated before being unleashed on the community. How can DOC treat people when it hides from them those things which could be impetuses for maladaptive behavior? In the current cover-your-posterior duck and run mode of "treatment," sexual time bombs will never be identified because of DOC's head-in-the-sand ostrich approach to normal cultural stimuli. By banning the viewing of films, books and magazines which are commonplace in the community, DOC is failing to prepare men to manage urges which modern capitalistic consumerism will excite and exploit unrelentingly the moment they are released from prison. With such blind leading the blind it is little wonder the DOC's recidivism rate is a monument to their spectacular rehabilitative failure.

3. Denial of the above movies violates plaintiffs' First Amendment rights. It also violates the right of plaintiffs to determine how their money is spent.

4. The three weekly movies shown at DCC are paid for by the commissary money that belongs to prisoners, including plaintiffs.

5. Since DCC does not pay for the movies, it has no right to stop plaintiffs from viewing movies which are legal and not by any objective measure "obscene."

6. Defendants claim that such movies are prohibited by some invisible "inmate committee" on movies. Since prisoners did not select this invisible "committee" and never authorized this "committee" to decide which movies they can and cannot view, restricting movies based upon the alleged decision of some invisible inmate committee is violative of the First Amendment, due process of law and unlawful search and seizure.

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

7. This invisible committee lacks the degrees, training and education in psychology, psychiatry, philosophy, ethics and film production to determine which movies should and should not be viewed by the rest of the population.

8. Since members of the alleged committee view the movies and then deny the rest of the population the same right, the prison violates the equal protection clause of the 14th Amendment by permitting some inmates to enjoy movies while denying that right, quite arbitrarily and capriciously, to others.

9. Defendants Taylor, Howard, Hosterman, Carroll, Pierce, Havel, Merson, and McCramer are responsible for the violation(s) in this count.

## Count 34

This count is amended to add the following:

18. The women's facility (Baylor Correctional Institute formerly WCI) allows women prisoners to have overnight weekend visits with their children. They have no cement Berlin Wall separating them from their visits and are allowed to sit on couches, enjoy snacks from machines and visit for longer periods with a modicum of comfort.

19. Denial of same or similar visiting accommodations and regulations for male prisoners at DCC is sex discrimination which violates the equal protection clause of the Fourteenth Amendment to the U.S. Constitution.

## Count 54

1. Plaintiffs are forced to sleep upon mattresses that are made for children. Adult male mattresses must be at least 6 ½ feet long and 2 ½ feet wide. DCC mattresses are only 5'10" long and 2 feet wide.

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

2. Denial of appropriately sized mattresses to plaintiffs causes sleep deprivation, poor sleep, hypertension, pains and injuries to legs and arms and cuts off circulation to limbs which must be laid upon because of the size of the mattresses.

3. This violates the Constitution's 8th Amendment prohibition against cruel and unusual punishment and shows deliberate indifference on the part of defendants.

4. Defendants Taylor, Howard, Hosterman, Carroll, Pierce, Havel, Dixon, Satterfield, Creasy, Merson, and McCramer are responsible for the violation(s) in this count.

## Count 55

1. Women offenders in Delaware receive lighter sentences than men.

2. Women offenders in Delaware are released on parole after serving less time than men.

3. Even when the same crime has been committed, Women prisoners in Delaware do less time, are indicted at a lower indictment level, make probation and parole more readily and receive more consideration at the Pardon Board than do men.

4. Women prisoners are seldom forced to do time in high maximum security prisons due to the "points system" inflicted upon male prisoners.

5. Male prisoners are required to do more treatment programs and classes to even make parole than the women are required to do.

6. Women prisoners are allowed to order pizza, cheese steaks, chicken and other things weekly while male prisoners are never allowed to do so.

7. Women prisoners receive better medical care than do men prisoners.

14

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

8. The preferred treatment of women prisoners over men prisoners violates the equal protection clause of the 14th Amendment to the U.S. Constitution and is gender and sex discrimination against male prisoners in Delaware.

9. Defendants Taylor, Howard, Hosterman, Carroll, Pierce, Havel, Dixon, Satterfield, Creasy, Merson, First Medical Services, Correctional Medical Systems, and McCramer are responsible for the violation(s) in this count.

### Count 56

1. Plaintiff Amir Fatir filed, wrote, argued and won the portion of the lawsuit *Masjid Muhammad-DCC v. Keve, et al.,* 479 F. Supp. 1311 (Civ. A. No. 77-221).

2. Judge Stapelton's order states:

> The individual plaintiffs are entitled to injunctive relief which will assure their access to the information regarding the pork content of food served at D.C.C. which is available to the kitchen staff. In addition, they have established their right to have mail addressed to them solely in their Muslim names delivered as any other mail and their right to be free of the imposition of punishment of any kind as a result of their failure to use or acknowledge their non-Muslim names. Finally, each of the individual plaintiffs is entitled to have a judgment against Superintendent Redman entered in his favor in the amount of One Dollar.

2. One of the defendants in the suit was James Vaughn, then the Commissioner of Corrections.

3. Until December 2004 defendants were, in the main, in compliance with the court's order. Plaintiff Fatir was addressed by his legal name ("Amir Fatir"). His I.D.

