IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

Boyer, et al., )
  )
    Plaintiffs, )
  )
v. ) C.A. No. 06-694-GMS
  )
Taylor, et al., )
  )
    Defendants. )

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER AND A
PRELIMINARY INJUNCTION**

Amir Fatir # 137010
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

August 31, 2007



FILED
SEP - 6 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BP scanned

**Memorandum of Law and Points of Authorities**

The Delaware Department of Correction claims to be "an equal opportunity employer." Such comedic statements have been lacking since the death of Richard Pryor.

In all its employment practices -- from the hiring of staff to the hiring and firing of inmates -- the Delaware Department of Correction ("DOC") is as racist, bigoted, biased and discriminatory as was Bull Connors' Alabama, Lester Maddox's Mississippi and F.W. deKlerk's apartheid South Africa.

**CURRENT RACIAL BREAKDOWN OF DCC INMATE JOBS**

| MOTOR POOL | LAUNDRY-SUPPLY | CLOTHING FABRICATION |
|---|---|---|
| 11 Caucasians | 5 Caucasians | 2 Caucasians |
| 3 Blacks | 0 Blacks | 2 Blacks |
| 1 Hispanic | 0 Hispanics | 25 Hispanics |

| LAW LIBRARY | PRISON INDUSTRIES | PROPERTY ROOM [1] |
|---|---|---|
| 5 Caucasians | 35 Caucasians | 2 Caucasians |
| 1 Black | 6 Blacks | 0 Blacks |
| 0 Hispanics | 1 Hispanic | 0 Hispanics |

"It is unmistakably clear that racial discrimination by government authorities in the use of public facilities cannot be tolerated." *Washington v. Lee*, 263 F. Supp. 327, 331.

"Absent a compelling state interest, racial discrimination in administering prisons violates the Equal Protection Clause of the fourteenth Amendment. See, e.g., Wolf v. McDonnell, 94 S.Ct. 2963, 2974." *Black v. Lane*, 824 F.2d 561, 562 (7th Cir. 1987).

---

[1] There has never been a single Black or Hispanic employed in this area in the entire history of the Delaware Correctional Center

In prisoner employment, racial discrimination is prohibited. Re: racial discrimination in jobs, see: La. Bounty v. Adler, 933 F.2d, 121, 123 92d Cir. 1991); *Black v. Lane*, 824 F.2d 561, 562 (7th Cir. 1987); *Foster v. Wyrick*, 823 F.2d 218, 222 (8th Cir. 1987); *Moore v. Clarke*, 821 F.2d 518, 519 98th Cir. 1987); *Bentley v. Beck*, 625 F.2d 70 (5th cir. 1980); *Finney v. Arkansas Board of Correction*, 505 F.2d 194, 209-10 (8th Cir. 1974); *Santiago v. Mils*, 774 F. Supp. At 797-801; *Brown v. Sumner*, 701 F. Supp. 762, 766 (D. Nev. 1988); *Ramos v. Lamm*, 485 F. Supp. 122, 164 (D. Colo. 1979); aff'd in pertinent part, 639 F.2d 559, 581 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981); *Gates v. Collier*, 349 f. Supp. 881, 887, 893 (N.D. Miss. 1972), aff'd, 501 F.2d 1291 (5th Cir. 1974); *United States ex rel. Motley v. Rundle*, 340 F.Supp. 807, 809 (E.D. Pa. 1972).

Plaintiffs will suffer irreparable injury without an injunction. Most courts hold that a showing that prisoners' constitutional rights are likely to be violated is enough to meet the irreparable harm requirement. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673 (1976).

Plaintiffs will suffer more without an injunction than defendants will suffer if the injunction is granted. *Mitchell v. Cuomo*, 748 F.2d at 808. The balance of hardships shows plaintiffs will suffer more financial (loss) classification loss, parole chances and in attaining Maslow's "hierarchy of needs," of which self-actualization is the most lofty. It is difficult to imagine how an unemployed, racially injured prisoner can achieve self-actualization.

Plaintiffs are likely to succeed on the merits. No court would uphold the kinds of blatant apartheid racial discrimination that has become the daily norm in the DOC and DCC.

