**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DONALD BOYER, AMIR FATIR, and WARREN WYANT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | C.A. No. 06-694-GMS |
| v. | ) ) | Jury Trial Requested |
| COMMISSIONER STANELY TAYLOR, et al., | ) ) | |
| Defendants. | ) | |

**STATE DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO ORDER DEFENDANTS TO ALLOW
AND ARRANGE CONSULTATION AMONG PLAINTIFFS [RE: D.I. 47]**

COMES NOW, State Defendants Thomas Carroll, Ronald Hosterman, David Pierce, Jeanette Havel, Janice Henry, Michael Little, Floyd Dixon, Marvin Creasy, James Satterfield, Maureen Whelan, Ralph Bailey, and David Hall (the "State Defendants"), by and through their undersigned counsel, and hereby respond in opposition (the "Response") to Plaintiffs' Motion to Order Defendants to Allow and Arrange Consultation among Plaintiffs (D.I. 47). State Defendants assert that the Court should deny Plaintiffs' Motion because Plaintiffs' consultation together poses a grave risk to the security of the inmates and staff at the Delaware Correctional Center ("DCC"); the Court's order does not require that the Plaintiffs consult together; and this is not a class action lawsuit. In support of the Response, State Defendants state as follows:

1.     Plaintiffs Donald Boyer, Amir Fatir, and Warren Wyant (the "Plaintiffs") are all inmates presently incarcerated at the Delaware Correctional Center ("DCC") in Smyrna, Delaware. Plaintiffs are appearing *pro se* in this matter with leave to proceed *in forma pauperis*.

2.      On November 15, 2006, Plaintiffs, along with nine (9) other individuals who have since been dismissed from the case, filed a Complaint against 25 Defendants alleging various claims.  (D.I. 10).

3.      Less than two months later, on January 5, 2007, Plaintiff Boyer filed the First Amended Complaint against all of the defendants adding new claims and allegations.  (D.I. 18).  On July 30, 2007, Plaintiffs filed a Second Amended Complaint further refining their allegations and claims against the defendants.  (D.I. 43).

4.      Following the filing of their Second Amended Complaint, the Plaintiffs, led by Plaintiff Fatir, filed a series of motions, including the Motion to Allow Consultation.  In the Motion to Allow Consultation, Plaintiffs request that the Court order the defendants "to arrange for the plaintiffs to meet, obtain signatures, and exchange documents for one hour each week without shackles and outside the hearing of any officer, staff member or employee …."  (D.I. 47 at ¶ 6).  Plaintiffs claim that consultation is necessary in order to "litigate this case and comply with the court's order."  (*Id.* at ¶ 5).

5.      State Defendants assert three reasons for why the Court should deny the Motion.  First, permitting the Plaintiffs to confer and consult together poses a grave risk to the security of the DCC.  Second, the Court's order requiring signatures on pleadings and amendments does not require that the Plaintiffs meet and consult.  Third, this is not a class action and the Plaintiffs do not need to consult together to litigate the claims.  In light of these reasons, consultation between the Plaintiffs is dangerous and not required, and the Court should deny the Motion.

I.    **Permitting Inmates With Differing Security Classifications, Life Sentences, Escape Histories And Disciplinary Violations To Confer And Consult Poses A Grave Risk To The Security Of The Institution.**

6.    State Defendants assert that permitting Plaintiffs to "meet, obtain signatures, and exchange documents for one hour each week without shackles and outside the hearing of any officer, staff member or employee …" poses a grave risk to the security of the inmates and staff at DCC. Therefore the Plaintiffs' request should be denied.

7.    In *Bell v. Wolfish*, 441 U.S. 520 (1979), the United States Supreme Court held that, "'maintaining institutional security and preserving internal order and discipline are essential goals'" of a prison administration. *Id.* at 546. "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Id.* at 546-47 (quoting *Pell v. Procunier,* 417 U.S. 817, 823 (1974)). To that end, "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Id.* at 547. In this case permitting Plaintiffs Fatir, Wyant and Boyer to consult and meet together would cause a grave risk to security, lead to the possibility of plans for escape and disrupt DCC's internal order.

8.    Plaintiffs Fatir, Boyer and Wyant are all convicted felons. Fatir is serving a life sentence for, among other things, murder in the first degree. (Ex. A). Like Fatir, Plaintiff Boyer is also serving a life sentence for a number of felonies including murder in the first degree. (Ex. B). Finally, Plaintiff Wyant is serving a life sentence for rape in the first degree. (Ex. C).

