IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD BOYER, AMIR FATIR, and WARREN WYANT, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 06-694-GMS<br>) |
| COMMISSIONER STANLEY TAYLOR, PAUL HOWARD, RONALD HOSTERMAN, WARDEN THOMAS CARROLL, DEPUTY WARDEN DAVID PIERCE, JENNY HAVEL, JANET HENRY, CPL. ONEY, FLOYD DIXON, SGT. MARVIN CREASY, JAMES P. SATTERFIELD, LT. PALOWSKI, SGT. BAILEY, CPL. VARGAS, FIRST CORRECTIONAL MEDICAL, CORRECTIONAL MEDICAL SERVICES, DAVID HALL, MAUREEN WHALEN, and MICHAEL LITTLE, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM**

**I. BACKGROUND**

The plaintiffs, Donald Boyer ("Boyer"), Amir Fatir ("Fatir"), and Warren Wyant ("Wyant) (collectively "the plaintiffs") are inmates at the Delaware Correctional Center ("DCC"). They filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of their constitutional rights. The plaintiffs appear *pro se* and were granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Prior to the time the State defendants were served, the plaintiffs filed several motions seeking injunctive relief. (D.I. 47, 50, 52, 55, 57.) Recently, the plaintiffs filed a motion to compel. (D.I. 102.)

## II. INJUNCTIVE RELIEF

The plaintiffs seek injunctive relief to: (1) allow consultation between them; (2) order the prison law library to make copies of cases; (3) end nepotism and race discrimination in hiring; (4) allow Fatir to telephone his wife in England; and (5) close D-Building and declare it unhabitable. (D.I. 47, 50, 52, 55, 57.) The State defendants oppose the motions. (D.I. 105, 106, 107, 108, 109).

### A. Standard of Review

When considering a motion for a temporary restraining order or preliminary injunction, the court determines: (1) the likelihood of success on the merits; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the balancing of the hardships to the respective parties; and (4) the public interest. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)(citation omitted). "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Id.* (citations omitted). It is the plaintiff's burden, in seeking injunctive relief, to show a likelihood of success on the merits. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 90 (3d Cir. 1992).

### B. Consultation Among Plaintiffs (D.I. 47)

The plaintiffs are housed at the DCC in different locations: Fatir is housed in W-Building, Wyant is housed in D/West Building, and Boyer is housed in the Medium-High Housing Unit ("MHU"). On July 16, 2007, the court advised the plaintiffs each were required to sign amendments or pleadings filed with the court. (D.I. 39.) The plaintiffs seek injunctive relief to meet for one hour each week to consult, obtain signatures, and exchange documents. (D.I. 47.) They ask for meetings without shackles and outside the hearing of any officer, staff member,

employee, or informant of the Department of Justice or prison administration.

The State defendants oppose the motion on the bases that the plaintiffs do not need to meet to comply with the court's directive; allowing the plaintiffs to meet poses a grave risk to the security of the DCC; and the plaintiffs do not need to consult together to litigate their claims. The court gives consideration to the fact that the State defendants indicate that, during their incarceration, the plaintiffs have had numerous behavior and disciplinary problems, including an escape from prison by Fatir. The State defendants advise that Boyer has a higher security classification than Fatir and Wyant and that, in order to maintain the safety and control of the general inmate population, inmates in different classifications are not permitted contact. As a general matter, inmates are not permitted to meet together or confer without supervision and, according to the State defendants, allowing the plaintiffs to meet would overburden DCC staff. Finally, DCC officials have concluded that allowing the plaintiffs to meet would set a "bad precedent" at DCC and would likely lead to requests for meetings by other inmates.

Where a plaintiff requests an injunction that would require the court to interfere with the administration of a state prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Hence, prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 527 (1979).

The federal courts are not overseers of the day-to-day management of prisons, and the

court will not interfere in the DCC's determination that the plaintiffs request to regularly meet poses grave security concerns at the institution. Moreover, it is the plaintiffs' burden to prove that they are entitled to injunctive relief, and the court finds that they have not met that burden. Therefore, considering the facts adduced and the appropriate legal standard, the court finds that the plaintiffs have failed to meet the first prong necessary for injunctive relief and have not demonstrated the likelihood of success on the merits. Accordingly, the court will deny the plaintiffs' motion to order defendants to allow and arrange consultation among plaintiffs. (D.I. 47.)

