IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Boyer, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-694-GMS |
| | ) | |
| Taylor, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR HEARING ON TRO/PRELIMINARY INJUNCTION**

COMES NOW Plaintiff Amir Fatir, pro se, pursuant to Rule 65, Fed. R. Civ. P. and asks this honorable court to grant a hearing on the evidence presented by plaintiffs and defendants regarding the following pending motions:

a. Motion to Order Defendants to Allow and Arrange Consultation Among Plaintiffs (RE: D.I. 471)

b. Motion to Order Prison Law Library to Make Copies of Cases (Re: D.I. 50)

c. Motion for a Temporary Restraining Order and a Preliminary Injunction (Re: D.I. 52)

d. Motion for a TRO/Preliminary Injunction to Permit Plaintiff Fatir to Telephone His Wife in England (RE: D.I. 55)

e. Motion for a TRO/Preliminary Injunction to Close D-Building and Declare it Unfit for Human Habitation (RE: D.I. 57)

1. Defendants have made various statements which Plaintiffs wish this court to have the full evidence before deciding the above motions.



FILED
MAR 31 2008
U.S. DISTRICT COURT

**2.  RE: Motion to Order Defendants to Allow and Arrange Consultation Among Plaintiffs**

3. Defendants have characterized plaintiffs as too dangerous to meet out of a fear that they will "plot and plan."

4. Plaintiff Fatir would like to produce evidence that their argument is unsound since after his escape 32 years ago the Department of Correction's many boards granted Fatir outside/off-grounds status. He worked for seven or eight years outside the prison and worked, on some occasions, in the communities of Smyrna and Wilmington. He even traveled to the very office of the Attorney General at 820 N. French Street. Moreover, Fatir traveled to the Commissioner's and Bureau Chiefs offices at 80 Monrovia Avenue, Smyrna, DE several times and met with Bureau Chiefs and the Commissioner.

5. Apparently, Fatir was not deemed too dangerous to meet with judges, including the judge who sentenced him to death, Bernard Bailick, or to be trusted to work with, meet and secure the safety of the then Commissioner's wife.

6. Fatir was, upon many occasions, called by the then Warden of DCC and asked to escort dignitaries around the prison since, in the Warden's words, Fatir could be trusted to risk his life to save any outside dignitary who was attacked while "most of my guards would run away."

7. Moreover, evidence will be presented that many inmates meet now without a guard present and with no apparent expectation that they are planning or plotting something nefarious.

**8. RE: Motion to Order Prison Law Library to Make Copies of Cases**

9. Plaintiffs hope to present evidence that any existing policy that permits inmates who don't reside in either SHU or MHU to get copies of cases if they choose not to physically go to the law library is unknown and has never been posted and that all Tim Martin and the library staff say when asked to make copies is "we don't copy cases."

**10. Re: Motion for a Temporary Restraining Order and a Preliminary Injunction**

11. Plaintiffs wish to present evidence of three chains of command operating at the Delaware Correctional Center, one formal and two that are informal.

12. The formal chain begins with the Commissioner and goes to the Bureau Chief, Warden, Deputy Warden, etc.

13. One of the two informal chains is family-based and often disrupts and ignores the official chain of command.

14. The other informal chain is based upon membership in the Ku Klux Klan. For example, former Staff Lieutenant Moran was an enforcer in the Smyrna KKK and thought nothing of berating, challenging and disobeying Warden Redman in public since, in the unofficial chain of command through the Klan, Moran outranked Redman. Other former DCC Klan lieutenants were Lt. Heavren and Lt. Pratt, both of whom use to brag of their Klan rank to inmates and show off cards which indicated their KKK membership. These Klan members, and others like them, were and are virtually untouchable by the usual, official chain of command.

15. Understanding these various lines of real power, authority and command is important in understanding how nepotism affects decision-making within the prison system down to racial discrimination in hiring and firing of Black prisoners. Thus

plaintiffs hope to show that they do have standing regarding the claims of nepotism brought forth in their TRO.

**16. Motion for a TRO/Preliminary Injunction to Permit Plaintiff Fatir to Telephone His Wife in England**

17. Defendants implied that Fatir was, perhaps, not really married. Although there is no process or requirement to prove marriage in the prison, Fatir may be the only DCC prisoner who has produced proof of his marriage. He provided a copy of his marriage certificate to this court in the case Masjid Muhammad-DCC v. Keve during which he sought enforcement of the court's order regarding his name. A copy of same was provided to Ophelia Waters, Esq. at the Attorney General's office. Plaintiff is prepared to provide this court with evidence which refutes defendant counsel's insulting footnote that stated "There is no evidence or documentation that shows that Plaintiff Fatir is legally married."

18. Moreover, Plaintiffs will question officials, under oath, about the statement made in ~~Scarborough~~ Richardson's affidavit that no calls to other countries have been made from the chaplain's office. On two occasions (March 18, 2008 and March 25, 2008) chaplain Pennell stated that he has, with official permission, placed overseas and international calls for inmates including, but not limited to, Nagi (calls to Yemen) and Hiere (calls to Guatemala).

**19. RE: Motion for a TRO/Preliminary Injunction to Close D-Building and Declare it Unfit for Human Habitation**

20. Plaintiffs seek to question Pawlowski about his claim of no ill-effects from drinking D-Building water for 19 years. Plaintiffs seek Pawlowski's medical records to

verify that he has suffered no ill-effects. Additionally, plaintiffs seek to question Pawlowski about his superior taste-skills which allow him, by means of taste to determine the quality of water.

21. Plaintiffs wish to gather and provide evidence about the ventilation system to refute the contentions of defendants that the only problem with the ventilation is that which was caused by inmates.

22. Plaintiffs seek to have Pawlowski provide all documentation of his inspections and what he did or did not do when he found that the building was contaminated with mold.

23. Plaintiffs seek to have defendants provide all documentation and answer questions under oath about the water, bathrooms, showers, air quality and soil in and around D-Building. Moreover, plaintiffs seek to question defendants and Pawlowski about the existence of asbestos in D-Building.

24. Plaintiffs also seek to question defendants about how easily it would be for just about any officer on any shift to send Fatir back to D-Building, thus establishing that Fatir retains standing in the TRO to Close D-Building.

25. Plaintiffs further seek to question Pawlowski about the existence of similar health hazards in W-Building so that plaintiffs can determine whether to seek this court's leave to amend the suit and TRO to include W-Building and the possible closing of W-Building should it be deemed to be unfit for human habitation as well.

Dated: March 26, 2008

Respectfully submitted,

_____
Amir Fatir

_____
Warren Wyant

_____
Donald Boyer (in MHU and Unable to sign)

Amir Fatir #137616
1181 Paddock Rd.
Smyrna, DE 19977

Legal Mail

Clerk
U.S. District Court
844 King St., Lockbox 18
Wilmington, DE 19801

