IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Boyer, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No. 06-694-GMS |
| ) | |
| Taylor, et al., ) | |
| ) | |
| Defendants. ) | |

FILED
APR 11 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## MOTION TO ALTER OR AMEND A JUDGMENT

**COMES NOW** Plaintiff Amir Fatir, pursuant to Rule 59, Fed. R. Civ. P., and asks this honorable court to alter or amend its judgment denying plaintiffs' request for injunctive relief from defendants' racial discrimination in hiring (D.I. 52).

1. The court held that "None of the plaintiffs... asserted that they were denied a prison job because of their race. Indeed, the only affidavit submitted, avers that Fatir is 'blackballed' from being hired to a job, but makes no mention that it is a result of his race. Finally, the plaintiffs do not indicate that any of the State defendants had involvement in the alleged discriminatory hiring practices. Hence, the plaintiffs have not met their burden to show that they are entitled to injunctive relief."

2. Plaintiffs' entire argument was that they generally, and Fatir particularly, had been and were continued to be denied equal employment opportunities within the prison because of their race. The brief submitted in support of their Motion for a Temporary Restraining Order and/or Preliminary Injunction discussed defendants' racial discrimination in jobs at length. Moreover, it is known via other filings in this case that Fatir and Boyer are African-American.

3. It should have been quite obvious that Plaintiff Fatir claimed he was denied employment because of his race.

4. Rule 8 (a)(2) of Fed. R. Civ. P. only requires that plaintiffs provide "a short and plain statement of the claim showing that the pleader is entitled to relief."

5. "A document filed *pro se* is 'to be liberally construed,' *Estelle*, 429 U.S., at 106, 97 S.Ct. 285, and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid.* (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ('All pleadings shall be so construed as to do substantial justice')." *Erickson v. Pardus*, 127 S.Ct. 2197, 2200. This court failed to "liberally construe" plaintiffs' motion and, moreover, failed to hold plaintiffs to a less stringent standard than the standard to which a real lawyer would be held.

6. Plaintiffs respectfully submit that this court, perhaps inadvertently, engaged in hair-splitting when it decided to deny relief because plaintiffs failed to specifically state that they were being denied jobs due to their race. The court should have construed that motion to mean that they were making just such a claim and should have held plaintiffs to a less stringent standard than that to which it would have held an attorney.

7. Plaintiff Fatir, to be specific, claims that he has been and continues to be denied equal employment based upon his race and that the specific defendants who have directly denied him such employment are defendants Whalen and Little.

8. Whalen utilized delay tactics – running out the clock until she was no longer principal of DCC education – to deny Fatir employment because of his race. Little utilized bogus write-ups which Fatir was found not guilty of and a 24 hour Loss of All

2

Privileges that was beyond the arbitrary one year disqualification point to justify his refusal to hire Fatir in the law library. Fatir avers, however, that the real reason for Little's refusal (since those he claimed were the actual reasons were not, by DOC policy, valid) was racial discrimination. Little's penchant for overwhelmingly hiring whites prior to and after this claim is part of the evidence which will prove his racial bias against Fatir in particular and Blacks in general.

9. In addition to the specific acts of discrimination by Whalen and Little, the Delaware Correctional Center ("DCC") as a whole has put in place a system of defacto discrimination which precludes African-Americans – except for a token or two -- from all of the better-paying, skilled, prestigious and coveted jobs.

10. Rule 8(e) of the Federal Rules of Civil Procedure states that "Pleadings must be construed so as to do justice." Such a construction could not coexist with a decision to deny based upon hair-splitting and semantics. Fatir was not, after all, arguing that he'd been denied employment because of his height. No reader of plaintiffs' motion and brief could construe that the discrimination rested upon anything other than plaintiffs' race.

**The Way We Were: DCC Hiring Procedures Before Apartheid (circa 1975-1996)**

11. Pursuant to Administrative Regulations and Standard Operating Procedures, the Pre-Placement Coordinator interviewed and tested all prisoners and maintained a file on the types of jobs for which they were qualified. When openings occurred, on-site supervisors notified the Pre-Placement Coordinator and he would consult his records and send an ISO9 (employment form) to the Institution Classification Committee (ICC) of the person deemed most qualified – irrespective of race. The classification process would commence and, if the person passed through each board, he would be assigned to work at

the particular cite. If the on-site supervisor had a legitimate reason for not wanting to employ the particular inmate, he or she could object, in writing, to the warden.