15

badge bore that name. Medical, classification and all other activities were conducted in
that name including parole and pardon proceedings. Indeed, his transfer to Arizona was
in the name Amir Fatir.

4. While Fatir was in Arizona, defendant Vaughn, now Senator Vaughn, colluded
with Warden Snyder to get passed a state law which permitted DOC to against address
those plaintiffs (including Fatir) by their slave names.

5. Fatir changed his name more than 30 years ago and has published books,
gotten married, argued legal cases and lived his life under his name.

6. In violation of the Supremacy Clause of the U.S. Constitution DCC and DOC
now is forcing Fatir to answer to the slave name, wear I.D. badges in that slave name and
have that name posted on rosters, boards, posters and classifications.

7. No state can legally change its law and apply it to get around an order from the
federal court.

8. Defendants are bound by this Court's ruling in *Masjid Muhammad-DCC*.

9. Plaintiff requests this court to order defendants to fully comply with the order
in *Masjid Muhammad* and cease using Fatir's slave name.

10. *Masjid Muhammad-DCC* plaintiff Abdul-Haqq Haad (Wilbur) Shabazz was
placed in SHU Supermax and has been held there for more than two years for refusing to
reply to his slave name, Wilbur Johnson, which was a right he won in *Masjid
Muhammad*.

11. Plaintiff asks this court to order defendants to allow Fatir to inspect the
kitchens at DCC to monitor compliance with the non-pork order in *Masjid Muhammad-
DCC*.

16

WHEREFORE, plaintiffs request that the court grant the following relief (in addition to the relief already requested in the original complaint):

A. Issue a declaratory judgment stating that:

1. Sgt. Kuschel and Lt. Forbes' forcing Fatir to perform unpaid labor was slave labor in violation of the 13th Amendment to the U.S. Constitution.

2. Sgt. Kuschel's and Sgt. Bailey's emails to Captain Hazzard seeking to move Fatir from Minimum was retaliatory in nature and violative of DOC policy and the U.S. Constitution.

3. Sgt. Bailey's threatening of Fatir amounted to terroristic threatening in violation of state law and Fatir's constitutional guarantee of due process of law, his First Amendment right to petition government for redress of grievances and his Sixth Amendment right of access to the courts.

4. Bailey's insistence that Fatir acknowledge him as "god" violated Fatir's First Amendment right to freedom of religion and violated separation of church and state.

5. Rejection of the yoga book *Shakti* violates Fatir's First Amendment rights, due process and unlawful search and seizure and DOC/DCC's own policies and procedures.

6. DCC's censorship of the movies *Borat* and *The Last King of Scotland* violated the First Amendment, due process and unlawful search and seizure and violated the separation of church and state.

7. Separate visiting accommodations for woman and male prisoners violates the equal protection clause of the 14th Amendment to the U.S. Constitution.

17

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

> 8. Forcing plaintiffs to sleep on mattresses designed for children violates the 8[th] Amendment to the U.S. Constitutions' prohibition against cruel and unusual punishment and exhibits deliberate indifference of the part of defendants.
>
> 9. Preferred treatment of women prisoners over men in medical, parole, pardon, education, maximum security, sentencing and indictments is sexual discrimination and violative of the equal protection clause of the 14th Amendment to the U.S. Constitution.
>
> 10. Defendants are in contempt of court in defiance of this court's order in *Masjid Muhammad-DCC v. Keve*

B. Award additional compensatory damages in the following amounts:

1. $100,00 jointly and severally against defendants Bailey, Kuschel and Forbes.

C. Award additional punitive damages in the following amounts:

1. $200,000 jointly and severally against defendants Bailey, Kuschel and Forbes.

2. Punitive damages of $10,000 against defendants Taylor, Carroll, Howard, Pierce and Havel jointly and severally for violating the Court's order in *Masjid Muhammad* and forcing plaintiff Fatir to respond to his slave name and wear identification of that slave name.

D. Award injunctive relief in the following:

1. Order defendants to provide Fatir with the books *Shakti, Natural Cures, Catcher in the Rye, Ishmael,* and *The Multi-Orgasmic Woman.*

2. Order defendants to show plaintiffs the movies *Borat* and *The Last King of Scotland.*

18

Boyer, et al., v. Taylor, et al., C.A. No. 1:06-cv-694-GMS

3. Order defendants to provide mattresses and beds that are at least 6 ½ feet by 2 ½ feet.

4. Order defendants to provide visiting accommodations equal to those provided women prisoners.

5. Order defendants to comply with this Court's order in *Masjid Muhammad-DCC v. Keve, et al.* and cease forcing Fatir to answer to his slave name, wear I.D. badges bearing his slave name, and have his slave name posted instead of his legal name.

6. Order defendants to allow Plaintiff Fatir to regularly check DCC kitchens to monitor compliance with the non-pork order.

Respectfully submitted,

Amir Fatir

Date: 7/11/07

19

INM. AMIR FATIR

SBI# 137010    UNIT W

DELAWARE CORRECTIONAL CENTER

1181 PADDOCK ROAD

SMYRNA, DELAWARE 19977

Legal Mail

Clerk
U.S. District Court
844 King St.
Wilmington DE
19899

Legal Mail