The type of segregation which DOC and DCC practices is not permitted in housing or, by logical extension, in hiring.

"The officials of the State of Alabama, whether they be concerned with the State penal facilities or the county and city penal facilities, have an affirmative duty and responsibility to effect desegregation of these facilities in accordance with this decree." *Washington v. Lee*, supra, at 333.

Plaintiffs allege that defendants' racial discrimination is **intentional** and has become **systematic**.

In the Department of Correction, the Commissioner, Bureau Chief, Bureau Chief of Industries and Services, Bureau Chief of Community Corrections are all white. Within DCC, the Warden, Deputy Wardens and Treatment Administrators are all white. The job supervisors are all white.

After the opening of Gander Hill prison more progressive Black employees escaped DCC's racist good old boy network by transferring to the Wilmington facility. That left a leadership vacuum in DCC and allowed the white staff to get quite comfortable and even openly arrogant about their racist tendencies. When the leadership vacuum at DCC was filled by people from the backwards *Deliverance*-like Ku Klux Klan Georgetown Sussex County mentality, the prison's racist tendencies grew to outrageous and egregious proportions. Staff can now be heard to call Black prisoners "boy", to openly tell them to "stay in their place" and even to "jokingly" kick some in their posteriors.

It sometimes seems the facility has become more of a Depression-era plantation than a 21st Century corrections center. The prison brass has turned a blind eye and deaf

ear to the growing problem and may, in fact, be in complete agreement and compliance with it.

One court has argued persuasively that the "strict scrutiny" standard is applicable to prison racial discrimination claims. *Blevins v. Brew*, 593 F. Supp. 245, 248-49 (W.D. Wis. 1984).

Without this court's intervention, DCC is incapable of righting its wrongs. Due to a lifelong of prejudice and racism on the part of administrators, they see nothing wrong at all with an apartheid environment.

Unless it is true that whites are genetically superior to Blacks, there is no reason why the better prison jobs are almost exclusively staffed by white inmates while Black inmates are relegated to traditional "Negro" jobs like cooking, cleaning, washing pots and taking part in talent shows in which they can buck dance, grin and act the fool for the entertainment and gratification of their institutional "superiors."

Plaintiffs therefore pray this honorable court to grant their Motion for a Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

Amir Fatir
Pro se

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Boyer, et al., | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-694-GMS |
| | ) | |
| Taylor, et al., | ) | |
| | ) | |
|     Defendants. | ) | |

FILED
SEP - 6 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

BD Scanned

AMIR FATIR declares under penalty of perjury:

    1. I am a plaintiff in this case. I make this declaration in support of my motion for a temporary restraining order and a preliminary injunction.

    2. I have been incarcerated under the custody of the Delaware Department of Correction since December 4, 1975.

    3. I have held jobs such as Clerk, Quality Control Inspector, Teacher's Aide, Tier Man, Computer Programmer/Systems Analyst and more.

    4. I have received education from Swarthmore High School, University of Pennsylvania, Williamsport Area Community College, Delaware Technical and Community College and passed various CLEPP tests via the New York Board of Regents.

    5. I created the newspaper *The Isthmus* along with Ed Chaffee and volunteer Tammy Harris.

    6. I created the then new Pre-Release Program and designed nearly all of its component programs, trained other inmates and guided staff members in operating within the pre-release program.

    7. I have written and published various articles and books including articles in *Sepia* magazine, the Philadelphia Inquirer, Philadelphia Daily News, Muhammad Speaks, The Final Call, The News-Journal, State News, and other publications and periodicals.

    8. I have received commendations for my work in educating inmates in Arizona.

9. The program I created and managed received a "Point of Light" award from President George Bush.

10. I have lectured at the staff training academy for officers and counselors within the Department of Correction.

11. I have conducted seminars and workshops for college students and professors from George Washington University, University of Delaware and Delaware State University while incarcerated.

12. I conducted a seminar in the chambers of Judge Bifferato for new lawyers and new prosecutors in Wilmington, Delaware.

13. I achieved outside/off grounds status in 1988.

14. I designed and maintained the complete computer system for the Food Service Division of the Department of Correction for the entire state during the early 1990s.