9.      In addition to their serious felony convictions and life sentences, Plaintiffs have been behavioral and disciplinary problems while incarcerated.  Plaintiff Fatir has escaped from the DCC.  (Ex. D – "Scarborough Affidavit" at ¶ 6).  Plaintiff Boyer has been disciplined for fighting and assaulting another inmate and was classified to maximum security as a result.  (Scarborough Aff. at ¶ 7; Ex. E).  Further a little over one month ago, Plaintiff Wyant was found guilty of disorderly or threatening behavior, disrespect and failing to obey an order.  (Ex. F).  Permitting these inmates with their life sentences, murder and rape convictions, prior escape and disruptive institutional behaviors to plot and plan together is almost certain to lead to security problems within the DCC.

10.     Major James Scarborough, the Security Superintendent of the DCC, after speaking with the Warden of DCC and reviewing the Plaintiffs' files, has determined that permitting these inmates to consult would cause a grave risk to the security of DCC's inmates and staff.  (Scarborough Aff. at ¶ 5).  Inmates, like Boyer, who are classified to maximum security are not permitted to have any contact with inmates classified to minimum or medium security in order to maintain the safety and control of the general inmate population.  (*Id.* at ¶ 3, 9).  Further, while minimum and medium security inmates, like Fatir and Wyant, are permitted to mix together at programs, classes and religious services, they are not, as a general matter, permitted to meet together or confer without supervision.  (*Id.* at ¶ 4).

11.     Further, allowing these three inmates to meet would overburden the DCC staff.  (*Id.* at ¶ 10).  At least three officers would be required to cease their normal duties to escort, monitor and supervise a meeting between these inmates.  (*Id.*).  As a result

- 4 -

additional officers would be required to fulfill their duties or work overtime. (*Id.*). Clearly a meeting between these inmates would greatly burden the staff and strain DCC's resources.

12.     Finally, Major Scarborough has determined that permitting these inmates to meet would set a bad precedent for the DCC. (*Id.* at ¶ 11). Allowing inmates of different security classifications to meet and confer would conflict with current policy. In addition it would likely lead to requests for meetings together by other inmates. Such additional requests "would lead to enormous security concerns and create a need for additional officers." (*Id.*). Considering all of the ramifications, Major Scarborough has concluded that, "allowing Inmates Fatir, Boyer and Wyant to meet and confer together would have devastating effect on the DCC and its staff." (*Id.*).

13.     Prison administrators, like Major Scarborough, "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547. In this case, the administration at DCC has determined that permitting Plaintiffs Fatir, Boyer and Wyant to meet and confer poses a grave risk to the security of the DCC, would disrupt the internal order of the institution and would strain its resources. In light of these facts this Court should defer to the judgment of the DCC officials and deny the Plaintiffs' Motion to Allow Consultation.

**II.     Plaintiffs Do Not Need To Meet And Confer To Comply With The Court's Order.**

14.     In its Order dated July 16, 2007, this Court stated that, "plaintiffs are advised that each remaining plaintiff is required to sign any amendment or pleading with the court." (D.I. 40). The Plaintiffs now use this statement in an effort to urge this Court

to issue an order forcing the DCC to permit them to meet and confer. Because the Plaintiffs do not need to confer to comply with the Court's order, the Motion should be denied.

15.    The pleadings in a case consist of the "complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, …; and a third party answer, …." FED. R. CIV. P. 7(a). In this case the pleadings have all been filed. (*See* D.I. 10, 18, 42, 43, 44). Therefore the Plaintiffs will not need to submit any more pleadings that require all three of their signatures.

16.    In addition, Plaintiffs have not stated in their Motion to Allow Consultation that they need to file an amendment for which all three signatures are required. The Plaintiffs have already amended their Complaint several times. (*See* D.I. 18, 42, 43, 44). Moreover, they have not provided this Court with any just cause for why further amendment is necessary. Given that the Plaintiffs have already amended their Complaint several times and given that the Plaintiffs have not provided the Court with a reason for why they would need to amend their Complaint again, consultation in order to sign an amendment will not be necessary.

17.    Plaintiffs no longer need to submit pleadings or amendments for which all three of their signatures are required. Therefore, there is no need for the Plaintiffs to meet and consult and the Court should deny the Motion to Allow Consultation.