### C. Copies of Cases (D.I. 50)

The plaintiffs seek injunctive relief to direct the prison law library to make photocopies of cases as needed and to copy all documents required by the plaintiffs to litigate this case. Plaintiff Fatir asserts that the law library has a policy of "no copying of cases" and that documents he considers "legal" were not photocopied by the law library supervisor. Also, the plaintiffs assert violations of their rights under the Equal Protection Clause because the DCC makes copies of cases for inmates in SHU and MHU, but denies the service to inmates who are not housed in those units.

Affidavits and exhibits provided by the State defendants indicate that the DCC affords inmates access to its law library. (D.I. 106.) Inmates who are allowed to visit the law library cannot remove research materials, but may read research materials and are given pen and paper to write down information. Inmates who choose not to visit the law library, or who are not permitted to visit the law library due to security concerns, may use DCC's institutional mail system to request information and documents. The law library photocopies research materials

and sends the materials to inmates who use the mail system. Photocopies of non-legal materials are available at a cost of twenty-five cents per page.

Persons convicted of serious crimes and confined to penal institutions retain the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). This access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. This right "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 85 (1987). A violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of access. The actual injury requirement is a constitutional prerequisite to suit. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court").

The record reflects that Fatir regularly visits the law library, almost on a weekly basis, and that since January 2007 he has received more than 5,600 pages of photocopied material from the law library. Moreover, Fatir has shown no actual injury relative to the requirement that he pay to photocopy non-legal materials. Wyant uses the mail system and since January 2006, the law library has photocopied almost 2,000 pages of legal materials. Finally, Boyer, who is housed in MHU and is required to use the mail system, has received approximately 2,650 photocopies since July 2007.

The plaintiffs are not entitled to injunctive relief. It is clear from the evidence provided

by the State defendants that the plaintiffs have not been denied access to the courts, to the law library, or to legal materials. Accordingly, the court will deny the motion to order the prison law library to make photocopies of cases. (D.I. 50.)

### D. Nepotism and Discrimination (D.I. 52)

The plaintiffs seek injunctive relief to end nepotism in the Department of Correction ("DOC"); monitor inmate hiring at the DCC; terminate employees who have relatives working within the DOC; demote employees whose promotions were the result of nepotism; cease the hiring of white inmates; terminate the jobs of white inmates; prohibit the DCC from practicing white affirmative action; order the DOC to return all federal monies, grants, supplies or gratuities received during the 2000 through 2008 fiscal year; order an investigation of racial discrimination; order the State defendants to hire the plaintiffs for jobs commensurate with their skill levels, experience, and qualifications; and order the State defendants to house Fatir in a single cell in W-Building. The plaintiffs contend that the DOC's employment practices are racist, bigoted, biased, discriminatory, intentional, and have become systemic. They note that many of the positions in the DOC are held by white individuals. The plaintiffs provide the following racial breakdown of DCC inmate jobs: whites - sixty; hispanics - twenty-seven; blacks - twelve. Finally, Fatir's affidavit avers that, despite his qualifications, he is currently blackballed from being hired to any jobs. Fatir states that he has personally observed the disparity in numbers of white inmates who have inmate jobs. The State defendants oppose the motion and argue that the plaintiffs lack standing to raise a nepotism claim and they cannot satisfy the test for injunctive relief on the discrimination claim.

### 1. Standing

"The 'core component'" of the requirement that a litigant have standing to invoke the authority of a federal court "is an essential and unchanging part of the case-or-controversy requirement of Article III." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)(citations omitted). "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Also, "a plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp.*, 547 U.S. at 352. (citations omitted).

The plaintiffs attempt to merge the concepts of nepotism and race discrimination. Nonetheless, the plaintiffs have not shown that they suffered a personal injury caused by the alleged nepotism in the DOC. Hence, they have no standing to raise the claim and, therefore, the court will deny their motion for injunctive relief on the nepotism issue.