**Helter Skelter: DCC's Apartheid Hiring Procedures (circa 1996-present)**

12. Each supervisor sets up his or her own hiring procedures quite arbitrarily. For example, at times supervisors decide that to qualify for a particular job one has to be write-up free (not conviction free, since it is assumed that anyone written up will be convicted and that, sadly, is usually the case since due process in disciplinary procedures long ago went the way of the dodo bird) for six months. At other times or at other sites, the candidate must be write-up free for a year or for two years. With the white guards at DCC eager to write up Black inmates at every opportunity, not many Black inmates can escape getting a write up – whether deserved or undeserved – for two years.

13. Today, no one tests a candidate to determine his qualifications for job placement. The white inmates at the job pick out their friends and then take an employment application to the chosen white prospect who then gets a counselor to sign off on it. At that point the rubberstamp classification beings. Oftentimes, no one even knows when a higher paying job is available. The whole hiring process is conducted secretly, clandestinely, to eliminate Black prospects from even a scintilla of a chance of getting hired.

14. Occasionally, a counselor will get wind of a job opening and will recommend a prisoner for that position. If the position is above that of janitorial or kitchen work, almost invariably, the counselor will recommend a white prisoner. Counselors readily, however, send Blacks to the kitchen to work whether they wish to work there or not.

4

15. The racism has become so institutionalized that more than one counselor has stated that it is proper to racially discriminate in putting Black inmates in demeaning jobs because such inmates "would fit in better" in a place like the kitchen.

16. On rare occasion a job is posted for applicants to apply. But not only are there administrative restrictions on who can have what jobs, there are also statutory restrictions and the biases of the particular hiring parties. For example, defendant Mike Little seems to only hire Caucasian sex offenders for jobs in the libraries while some counselors are biased against sex offenders and are reluctant to recommend them for certain jobs.

17. Occasionally, an inmate can make an end around and go to a person seemingly not connected with job placement and – because of the informal network of nepotism – get a job whether or not he is qualified for that job.

18. If a counselor does not inform a prisoner of the existence of a job or recommend him for that job, he is virtually precluded from any chance of getting the job. In the main, the counselors only recommend Black prisoners for jobs in kitchen or janitorial. If this court were to walk through the institution, the court would see an overwhelming percentage of whites in skilled employment and the lower paying jobs manned almost exclusively by Blacks. The job situation at DCC is comparable to the Hindu caste system of relegating the Sudra "untouchables" to dirty work or that of apartheid South Africa's relegation of Black Africans to the same.

19. The court should note that defendants never denied that they practiced racist hiring discrimination. Defendants seemed certain that the court would let them get away with the kinds of Jim Crow employment procedures they got away with when the courts

were lily white and occupied by men who made no effort to pretend that they applied the doctrine of equal protection to Blacks.

Thus Fatir is not only discriminated against defendants Whalen and Little, the discrimination is systemic and institutionalized and conducted indirectly – by not enforcing regulations requiring equal employment opportunities – by defendants Taylor, Howard, Hosterman, Pierce and Carroll. Each of those defendants was and/or is aware of the racial discriminatory practices and each is responsible for correcting the biased employment practices. Yet neither did and each was, in fact, in compliance with the racist employment practices at DCC.

**WHEREFORE**, plaintiffs ask this honorable court to grant their Motion to Alter or Amend a Judgment.

Date: 4/9/08                                  Respectfully submitted,

_____
Amir Fatir

_____
Warren Wyant

_____
Donald Boyer (in MHU and unable to sign

## Certificate of Service

I, Amir Fatir, hereby certify that I have served a true and correct copy(ies) of the attached Motion to alter or Amend a Judgment upon the following parties/persons:

To: Erica Tross, Esq.

    Dept. of Justice

    820 N. French St.

    Wilm., DE  19801

To:

To:

To:

To:

To:

BY PLACING IN A SEALED ENVELOPE, and depositing same in the United States Mail at the Delaware Correction Center, Smyrna, DE 19977.

On this 9th day of April, 2008

_____
Amir Fatir
SBI # 137010



IM Amir Fatir
SBI# 137010  UNIT E
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

Legal Mail

Clerk
U.S. District Court
844 King St., Lockbox 18
Wilmington, DE 19801