15. I advised Commissioner Robert Watson and Bureau Chief Hank Risley on rehabilitation systems and was an intricate part of seminars conducted for staff, inmates and criminal justice professionals at Gander Hill Prison and at the Women's Correctional Institute.

16. I co-wrote and edited the Pre-Release Workbook entitled "Time After Time."

17. I type over 80 words per minute.

18. I have directly applied for jobs at Education, Law Library, and Main Library and have indirectly (via counselors and letters to the job coordinator) applied for jobs that were available within DCC.

19. Upon information and belief, I am currently blackballed from being hired to any jobs.

20. I have personally observed the great disparity in numbers of white inmates who have been given jobs at Motor Pool, Education, Law Library, Main Library, Commissary, Prison Industries (T/3), Print Shop, Concrete Design Systems, Paint Crew, Electrical Crew, Laundry Supply, Property Room, Clothing Fabrication and Maintenance.

21. I have skills, education, experience and ability to perform work within the prison and was previously designated "highly skilled" after tests conducted by Mr. Frank Loftus, the original Job Placement Coordinator at DCC.

22. The Pre-Placement Coordinator's position has not been filled since Mr. Loftus' retirement approximately 20 years ago.

23. While working for Food Service Division under the supervision of Mr. Robert Wolfson, I held the highest skill designation then available for a prisoner in the Delaware DOC.

24. For the foregoing reasons, the court should grant the plaintiffs' motion in all respects.

Pursuant to 28 U.S.C. 1746 I declare under penalty of perjury that the foregoing is true and correct.

Date: 8/29/07

Amir Fatir

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

Boyer, et al.,              )
                            )
        Plaintiffs,         )
                            )
    v.                      )   C.A. No. 06-694-GMS
                            )
Taylor, et al.,             )
                            )
        Defendants.         )

**ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER**

FILED SEP - 6 2007

Upon the supporting affidavit of the plaintiff and the accompanying memorandum of law, it is

ORDERED that defendants Stanley Taylor, Paul Howard, Ronald Hosterman, Thomas Carroll, and David Pierce show cause in room _____ of the United States Courthouse, 844 King St., Wilmington, DE 19801, on the _____ day of _____, 2007, at _____ o'clock, why a preliminary injunction should not issue pursuant to Rule 65(a), Fed.R.Civ.P., enjoining the said defendants, their successors in office, agents and employees and all other persons acting in concern and participation with them, to

    A. Submit to Court monitoring of all inmate hiring at DCC.

    B. End to nepotism in DOC.

    C. Terminate those employees who have relatives working within the DOC.

    D. Demote any employees whose promotions occurred in connection with nepotism.

    E. Cease hiring of white inmates to any skilled positions at DCC and in any position at Motor Pool, Education, Law Library, Main Library, Commissary, Prison Industries (T/3), Print Shop, Concrete Design

Systems, Paint Crew, Electrical Crew, Laundry Supply, Property Room, Clothing Fabrication and Maintenance.

F. Terminate the jobs of all white inmates currently employed at Motor Pool, Education, Law Library, Main Library, Commissary, Prison Industries (T/3), Print Shop, Concrete Design Systems, Paint Crew, Electrical Crew, Laundry Supply, Property Room, Clothing Fabrication and Maintenance.

G. Prohibit DCC from practicing white affirmative action.

H. Enjoin DOC from receiving or accepting any federal grants, monies, loans, or supplies (such as grain and farm subsidies) during the duration of this case.

I. Order DOC to return all federal monies, grants, supplies or gratuities for fiscal years 2000-2008.

J. Order the U.S. Attorney for Delaware and the United States Justice Department to investigate racial discrimination at DCC and within the Department of Correction.

K. Order defendants to hire plaintiffs for jobs commensurate with their skill levels, experience, and qualifications.

L. Order defendants to house Fatir in a single cell within W-Building.

M. Assume control over inmate hiring at DCC and to put into effect standards, procedures and regulations by which to hire prisoners based upon "the content of their character" and not their skin color, ethnicity, racial origin, religion or creed.

IT IS FURTHER ORDERED that this order to show cause, and all other papers attached to this application, shall be served on defendants by _____, 2007, and the United States Marshals Service is hereby directed to effectuate such service.

_____
United States District Judge

Dated: _____