**III.**  **Plaintiffs Cannot Provide Any Just Cause For Why They Need To Meet And Consult Together Given That This Is Not A Class Action And Most Of The Claims Are Individual Claims.**

18.    In its Memorandum Opinion and Order dated July 16, 2007, this Court specifically denied the Plaintiffs' request that this action proceed as a class action.  (D.I. 39 at 5).  Thus there is no need for the Plaintiffs to confer.

19.    Further, while the Plaintiffs have filed this action together, many of the claims can actually be divided into individual claims.  Approximately seven (7) of the 20 claims apply solely to Plaintiff Fatir.  In addition another seven (7) of the 20 claims apply solely to Plaintiff Wyant who is the only plaintiff still housed in the D Building (Plaintiffs Fatir and Boyer are now housed in the W Building and MHU Building 22, respectively).  Given that there is no commonality between most of the Plaintiffs' claims the Plaintiffs cannot present any just cause for why they need time to meet and consult with one another.

WHEREFORE, for all of the foregoing reasons, State Defendants respectfully request that this Honorable Court enter an Order, substantially in the form attached hereto, dismissing Plaintiffs' Motion to Allow Consultation.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400
          Attorney for State Defendants

Dated: March 20, 2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD BOYER, AMIR FATIR, and WARREN WYANT, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 06-694-GMS |
| v. | ) ) | |
| COMMISSIONER STANELY TAYLOR, et al., | ) ) | |
| Defendants. | ) | |

## **ORDER**

Upon the Plaintiffs' Motion to Order Defendants to Allow and Arrange Consultation among Plaintiffs (D.I. 47) (the "Motion"); and State Defendants' Response in Opposition to the Motion; and it appearing that good and sufficient notice of the Plaintiffs' Motion and the State Defendants' Response in Opposition has been given; and after due deliberation thereon:

**IT IS HEREBY ORDERED** that the Motion is **DENIED.**

SO ORDERED this _____ day of _____, 2008.

_____
The Honorable Gregory M. Sleet
United States District Court Judge

# <u>CERTIFICATE OF SERVICE</u>

I, Erika Y. Tross, Esq., hereby certify that on March 20, 2008, I caused a true and correct copy of the attached *State Defendants' Response in Opposition to Plaintiffs' Motion to Order Defendants to Allow and Arrange Consultation among Plaintiffs [Re: D.I. 47]* to be served on the following individuals in the form and manner indicated:

### NAME AND ADDRESS OF RECIPIENT(S):

Donald Boyer
SBI # 082420
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Warren Wyant
SBI # 00176129
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Amir Fatir
SBI # 137010
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

### MANNER OF DELIVERY:

__One true copy by facsimile transmission to each recipient

✓Two true copies by first class mail, postage prepaid, to each recipient

__Two true copies by Federal Express

__Two true copies by hand delivery to each recipient

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
Delaware Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400

# EXHIBIT A

## Offender Status Sheet

**Date:** 03/11/2008

| | | |
|---|---|---|
| **SBI #:** 00137010 | **Name:** AMIR FATIR | **Sex:** M |
| **Location(s):** DCC | **Level(s):** 5  **Race:** BLACK | **DOB:** 02/04/1953  **Sex Offender:** [] |

**AKA:** STERLING HOBBS; STERLING HOBBS; AMIR FATIR; RAYMOND VANDERBERG; AMIR F DHULQARNAIN

**Offender Type:** Sentenced          **Officer(s):**

| Level: 5 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Start Date:** 12/12/1975 | **MED:** 12/08/2048 | **STRD:** 12/08/2048 | **ADJ:** 12/08/2048 | **PED:** | | | | **Statutory Days Earned:** 0.00 | | | |

| CASE#/ Court/ Type | CRA#/ Judge | Charge Desc/ Sen. Type/ Sentence Date | | Status/ Eff. Date | Length Y | M | D | Start Dt | MED | STRD | Adj Date | CR | Wk |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DACS00001 | I-75-06-0892 | MURDER 1ST | | Current | | 0 | 0 | 12/12/1975 | | | | | |
| U7 | Bernard Balick | LIFE | 12/12/1975 | 12/12/1975 | | | | | | | | | |
| DACS00003 | I-75-06-0900 | CONSP 2ND | | Current | 7 | 0 | 0 | 12/12/1975 | 12/11/1982 | 12/11/1982 | 12/11/1982 | | |
| U7 | Bernard Balick | STANDARD | 04/27/1976 | 04/27/1976 | | | | | | | | | |
| DACS00002 | I-75-06-0895 | ROBBERY 1st | | Current | 30 | 0 | 0 | 12/11/1982 | 12/10/2012 | 12/10/2012 | 12/10/2012 | | |
| U7 | Bernard Balick | STANDARD | 04/27/1976 | 04/27/1976 | | | | | | | | | |
| DACS00004 | I-75-06-0905 | PDWDCF | | Current | 30 | 0 | 0 | 12/10/2012 | 12/09/2042 | 12/09/2042 | 12/09/2042 | | |
| U7 | Bernard Balick | STANDARD | 04/27/1979 | 04/27/1976 | | | | | | | | | |
| DACS00005 | I-76-05-1023 | ESCAPE A/CONV | | Current | 6 | 0 | 0 | 12/09/2042 | 12/08/2048 | 12/08/2048 | 12/08/2048 | | |
| U7 | Joseph J Longobardi | STANDARD | 11/12/1976 | 11/12/1976 | | | | | | | | | |