### 2. Discrimination

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Equal Protection Clause requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to raise a valid equal protection claim, a plaintiff must show that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

The plaintiffs seek injunctive relief to eliminate perceived racial discriminatory hiring

practices for inmate jobs. None of the plaintiffs, however, assert that they were denied a prison job because of their race. Indeed, the only affidavit submitted, avers that Fatir is "blackballed" from being hired to a job, but makes no mention that it is a result of his race. Finally, the plaintiffs do not indicate that any of the State defendants had involvement in the alleged discriminatory hiring practices. Hence, the plaintiffs have not met their burden to show that they are entitled to injunctive relief. Accordingly, the court will deny the motion for injunctive relief on the race discrimination issue. (D.I. 52.)

### E. International Telephone Calls (D.I. 55)

Fatir seeks injunctive relief to allow him to make international telephone calls to his wife, who resides in England. Fatir states that he filed a grievance to telephone his wife in England and prevailed before the grievance committee. However, the current telephone system would not facilitate said calls and, Fatir asserts, as a result, the warden's designees overruled the grievance committee allowing Fatir to make said calls, citing security reasons. Fatir contends that the DCC could accommodate him by requiring the telephone vendor to include international telephone call in its system. Fatir contends that he has a First Amendment right to communicate with his wife and family and that his right Fourteenth Amendment right to equal protection is violated because the DCC has a telephone system for domestic telephone calls, but none for international telephone calls.

The State defendants oppose the motion and argue that Fatir has no First Amendment right to make international telephone calls and even assuming there is such a right they are entitled to deference in their decision to limit Fatir's telephone use. They also argue there has been no violation of Fatir's right to equal protection.

The court first addresses Fatir's Equal Protection claim. To state a claim under the Equal Protection Clause, a prisoner must allege that he was treated differently from similarly situated inmates. *Saunders v. Horn,* 959 F. Supp. 689, 696 (E.D. Pa.1996); *see also City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (noting that the Equal Protection clause "is essentially a direction that all persons similarly situated should be treated alike"); *Price v. Cohen,* 715 F.2d 87, 91 (3d Cir. 1983) ("To establish a violation of the equal protection clause, a plaintiff must show that [an] allegedly offensive categorization invidiously discriminates against [a] disfavored group."). There is no indication that Fatir is treated differently from other inmates - none of them are allowed to make international telephone calls.

As to telephone use, inmates have First Amendment rights notwithstanding their incarceration, but these rights are necessarily circumscribed because of the legitimate penological and administrative interests of the prison system. *See Vester v. Rogers,* 795 F.2d 1179, 1182 (4th Cir. 1986) ("Although a prisoner does not shed his first amendment rights at the prison portals, it is equally true that lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights."). The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Almahdi v. Ridge,* 201 Fed. Appx. 865 n.2 (3d Cir. 2006) (quoting *Fillmore v. Ordonez,* 829 F. Supp. 1544, 1563-64 (D. Kan. 1994) (other citations omitted).

Following an investigation of Fatir's grievance, it was discovered that it was not possible to make direct dialed international telephone calls using the current inmate telephone system. The affidavit of Joseph Richard ("Richard"), an institutional investigator, states that for Fatir to receive international telephone calls, the recipient of an inmate telephone call would be required

to purchase a cell phone and then set up a pre-aid account with the prison's telephone system. (D.I. 108, ex. B.) Richard states that inmates are not allowed to make international telephone calls from a counselor or chaplain's office as said calls would pose a security risk.

While Fatir does have other options of communication – by mail, personal visits, or a pre-paid telephone account with the DCC's telephone system – the court is aware of telephone plans that provide local numbers to make international telephone calls without using long distance or international numbers. Two plans that come to mind are "talkster" found at www.talkster.com and "global call connect" found at www.uwtcallback.com. At this juncture, the court will deny without prejudice the motion for injunctive relief to permit Fatir to telephone his wife in England. (D.I. 55.) Nonetheless, the court will order the State defendants, within thirty days from the date of this order, to conduct an investigation to determine if there are options available to Fatir to make international telephone calls using local telephone numbers.

### F. D-Building (D.I. 57)

The plaintiffs ask the court to enter an order to close D-Building at the DCC and declare it unfit for human habitation. The plaintiffs set forth a number of reasons why the building should be closed including mold, fungus, peeling paint, inadequate ventilation, rust, double bunking, contaminated water, non-potable water, and dirty mattresses. The State defendants respond that the motion is moot as to Fatir and Boyer inasmuch as they are no longer housed in D-Building.