**Special Conditions:**

| CRA# | Level | Code | Condition Description | Condition Comments |
|---|---|---|---|---|
| I-75-06-0892 | 5 | CRT1 | Other Conditions: | SENTENCED TO BE EXECUTED ON 6/25/1976 BETWEEN THE HOURS OF 10:00 A.M. AND 12:30 IN THE AFTERNOON. SENTENCE WAS VACATED ON 7/10/80 AND OFFENDER WAS SENTENCED TO LIFE WITHOUT BENEFIT OF PROBATION OR PAROLE. THIS SENTENCE SHOWING THE DEATH AND THEN THE LIFE SENTENCES. |
| I-75-06-0900 | 5 | CRT1 | Other Conditions: | SENTENCED TO SERVE 7 YEARS BEGINNING 12/12/75. |
| I-75-06-0895 | 5 | CRT1 | Other Conditions: | SENTENCED TO SERVE 30 YEARS CONSECUTIVE. |
| I-75-06-0905 | 5 | CRT1 | Other Conditions: | SENTENCED TO SERVE 30 YEARS CONSECUTIVE. |
| I-76-05-1023 | 5 | CRT1 | Other Conditions: | SENTENCED TO SERVE 6 YEARS CONSECUTIVE. TOTAL TIME TO SERVE IS LIFE PLUS 73 YEARS. |

## Offender Status Sheet

**Date:** 03/11/2008

| | | | |
|---|---|---|---|
| **SBI #:** 00137010 | **Name:** AMIR FATIR | **Sex:** M | |
| **Location(s):** DCC | **Level(s):** 5 | **Race:** BLACK | **DOB:** 02/04/1953 | **Sex Offender:** [ ] |
| **AKA:** STERLING HOBBS; STERLING HOBBS; AMIR FATIR; RAYMOND VANDERBERG; AMIR F DHULQARNAIN | | | |
| **Offender Type:** Sentenced | **Officer(s):** | | |

# EXHIBIT B

## Offender Status Sheet

Date: 03/11/2008

SBI #: 00082420    Name: DONALD BOYER    Sex: M

Location(s): DCC    Level(s): 5    Race: BLACK    DOB: 03/28/1948    Sex Offender: []

AKA: DONALD BOYER; DONALD J BOYER

Offender Type: Sentenced    Officer(s):

**Level: 5**

Start Date: 11/30/1979   MED: 11/22/1996   STRD: 11/22/1996   ADJ: 11/22/1996   PED: 05/01/2004   Statutory Days Earned: 0.00