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v McMillian*, 503 U.S. 1, 8

(1992); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel,* 256 F.3d 120, 125 (3d Cir. 2001).

Fatir's affidavit states that while he was housed in D-Building there was fungus and mold in the showers and no effort was made to remove it, there were no toilet or urinal stalls in D-tier, a fetid smell permeated the tier, a bathroom window was sealed, and there were no working vents on the tiers or in the cells. The State defendants acknowledge that while there is peeling paint and mold in the showers, there are inmate workers who clean the showers. Also, there is no other mold or mildew in other parts of D-Building. With regard to ventilation, the State defendants acknowledge there is a ventilation problem, but it is attributable to inmates blocking the air supply vents. The State defendants dispute that there are problems with mattresses and state that they are periodically replaced and contaminated mattresses are discarded. Finally, the State defendants dispute that the water is not potable. According to the State defendants an inspection found the water potable and failed to reveal any problems with the water.

The burden lies with the plaintiffs to prove they are entitled to injunctive relief. With regard to Fatir and Boyer, this motion for injunctive relief is moot. As to Wyant there are no allegations he suffered any injury as a result of the alleged conditions of confinement. Nor has he made an adequate showing that he is likely to succeed on the merits. Accordingly, the court

will deny the motion for injunctive relief to close D-Building and declare it unhabitable. (D.I. 57.)

## III. MOTION TO COMPEL

On March 17, 2008, Fatir filed a motion to compel non-parties to produce documents. (D.I. 102.) Initially, the court notes that the State defendants have just recently been served and answered the complaint. More important, the record does not indicate that the plaintiffs utilized the Federal Rules of Civil Procedure obtain discovery from a non-party. See Fed. R. Civ. P. 37, 45. Accordingly, the court will deny the motion to compel. (D.I. 102.)

## IV. CONCLUSION

Based upon the foregoing analysis, the court will deny the plaintiffs' motions for injunctive relief and will deny the plaintiffs' motion to compel. (D.I. 47, 50, 52, 55, 57, 102.) An appropriate order will be entered.

_____
CHIEF, UNITED STATES DISTRICT JUDGE

____March 26____, 2008
Wilmington, Delaware

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD BOYER, AMIR FATIR, and WARREN WYANT, <br><br> Plaintiffs, <br><br> v. <br><br> COMMISSIONER STANLEY TAYLOR, PAUL HOWARD, RONALD HOSTERMAN, WARDEN THOMAS CARROLL, DEPUTY WARDEN DAVID PIERCE, JENNY HAVEL, JANET HENRY, CPL. ONEY, FLOYD DIXON, SGT. MARVIN CREASY, JAMES P. SATTERFIELD, LT. PALOWSKI, SGT. BAILEY, CPL. VARGAS, FIRST CORRECTIONAL MEDICAL, CORRECTIONAL MEDICAL SERVICES, DAVID HALL, MAUREEN WHALEN, and MICHAEL LITTLE, <br><br> Defendants. | ) ) ) ) ) ) ) ) Civil Action No. 06-694-GMS ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**ORDER**

At Wilmington this 28th day of March, 2008, for the reasons set forth in the Memorandum issued this date

1. The plaintiffs' motion to order defendants to allow and arrange consultation among plaintiffs is **DENIED**. (D.I. 47.)

2. The plaintiffs' motion to order prison law library to make copies of cases is **DENIED**. (D.I. 50.)

3. The plaintiffs' motion for a temporary restraining order and a preliminary injunction is **DENIED**. (D.I. 52.)

  4. The plaintiffs' motion for a temporary restraining order or a preliminary injunction to permit plaintiff Fatir to telephone his wife in England is **DENIED** without prejudice. (D.I. 55.) The State defendants shall, within **THIRTY DAYS** from the date of this order, conduct an investigation and report to court whether there are options available to the plaintiff to make international telephone calls using local telephone numbers.

  5. The plaintiffs' motion for a temporary restraining order or a preliminary injunction to close D-Building and declare it unfit for human habitation is **DENIED**. (D.I. 57.)

  6. The plaintiffs' motion to compel non-parties to produce documents is **DENIED**. (D.I. 102.)

_____
CHIEF, UNITED STATES DISTRICT JUDGE