| CASE#/ Court/ Type | CRA#/ Judge | Charge Desc/ Sen. Type/ Sentence Date | Status/ Eff. Date | Y | M | D | Start Dt | MED | STRD | Adj Date | CR | Wk |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DACS00001 | 79/09/0063 | CCDW | Current | 3 | 0 | 0 | 11/30/1979 | 11/29/1982 | 03/22/1982 | 03/22/1982 | | |
| | | STANDARD 11/30/1979 | 11/30/1979 | | | | | | | | | |
| DACS00002 | 80/01/0251 | MURDER 1ST | Current | 0 | 0 | 0 | 11/28/1982 | | | | | |
| | | LIFE 12/18/1991 | 11/28/1982 | | | | | | | | | |
| DACS00003 | 80/01/0250 | PDWBPP | Current | 1 | 0 | 0 | 11/28/1982 | 11/27/1983 | 11/27/1983 | 11/27/1983 | | |
| | | STANDARD 12/18/1991 | 11/28/1982 | | | | | | | | | |
| DACS00004 | 80/01/0252 | ROBBERY 1ST | Current | 3 | 0 | 0 | 11/27/1983 | 11/26/1986 | 11/26/1986 | 11/26/1986 | | |
| | | MANDATORY MI 12/18/1991 | 11/28/1982 | | | | | | | | | |
| DACS00005 | 80/01/0253 | BURGLARY 1ST | Current | 3 | 0 | 0 | 11/26/1986 | 11/25/1989 | 11/25/1989 | 11/25/1989 | | |
| | | STANDARD 12/18/1991 | 11/28/1982 | | | | | | | | | |
| DACS00006 | 80/01/0254 | CONSP. 2ND | Current | 1 | 0 | 0 | 11/25/1989 | 11/24/1990 | 11/24/1990 | 11/24/1990 | | |
| | | STANDARD 12/18/1991 | 11/28/1982 | | | | | | | | | |
| DACS00007 | 80/01/0255 | RECK END 1ST | Current | 1 | 0 | 0 | 11/24/1990 | 11/23/1991 | 11/23/1991 | 11/23/1991 | | |
| | | STANDARD 12/18/1991 | 11/28/1982 | | | | | | | | | |
| DACS00008 | 80/01/0256 | PDWDCF | Current | 5 | 0 | 0 | 11/23/1991 | 11/22/1996 | 11/22/1996 | 11/22/1996 | | |
| | | STANDARD 12/18/1991 | 11/28/1982 | | | | | | | | | |

**Special Conditions:**

| CRA# | Level | Code | Condition Description | Condition Comments |
|---|---|---|---|---|
| 79/09/0063 | 5 | CRT1 | Other Conditions: | SENTENCED TO SERVE 3 YEARS BEGINNING 11/30/1979. |
| 80/01/0251 | 5 | CRT1 | Other Conditions: | SENTENCED TO SERVE LIFE BEGINNING 11/28/1982 |
| 80/01/0250 | 5 | CRT1 | Other Conditions: | SENTENCED TO SERVE 1 YEAR CONSECUTIVE. |
| 80/01/0252 | 5 | CRT1 | Other Conditions: | SENTENCED TO SERVE 3 YEARS CONSECUTIVE. THIS IS A MANDATORY SENTENCE. |
| 80/01/0253 | 5 | CRT1 | Other Conditions: | SENTENCED TO SERVE 3 YEARS CONSECUTIVE. |
| 80/01/0254 | 5 | CRT1 | Other Conditions: | SENTENCED TO SERVE 1 YEAR CONSECUTIVE. |
| 80/01/0255 | 5 | CRT1 | Other Conditions: | SENTENCED TO SERVE 1 YEAR CONSECUTIVE. |
| 80/01/0256 | 5 | CRT1 | Other Conditions: | SENTENCED TO SERVE 5 YEARS CONSECUTIVE. TOTAL TIME TO SERVE IS LIFE PLUS 14 YEARS. |

## Offender Status Sheet

**Date:** 03/11/2008

| | | | | |
|---|---|---|---|---|
| **SBI #:** 00082420 | **Name:** DONALD BOYER | | **Sex:** M | |
| **Location(s):** DCC | **Level(s):** 5 | **Race:** BLACK | **DOB:** 03/28/1948 | **Sex Offender:** [] |
| **AKA:** DONALD BOYER; DONALD J BOYER | | | | |
| **Offender Type:** Sentenced | | **Officer(s):** | | |

# EXHIBIT C

## Offender Status Sheet

Date: 03/11/2008

| | | |
|---|---|---|
| **SBI #:** 00176129 | **Name:** WARREN J WYANT | **Sex:** M |
| **Location(s):** DCC | **Level(s):** 5     **Race:** WHITE | **DOB:** 11/08/1965     **Sex Offender:** [ ] |
| **AKA:** WARRAN J WYANT; WARREN WYANT; WARREN J WYANT | | |
| **Offender Type:** Sentenced | **Officer(s):** | |

| Level: 5 |
|---|

| Start Date: 11/01/1983     MED:     STRD:     ADJ:     PED: 01/29/2046     Statutory Days Earned:     0.00 |
|---|

| CASE#/ Court/ Type | CRA#/ Judge | Charge Desc/ Sen. Type/ Sentence Date | | Status/ Eff. Date | Y | M | D | Start Dt | MED | STRD | Adj Date | CR | Wk |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DACS00001 | DACS00001001 | RAPE 1ST | | Current | 0 | 0 | 0 | 11/01/1983 | | | | | |
| | | LIFE | 03/16/1984 | | | | | | | | | | |

## Offender Status Sheet

**Date:** 03/11/2008

| | | | |
|---|---|---|---|
| **SBI #:** 00176129 | **Name:** WARREN J WYANT | | **Sex:** M |
| **Location(s):** DCC | **Level(s):** 5 | **Race:** WHITE | **DOB:** 11/08/1965    **Sex Offender:** [] |
| **AKA:** WARRAN J WYANT; WARREN WYANT; WARREN J WYANT | | | |
| **Offender Type:** Sentenced | | **Officer(s):** | |

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DONALD BOYER, AMIR FATIR, and    )
WARREN WYANT,    )
    )
        Plaintiff,    )
    )    C.A. No. 06-694-GMS
    )
    v.    )
    )    Jury Trial Requested
COMMISSIONER STANELY TAYLOR, et al.,    )
    )
        Defendants.    )

## AFFIDAVIT OF MAJOR JAMES SCARBOROUGH

I, James Scarborough, having been duly sworn by law, do hereby depose and state as follows:

1.    I am employed by the State of Delaware Department of Correction ("DOC") as a Major/Security Superintendent at the Delaware Correctional Center ("DCC"), in Smyrna, Delaware. I have been employed by the DOC for 21 years and have worked as a Major/Security Superintendent for the past two (2) years.

2.    It is the policy of the DCC that inmates of different classification levels do not mix and meet together. The purpose of this policy is to maintain security and control within the institution and protect the staff and inmates.

3.    Inmates classified to maximum security are not permitted to have any contact with inmates classified to minimum or medium security. The purpose of this policy is to maintain safety and control as inmates classified to maximum security pose a threat to the safety and security of the institution and the general inmate population.

4.    Inmates classified to minimum or medium security may mix with each other at a program, class or religious service. However, as a general rule these inmates

1

are not permitted to meet together nor are they allowed to congregate with one another without supervision.

5. Deputy Attorney General Erika Y. Tross spoke with me about Inmates Amir Fatir, Donald Boyer and Warren Wyant's request to meet together, unsupervised, for purposes of consulting with one another on the above-captioned case. In addition to speaking with DAG Tross, I spoke with the Warden of the institution and reviewed the files and records of these inmates. It is my opinion that permitting these inmates to meet together and consult, with or without supervision, would cause a grave danger to the safety and security of the Institution, its staff and its inmates.

6. Inmate Amir Fatir, SBI # 137010, is serving a life sentence for murder in the first degree. He is currently classified as minimum security. A review of Inmate Fatir's file shows that he has escaped from the DCC on a prior occasion. Further, Inmate Fatir has, in the past, attempted to incite a riot within the institution, at one point calling for the inmates to cause physical harm to the officers and cause their blood to "run in the aisles."

7. Inmate Donald Boyer, SBI # 082420, is serving a life sentence for murder in the first degree. He is currently classified as maximum security. Records indicate that Inmate Boyer was classified to maximum security for, among other reasons, assaulting another inmate.

8. Inmate Warren Wyant, SBI # 176129 is serving a life sentence for rape in the first degree. He is currently classified as medium security. Inmate Wyant's file reflects that he was found guilty of disorderly or threatening behavior, disrespect and failing to obey an order less than two (2) months ago.

2

9.    In light of their differing security classifications, life sentences, records and past behavioral problems, permitting Inmates Fatir, Boyer and Wyant to meet and consult together would present a danger to the safety and security of the DCC. Moreover, permitting Inmate Fatir to meet and consult with other inmates could lead to plans for another escape attempt or plans for inciting another riot within the institution. Such plans would pose a grave danger, not only to DCC staff, but also to the other inmates.

10.    Further, allowing Inmates Fatir, Boyer and Wyant to meet and confer would disrupt the system at DCC and overburden its staff. Correctional officers are each required to supervise numerous inmates on a daily basis. A meeting between three inmates of different security levels would require at least three officers, each of whom would have to stop their normal duties of supervising inmates in order to facilitate and supervise a meeting between three inmates. As a result, other officers would be required to fill in or commit to working overtime. Thus, requiring three officers to leave their normal duties to supervise a meeting between Inmates Fatir, Boyer and Wyant would greatly burden an already overworked staff.

11.    Finally, permitting Inmates Fatir, Boyer and Wyant to consult together would set a bad precedent for the institution. At present inmates classified to maximum security are to have no contact with minimum and medium security inmates. Allowing Inmates Fatir, Boyer and Wyant to meet together would lead to requests by other inmates to meet together. Numerous requests for meetings between inmates would lead to enormous security concerns and create a need for additional officers. Further, giving inmates the ability to request meetings with one another would lead to a loss of control by

3

the officers and the institution as a whole.  In short, allowing Inmates Fatir, Boyer and

Wyant to meet and confer together would have devastating effect on the DCC and its

staff.

_____
James Scarborough

**SWORN AND SUBSCRIBED** before me this _20ᵀᴴ_ day of _March_ ,

2008.

_____
Notary

4

# EXHIBIT E

| Disciplinary# | | Date: |
|---|---|---|
| 1028971 | | 03/11/2008 |

**DCC   Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

# DISCIPLINARY REPORT

| Disciplinary Type: Class1 | Housing Unit Bldg 22 | IR#: 1037746 |
|---|---|---|

| SBI# | Inmate Name | Inst. Name | Location Of Incident | Date | Time |
|---|---|---|---|---|---|
| 00082420 | Boyer, Donald | DCC | Bldg.D E Tier | 12/02/2006 | 13:00 |

Violations: 1.02/200.201 Assault, 1.06/200.203 Disorderly or Threatening Behavior, 1.13 Fighting, 2.06/200.108 Failing to Obey an Order

Witnesses: 1. N/A          2. N/A          3. N/A

### Description of Alleged Violation(s)

On Dec.2, 2006 At 1300 Hrs. I Cpl. Barrett Daniel Was Backing Up C/O Hollis, James On D-Tier Doing A After Chow Count. I Cpl. Barrett Heard A Loud Disturbance On E-Tier And Informed C/O Hollis That We Needed To Go.   I Clp. Barrett Observed I/M Boyer,Donald And I/M Davis, William  Both Fighting On E - Tier. I Cpl. Barrett Notified Sgt. Williams, Dana Of A Code#8 E-Tier.
**Reporting Officer:** Barrett, Daniel G (Correctional Officer)

### Immediate Action Taken

**Immediate action taken by:** Barrett, Daniel G -Correctional Officer

Code#8

### Offender Disposition Details

**Disposition:** N/A          **Date:** N/A     **Time:** N/A     **Cell secured?** No

**Reason:** N/A

**Disposition Of Evidence:** N/A

### Approval Information

**Approved: [x]    Disapproved: [ ]   Approved By:** Godwin, Derrick R (Staff Lt./Lt)

**Comments:** N/A

### Shift Supervisor Details

**Date Received:** 12/02/2006          **Time:** 15:16          **Received From:** Godwin, Derrick R

**Shift Supervisor Determination:**

[ ]   Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[X]   Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearing.

_____
Godwin, Derrick R (Staff Lt./Lt)

I have received a copy of this notice on **DATE:** _____ **TIME:** _____  and have been informed of my rights to have a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions outlined in the Rules of conduct.

**Preliminary Hearing**
**Officer:** _____     **Offender:** _____
          Godwin, Derrick R                                   Boyer, Donald

| Incident#<br>1037746 | | | | Date: 03/11/2008 |
|---|---|---|---|---|

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone#: 302-653-9261**

## INCIDENT REPORT

| Group#: N/A | Type: Inmate Involved | Incident Date: 12/02/2006 | Time: 13:00 | Confidential: No |
|---|---|---|---|---|

**Facility:** DCC  Delaware Correctional Center                              **Followup Required :** No

**Associated Disciplinary Report #(s)** 1028971

**Associated Disciplinary Report #(s)** 1028972

**Incident Location:** Bldg.D E Tier

**Location Description:** Tier hallway

**Violated Conditions:** 1.06/200.203 Disorderly or Threatening Behavior

                1.02/200.201 Assault

                1.13 Fighting

                2.06/200.108 Failing to Obey an Order

**Description of Incident:**

On Dec.2, 2006 at 1300 hrs. I Cpl. Barrett was backing up C/O Hollis on D-tier doing a after chow count. I Cpl. Barrett heard a loud disturbance on E-tier and informed C/O Hollis that we needed to go.  I Clp. Barrett observed I/M Boyer,Donald  and I/M Davis, William  fighting in the hall way. I Cpl. Barrett notified Sgt. Williams, Dana of a code#8 E-tier.

| Injured Persons | Hospitalized | Nature Of Injuries |
|---|---|---|
| N/A | N/A | N/A |

**Evidence Type:** N/A                                                    **Date Collected:** N/A

**Discovered By :** N/A                                  **Secured By:** N/A

**Type of Force Used** [ ]   PHYSICAL   [ ]   CHEMICAL [ ]  STUN   [X]  OTHER   [ ]  CAPSTUN [ ]   NONE

**Restraints Used**   : Handcuffs

**Immediate Action Taken:**

CODE#8, SECURED INMATES

| Individuals Involved | | | |
|---|---|---|---|
| Person Code | Name | SBI# | Title |
| Staff | Daniel, Barrett G | N/A | Correctional Officer |
| Inmate | Donald, Boyer | 00082420 | N/A |
| Inmate | William, Davis F 3 | ██████ | N/A |

**Reporting Officer:** Barrett, Daniel G (Correctional Officer)        **Entered By:** Barrett, Daniel G (Correctional Officer)

| Approval Information | | |
|---|---|---|

[ X ]  Approved   [ ] Disapproved  **Date:** 12/02/2006  **Approved by:** Godwin, Derrick R  (Staff Lt./Lt)

**Comments:** Both inmate William Davis and Donald Boyer were checked out and evaluated by med nurse Benjamin Abiona. Inmate Donald Boyer had no physical injuries, however inmate William Davis had a laceration by his right eye and another under his left eye. The bridge of his nose was also collapsed.

# EXHIBIT F

| Disciplinary#<br>1038005 | DCC  Delaware Correctional Center<br>Smyrna Landing Road<br>SMYRNA DE, 19977<br>Phone No. 302-653-9261 | Date:  03/11/2008 |

# DISCIPLINARY REPORT

| Disciplinary Type: Class2 | Housing Unit Bldg T1 | IR#: 1050002 |

| SBI# | Inmate Name | Inst. Name | Location Of Incident | Date | Time |
|---|---|---|---|---|---|
| 00176129 | Wyant, Warren J | DCC | Bldg.14 Chow Hall B | 02/03/2008 | 18:20 |

Violations: 1.06/200.203 Disorderly or Threatening Behavior, 2.05 Disrespect, 2.06/200.108 Failing to Obey an Order, 2.14 Unauthorized Communication

Witnesses:1.None,                              2. N/A                                  3. N/A

## Description of Alleged Violation(s)

On The Above Date At The Approximate Time, I, Sgt. William Kuschel, Was Supervising Bld 14 Chow Hall B When I Observed And Heard The Following Inmate Talking In The Chow Hall Food Line After Repeatedly Being Warned Three Times Not To Talk In The Chow Hall: I/M Warren Wyant [Sbi# 176129, T1 Bld. Cell 1 Bed 50]. I/M Warren Wyant Was Belligerent And Defiant As He Gave His Identification To Me [Sgt. William Kuschel], Stating, "I Didn'T Do Anything Wrong". Moreover, I/M Warren Wyant Took Time To Put Down His Fork And Knock The Identification Off The Table Across The Floor, After Sgt. William Kuschel Placed The Identification With Proper Care On The Dining Room Table By His Tray, Since He Was Eating. Sgt. William Kuschel The Sole Officer Monitoring The Chow Hall Ordered I/M Warren Wyant To Place His Partially Eaten Tray In The Tray Return Window And Exit The Chow Hall And Proceed To The Receiving Room. I/M Warren Wyant Complied With The Order, While Being Verbally Defiant. Therefore, I/M Warren Wyant Was Acting In A Disorderly Manner As Exhibited By His Behavior Documented In This Incident Report.

Reporting Officer: Kuschel, William J (CO Corporal/Sgt. - Large Inst.)

## Immediate Action Taken

Immediate action taken by: Kuschel, William J -CO Corporal/Sgt. - Large Inst.

Notified The Inmate Of The Write-Up, Wrote A 404 And A 122, Notified The Area  Lieutenant And The Shift Commander

## Offender Disposition Details

Disposition: N/A                              Date: N/A          Time: N/A          Cell secured?  No

Reason: N/A

Disposition Of Evidence: N/A

## Approval Information

Approved: [x]      Disapproved: [ ]    Approved By: Satterfield, James P (Staff Lt./Lt)

Comments: N/A

## Shift Supervisor Details

Date Received: 02/03/2008        Time: 20:59        Received From: Satterfield, James P

Shift Supervisor Determination:

[]    Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[X]    Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearing.

Satterfield, James P (Staff Lt./Lt)

I have received a copy of this notice on **DATE:**_____  **TIME:** _____  and have been informed of my rights to have a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions outlined in the Rules of conduct.

Preliminary Hearing
Officer: _____        Offender: _____
Satterfield, James P                                            Wyant, Warren J