IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Boyer, et al.,                    )
                                  )
            Plaintiffs,           )
                                  )
      v.                          )    C.A. No. 06-694-GMS
                                  )
Taylor, et al.,                   )
                                  )
            Defendants.           )

FILED

MAY 16 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

scanned

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF FATIR'S MOTION FOR A TEMPORARY RESTRAIING ORDER
AND/OR A PRELIMINARY INJUNCTION TO PERMIT PLAINTIFF FATIR TO
RECEIVE REJECTED BOOKS**.

COMES NOW Plaintiff Amir Fatir, pro se, in reply to Defendants' response to

plaintiff's Motion for a TRO/Preliminary Injunction to Permit Plaintiff Fatir to receive

rejected books.

1. Defendants assert that plaintiff will not succeed on the merits because he did

not file a grievance on the rejected books.

2. That argument is unsound for the following reasons: a) Fatir did file a

grievance on the rejected books (see Exhibits A through E). b) Fatir filed grievances

even earlier when he was housed in SHU Building 19. As is unfortunately common in

the SHU, the building officers who must post grievances filed by the locked in prisoners

in that unit simply discarded the grievances. Fatir did all within his power to comply

with the grievance procedures, but cannot control or be held accountable for the actions

of the guards who discarded his grievances and the grievances of many others then and

now held in SHU.[1]

---

[1] The action of destroying grievances and other legal materials in maximum and supermaximum units at
DCC is not new. Lt. Shockley who commanded M.S.U. (Maximum Security Unit) in the 1980s regularly

3. Since the law mandates that inmates use the grievance procedures, it stands to reason that the procedure be a functional one. With guards routinely destroying and discarding SHU prisoners' filings (and refusing to copy the grievances written if the prisoner can even succeed in cajoling a grievance form from an officer – a dance which can take several days) it takes quite a bit of temerity for defendants to assert a defense based upon a failure to file a grievance.

4. At the time "Ishmael" and "The Catcher in the Rye" were purchased, the Delaware Correctional Center ("DCC") then required a separate route for appealing rejected books. That route includes a letter to the mailroom and, if no satisfaction is gained, one to the Support Services Manager. If that fails to provided satisfaction, then another letter of appeal to the Warden. Plaintiff Fatir followed that procedure to the letter once he was informed that his books had been rejected. At that time, no forms were published for use in filing any appeals regarding rejected books. Moreover, each mail room officer used his or her own subjective criteria for which books would be allowed and which books would not.[2]

5. Following the settlement with Tightwad Magazines, Inc., DOC established a slightly more formal procedure. In the newer procedure a form is sent to the prisoner and he can then appeal the decision to the Warden.

---

destroyed prisoners' legal mail and grievances. Shockley was eventually terminated from DCC employ and reportedly now resides in Florida.

[2] Fatir was not officially notified that the books "Ishmael," "Catcher in the Rye," "Natural Cures" and "Multi-orgasmic Woman" were being withheld until he wrote several letters enquiring about them. For "Multi-orgasmic Woman" he was first told that he'd failed to write to tell them what to do with the book and thus it was destroyed. That was false, since he'd written five letters about that book to the appropriate authorities. Then he was told, falsely, that "Multi-orgasmic Woman" was "The Story of O" and later on "The Big O." Neither of these is the title of the book.

2

6. Exhibit A is of grievance # 22441. The book it concerns is "The Multi-orgasmic Woman" by Mantak Chia. At the time the mailroom had not provided Fatir with a title of the book it was withholding. After Fatir complained to Lt. Profaci about the missing "Natural Cures" book, he then learned of the fact that the mailroom had been withholding "Multi-orgasmic Woman."

7. At the time "Natural Cures" was purchased, it was an extremely "hot" item. Fatir believes one of the mailroom guards simply stole the book and took it home with him or her.

8. Exhibit B is a grievance that addresses Fatir's concerns about the book "Natural Cures 'They' Don't Want You to Know About."

9. Exhibit C is about "Natural Cures" and the alleged "Story of O" (which turned out to be "Multi-orgasmic Woman") which the mailroom was denying or mishandling.

10. Exhibit D is a grievance which concerns the blanket censorship of books, magazines and pictures in violation of the First Amendment of the United States Constitution.

11. It is clear that Fatir did indeed file all necessary grievances and more in exhausting internal means of addressing the censorship problem.

12. Exhibit E shows Fatir's filing of a grievance regarding "Shakti: the Feminine Power of Yoga." Although defendants failed to provide a case number or a grievance hearing, it is clearly stamped "Received Jun 06 2007 Inmate Grievance Office."

13. Exhibits E and F are further attempts to address the "Shakti" rejection using the appeal system promulgated after the Tightwad Magazine settlement. Other forms were filed by Fatir of which defendants have copies.

3

14. Defendant counsel's statement on page 5 of her Response, paragraph 14, that "Plaintiff Fatir did not file a single grievance regarding the alleged denial of 'The Catcher in the Rye', 'Ishmael' or 'The Multi-Orgasmic Woman'" is patently false. As such, Fatir did exhaust his available administrative remedies and therefore can succeed on the merits of his claim regarding the denial of these books and the Motion to Receive Books should be granted.

15. Defendants next argue that plaintiff's rights haven't been violated where the policy prohibiting the requested books satisfied the *Turner* test.

16. The three cases which mark the Supreme Court's pattern of dealing with prison First Amendment claims are *Procunier v. Martinez*, 94 S.Ct. 1800 (1974), *Turner v. Safely*, 107 S. Ct. 2254 (1987) and *Thornburg v. Abbott*, 109 S.Ct. 1874.

17. *Turner* requires a "reasonable relationship test" which establishes a link between a facility's interests and the censorship of a particular piece of literature."

18. Defendants' rejection of Fatir's books fails the first prong of *Turner*. "A brief, conclusory statement is insufficient for evaluating the application of *Turner's* first prong." *Ramirez v. Pugh*, 379 F.3d 122 at 127 (Citing *Wolf v. Ashcroft*, 297 F. 3d 305 (3d Cir. 2002).

19. To pass the *Turner* test, defendants would have to be able to show a valid, rational connection between the prison regulation and a neutral and legitimate government interest." This they cannot do. For more than three decades the same prison allowed nude magazines, books and movies.[3] The only exception was hardcore

---

[3] The magazines which were permitted from 1971 until approximately 2001 included Playboy, Players, Penthouse, Hustler, Oui, Black Tail and even Playgirl (which some convicts would humorously purchase as gifts for their friends). Books showing nude women were not censored.

pornography that showed penetration. Defendants cannot now cite **a single example in which that policy harmed legitimate penological interest.**

20. Any truly "rational" connection would have to involve reasoning (deductive or inductive and including the rules of logic), not biases and person prejudice. If a regulation is implemented in such a way that prison censors apply "their own personal prejudices and opinions," it is suspect. *Thornburg v. Abbott*, 109 S.Ct. 1874, 1883, n. 14.

21. The very fact that defendants continue to reject to ordinary nude photographs as "pornography" and "obscene" is evidence that they are applying their own personal prejudices and opinions when, as defendants' counsel must surely know, none of Fatir's books falls within the legal definition of either "pornography" or "obscenity."

22. For a rational, valid connection to be established, defendants must be able to produce tests and studies which provide evidence that their policy actually, reasonably, makes a connection to a neutral and legitimate government interest. This defendants have not done and cannot do.

23. In fact, many studies are "counter intuitive" in that they show the exact opposite of the position defendants have taken. Such studies show that the **availability** of pornography actually **reduces** sex crimes. Thus, it could be rationally argued that the thing the sex criminals need – whom defendants claim to be so dedicated to rehabilitating – is **more pornography**, not the elimination of it. Some court opinions have held that arguments, like those of defendants, that books should be denied non-sex offenders because of a fear that sex offenders might get them do not pass muster.

24. Since Fatir's books are not pornographic, that discussion may not be apropos to this reply. But the fact that defendants have failed to apply any reason or logic whatsoever in arriving at its anti-constitutional policies is significant.

25. *Turner's* second prong requires that there be an alternative means of exercising the right in question. Defendants, almost comically, try to claim that being able to read anything at all satisfies the requirement of *Turner* that an alternative means be provided. It is true that Judge Farnan agreed with this point of view in *Jolly v. Snyder*, but the Judge, like defendants, was wrong. *Turner* did not contemplate that an alternative means of expression would be reading anything at all. Such a nonsensical position would mean that being able to read only phonebooks of addresses of citizens of the People' Republic of China somehow satisfied ones First Amendment rights.

26. Moreover, *Jolly* was decided prior to the settlement with Tightwad Magazine, Inc. and the promulgation of policy 4.5 along with its exceptions.

27. There are at least three categories of censorship rules that, even after *Thornburgh*, remain facially unconstitutional for failure to meet the standards set in that case.

28. First, censorship rules that prohibit inmates categorically from receiving certain publications. Second, foreign language. Third, blanket prohibition of nude photographs no matter what the source or content. *Owen v. Willie*, 117 F. 3d 1235.    In addition, policies that fail to provide a mechanism to review the initial decision are not permissible. Since DCC sends books back, fails to notify, and fails to provide a specific reason for rejection or permits the prisoner to see what is being rejected, it fails to provide a proper mechanism for review of the initial decision.

6

29.  Defendants have been overbroad in defining "obscenity" and brand all nudity with that definition.

30.  Defendants' counsel next begins to prophesy or engage in some type of psychic ability to peer into the future when she claims that "permitting some inmates to have a book like Shakti would lead to a great ripple effect." Apparently, counsel hopes to scare this court with horrid tales of how Fatir might trade, barter or sell his book so that Fatir's books "might wind up in the hands of inmates who were denied the material."

31.  DCC has rules and enforcement against bartering, selling and trading and need only enforce its rules to prevent the great bartering catastrophe about which counsel prophesies.

32.  She goes on to hysterically conjure up some sort of "dangerous ripple effect" that would put the safety and security of the prison in danger. One wonders why this very same "dangerous ripple effect" was impotent when it came to undermining the prison's safety and security for the three decades when all manner of nude books and magazines were permitted. Defendants counsel cannot produce any such "ripple effect" from the previous decades nor can she explain why the Gander Hill prison has not suffered from a similar ripple effect since it does allow the very types of materials the DCC officials have decided to ban.

33.  On page 7, note 1 defendants state that "Fatir has no proof that the rest of the books were ever ordered or denied. Fatir has no evidence that he ever ordered 'The Catcher in the Rye' or 'Ishmael.' Fatir's Motion showed that 'Natural Cures They Don't Want You to Know About' was never received by the DCC mailroom... Finally, there is no evidence that the book The Multi Orgasmic Woman was ever ordered or denied.

Fatir's records show that the book 'The Big O' was received by the mailroom on December 14, 2005. Fatir does not complain about being denied 'The Big O.'"

34. For the sake of clarity, "The Big O" was the mailroom's mangling of the title of "The Multi-Orgasmic Woman." The initially told Lt. Profaci that it was entitled "The Story of O."

35. Defendants' counsel is, again, incorrect in stating that Fatir "has no proof" that the rest of the books were ordered. Exhibit G provides proof that "Natural Cures" was ordered via Amazon.com on October 31, 2005. Exhibit H proves that "The multi-Orgasmic Woman" was ordered on December 6, 2005. Exhibit I proves that "The Catcher in the Rye" was ordered on January 22, 2005.

36. "Ishmael" was ordered through Barnes and Nobles and was sent to the prison during Fatir's illegal, unconstitutional and retaliatory stay in SHU Supermax[4] in 2004 until mid 2005. Fatir will obtain "proof" of that purchase too, if the court deems such proof necessary.

37. Plaintiff Fatir has suffered and continues to suffer irreparable harm by the denial of his books. Any deprivation of a constitutional right is irreparable harm. In addition, Fatir is precluded from reading, critiquing, reviewing and writing about the subject matter and content of said books for his webpage and for other publications for which he writes.

38. Department of Correction ("DOC") policy 4.5 prohibits "sexually explicit material," not all nudity. Defendants would have this court believe that all nudity is

---

[4] Plaintiff Fatir is aware that this honorable court has stated that SHU is not a supermax prison. Plaintiff respectfully disagrees and points out that the court never lived in SHU supermax prison before. Fatir has. Moreover, Fatir has visited the supermax in Arizona (SMU II) that Delaware's SHU seeks to imitate. Both are supermax prisons but less so than the Colorado underground supermax with which the court is likely familiar.

inherently "sexually explicit." That type of "reasoning" is not rational at all, but is part of a Christian fundamentalist bias which ahs no place in modern corrections.

39. Policy 4.5[5] clearly indicates the type of material the warden is empowered to reject: "sado-masochistic, bestiality, involving children." None of Fatir's books fall into that category. 4.5 also states that "Sexually explicit material does not include material of a news or information type." Fatir's books meet that exception.. "Publications concerning research or opinions on sexual, health, or reproductive issues, or covering the activities of gay rights organizations or ray religious groups, for example, **should be admitted** unless otherwise a threat to legitimate institution interests."

40. The question arises, if Fatir's books do not meet the exceptions provided by 4.5, then what materials do?

41. 4.5 goes on to state that "Sexually explicit material may nonetheless be admitted if it has scholarly value, or general social or literary value."

42. "The Multi-Orgasmic Woman" was a New York Times bestseller and has revolutionized medical and social ideas about sex and reproductive health. "Shakti" is a yoga book. There is an entire category of female health disorders which certain yoga postures can alleviate or outright cure. Where defendants' counsel only permitted herself to see "naked women in yoga poses," an unbiased eye that had some idea of yoga as both a philosophy and a healing practice would understand far more.

43. Defendants have no legitimate interest in foisting their biases and narrow right wing opinions upon others under the guise of "security" while using the threat of some mysterious "ripple effect" that would undermine the prison when the very same

---

[5] The whole of BOP 4.5 is produced in the Proposed Amended Complaint dated July 11, 2007 on pages 7-9.

materials never accomplished anything of the sort during 30 years of being the normal operating procedure of the institution.

44. Prison officials have no legitimate governmental interest in imposing their own standards of sexual morality on the inmates. *Pepperling v. Crist*, 678 F.2d 787, 789 (9th Cir. 1982).

45. "In *Wolf v. Ashcroft*, 297 f.3d 305 (3d Cir. 2002) we reversed a district court's decision upholding a restriction on the showing of r-Rated and NC-17 rated movies in federal court." *Ramirez v. Pugh*, supra, at 127.

46. *Wolf* directed the district court to "describe the interest served, consider whether the connection between the policy and interest is obvious or attenuated – and, thus, to what extent some foundation or evidentiary showing in necessary and, in light of this determination, evaluate what the government has offered." *Wolf* at 309., *Ramirez* at 128. The defendants have failed to act in accordance with *Wolf*.

47. The court in *Ramirez* held: "Turning to the appeal before us, we find that the District Court erred in evaluating the Ensign Amendment and its implementing regulation under *Turner's* first prong on a motion to dismiss, without any analysis or inquiry into the interests involved and the connection between those interests and the restriction at issue. First, although the District Court correctly identified rehabilitation as a legitimate penological interest, see *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), it did so without adequately describing the specific rehabilitative goal or goals furthered by the restriction on sexually explicit materials. Second, even though the connection between the amendment and the rehabilitation of federal sex offenders may be obvious under *Waterman*, that connection becomes attenuated upon

10

consideration of the entire population of BOP inmates, such that a factual record becomes

necessary for determining the rationality of the amendment's overall connection to

rehabilitative interests. On remand, therefore, the District Court must first identify with

particularity the specific rehabilitative goals advanced by the government to justify the

restriction at issue, and then give the parties the opportunity to adduce evidence sufficient

to enable a determination as to whether the connection between these goals and the

restriction is rational under *Turner*. *Ramirez v. Pugh*, supra, at 128.

48. Defendants argument fails to the same reasons as those addressed by the

*Ramirez* court.

WHEREFORE, for the above reasons set for in Plaintiffs' Motion, Memoranda

and this Reply Brief, plaintiffs ask this honorable court to grant the Temporary

Restraining Order and/or Preliminary Injunction for Fatir to receive his books.

Dated: May 14, 2008

Respectfully submitted,

Amir Fatir

Warren Wyant

Donald Boyer (in MHU &
cannot sign)

11

# **Certificate of Service**

I, Amir Fatir, hereby certify that I have served a true and correct copy(ies) of the attached REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO FATIR'S MOTION FOR A TRO upon the following parties/persons:


To: Erica Tross

   Dept. of Justice

   820 N. French St.

   Wilmington, DE  19801

To:

To:

To:

To:

To:


BY PLACING IN A SEALED ENVELOPE, and depositing same in the United States Mail at the Delaware Correction Center, Smyrna, DE 19977.

On this 14th day of May`, 2008

Amir Fatir

SBI # 137010

# EXHIBIT A

**FORM #584**

**GRIEVANCE FORM**

FACILITY: DCC                                    DATE: 12/28/05

aka Sterling Hobbs

GRIEVANT'S NAME: Amir Fatir                       SBI#: 137010

CASE#: 224                                        TIME OF INCIDENT:

HOUSING UNIT: 22/B-7

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

The mailroom notified me by form that it
was withholding a book it considered obscene.
They failed to provide the title, author or
summoned me to the mailroom to personally
view whatever they called obscene.
I've written the mailroom twice about
this book. This type of censorship violates my
First Amendment right.

ACTION REQUESTED BY GRIEVANT: To receive the book, to be
informed of the title and author and why
it is considered obscene. To go to the mailroom
to see it and any materials not permitted
as per DOC policy or procedure.

GRIEVANT'S SIGNATURE:                             DATE: 12/28/05

WAS AN INFORMAL RESOLUTION ACCEPTED?    _____(YES)    _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____    DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

**RECEIVED**

JAN 4 2006

April '97 REV

Inmate Grievance Office

**EXHIBIT B**

EXIBIT

**FORM #584**

**GRIEVANCE FORM**

FACILITY: DCC                           DATE: 12/28/05

GRIEVANT'S NAME: Amir Fatir aka _Sterling Hobbs_          SBI#: 137016

CASE#:_____          TIME OF INCIDENT:_____

HOUSING UNIT: 22/BL7

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

I ordered the book entitled "Natural Cures
They Don't want You to Know About." The
mailroom has not sent the book to me.
I wrote the mailroom twice about it.

ACTION REQUESTED BY GRIEVANT: To have the book sent
to me.

GRIEVANT'S SIGNATURE:_____      DATE: 12/28/05

WAS AN INFORMAL RESOLUTION ACCEPTED?      _____(YES)    _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____      DATE:_____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

cc: INSTITUTION FILE
    GRIEVANT

RECEIVED

JAN 0 4 2006

April '97 REV

Inmate Grievance Office

# EXHIBIT C

**FORM  #584**

**GRIEVANCE FORM**

DE

FACILITY: DCC                    DATE: 1/4/06

GRIEVANT'S NAME: AMIR FATIR AKA Sterling Hobbs     SBI#: 137010

CASE#: 22922                    TIME OF INCIDENT: 1:15 PM

HOUSING UNIT: 22/8L7

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

I ordered the Book "Natural Cures They Don't Want You
to Know About" in Oct. 2005. The mailroom told S/Lt.
Rispoli that they discarded "The Story of O" because
they'd not heard from me. I got a notice of an
"obscene" book from the mailroom dated 12/14/05. I
immediately wrote the mailroom, Jenny Havel, then
Cpl. Carey and Tina Scott (whom I was told was
the new Support Services manager). So the mailroom's
claim of not hearing from me is false. Altogether
I wrote 5 letters & followed procedures.

ACTION REQUESTED BY GRIEVANT: I wish to be reimbursed
$29.95 value for Natural Cures or to have
the mailroom instructed to follow proper
procedures of notification when allegedly prohibited
mail arrives.

GRIEVANT'S SIGNATURE: Amir Fatir     DATE: 1/4/06

WAS AN INFORMAL RESOLUTION ACCEPTED?     _____(YES)     _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____     DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

**RECEIVED**

JAN 1 0 2006

Inmate Grievance Office

**EXHIBIT D**

EX/0B1

**FORM #584**

**GRIEVANCE FORM**

FACILITY: _DCC_                      DATE: _8/30/06_

GRIEVANT'S NAME: _AmiR FATiR_        SBI#: _137010_

CASE#: _68867_                       TIME OF INCIDENT: _Ongoing_

HOUSING UNIT: _D_

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

_DCC's arbitrary censorship of magazines, pictures_
_and books violates the First Amendment of the_
_U.S. Constitution. Since such censorship is religious_
_in nature, it violates the doctrine of Separation_
_of Church and State._

ACTION REQUESTED BY GRIEVANT: _Cease censorship of books,_
_pictures and magazines._

GRIEVANT'S SIGNATURE: _[signature]_    DATE: _8/30/06_

WAS AN INFORMAL RESOLUTION ACCEPTED? _____(YES)   _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____    DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

**RECEIVED**

SEP 05 2006

Inmate Grievance Office

# EXHIBIT E

FORM #584

## GRIEVANCE FORM

FACILITY: DCC

DATE: 5/29/07

GRIEVANT'S NAME: Amir Fatir

SBI#: 137016

CASE#: _____

TIME OF INCIDENT: _____

HOUSING UNIT: D

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

The mailroom and warden withheld a yoga
book of mine entitled SNAKT because it
contained nude illustrations. The book should
be permitted pursuant to Policy 4.5 and
DCC Inmate Mailing Rules page 7. It
deals with health and education.

ACTION REQUESTED BY GRIEVANT: Forward the book to me.

GRIEVANT'S SIGNATURE: _____    DATE: 5/29/07

WAS AN INFORMAL RESOLUTION ACCEPTED?    _____(YES)    _____(NO) **RECEIVED**

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING) **JUN 06 2007**

GRIEVANT'S SIGNATURE: _____    DATE:_____ **Inmate Grievance Office**

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

**EXHIBIT F**

Amir Fatir # 137010
DCC
1181 Paddock Road
Smyrna, DE 19977
May 29, 2007

Mr. Carl Danberg
Commissioner
Department of Correction
245 McKee Road
Dover, DE 19901

### RE: DCC Ban on Publications in contradiction to Policy 4.5

Dear Mr. Danberg:

The Delaware Correctional Center is restricting incoming publications which conform to the standards set forth in policy 4.5 and which conform to DCC's own standards which permit publications of a sexual nature which are of educational, medical or religious interest.

The prison has withheld a book sent to me about yoga that's entitled "Shakti: the feminine power of yoga." Apparently, the book contains some nude illustrations and has been banned for being "sexually explicit."

Your policy provides clarity on what can be legitimately rejected. It states that rejected material may be sado-masochistic, bestiality or involving children. Additionally, the policy states that material may be rejected if it poses a threat to the institution or is contrary to law. The examples you provide include child pornography.

Your policy explicitly states that sexually explicit material does not include "publications concerning research or opinions on sexual, health or reproductive issues." The policy even states that "Sexually explicit material may nonetheless be admitted if it has scholarly value, or general social or literary value."

"Shakti" deals with health issues, sexual energy issues (called libido in Freudian psychology) and its impact upon the psyche and health. It is far from being a pornographic book.

The Warden or Warden's designee's rejection of all publications which show any nudity whatsoever is overly broad and an abuse of discretion. Moreover, no consideration has been given to the exceptions in policy 4.5 or in DCC's own Inmate Housing Rules, page ΙΧ 7.

Commissioner Carl Danberg
May 29, 2007
Page 2

The rejections are in conflict with the Third Circuit's decisions in *Wolf v. Ashcroft*, 297 F.3d 305 (3d Cir. 2002) and *Ramirez v. Pugh*, 379 F. 3d 122 (3d Cir. 2004).

This institution's obsession with avoiding nudity has caused it to go so far as to prevent prisoners from seeing the movies <u>Borat</u> and <u>The Last King of Scotland</u>, two movies which have won Academy Awards.

Although your policy grants discretion to the Wardens of the various institutions, in rejecting materials in such a broad and overreaching manner, discretion has been abused. DCC has gone way too far in censorship and I respectfully request that you intervene.

Sincerely,

Amir Fatir

cc: Julia Graff, ACLU Delaware

**EXHIBIT G**

# amazon.com

## Final Details for Order #058-3150546-4860323

Print this page for your records.

**Order Placed:** October 31, 2005
**Amazon.com order number:** 058-3150546-4860323
**Order Total:** $17.69

### Shipped on October 31, 2005

| Items Ordered | Price |
|---|---|
| 1 : *Natural Cures "They" Don't Want You To Know About [Hardcover] by Trudeau, Kevin*, Kevin Trudeau | $14.20 |

**Shipping Address:**
Amir Fatir #137010
MHU, Building 22 BL7
Delaware Correctional Center, 1181 Paddock Road
Smyrna, Delaware 19977
United States

**Shipping Speed:**
Standard Shipping

Item(s) Subtotal: $14.20
Shipping & Handling:  $3.49
-----
Total Before Tax: $17.69
-----
**Total for this Shipment: $17.69**

### Payment Information

**Payment Method:**
Visa | Last 5 digits: 70917

**Billing Address:**
Helen Fatir
6 The Greenway
Colletts Green
Powick, Worcester WR2 4RZ
United Kingdom

Item(s) Subtotal: $14.20
Shipping & Handling:  $3.49
-----
Total Before Tax: $17.69
Estimated Tax:  $0.00
-----
**Grand Total: $17.69**
See tax and seller information

To view the status of your order, return to Order Summary.

**Please note:** This is not a VAT invoice.

Conditions of Use | Privacy Notice © 1996-2006, Amazon.com, Inc. or its affiliates

**EXHIBIT H**



$Exh13\ T\ 17$

## Final Details for Order #002-0225085-1463230
Print this page for your records.

**Order Placed:** December 6, 2005
**Amazon.com order number:** 002-0225085-1463230
**Order Total: $20.46**

### Shipped on December 6, 2005

| Items Ordered | Price |
|---|---|
| 1 : *The Multi-Orgasmic Woman : Discover Your Full Desire, Pleasure, and Vitality*, Mantak Chia, Rachel Carlton Abrams | $16.47 |

**Shipping Address:**
Amir Fatir #137010
MHU, Building 22 BL7
Delaware Correctional Center, 1181 Paddock Road
Smyrna, Delaware 19977
United States

**Shipping Speed:**
Standard Shipping

Item(s) Subtotal: $16.47
Shipping & Handling:  $3.99
-----
Total Before Tax: $20.46
-----
**Total for this Shipment:$20.46**

### Payment Information

**Payment Method:**
Visa | Last 5 digits: 70917

**Billing Address:**
Helen Fatir
6 The Greenway
Colletts Green
Powick, Worcester WR2 4RZ
United Kingdom

Item(s) Subtotal: $16.47
Shipping & Handling:  $3.99
-----
Total Before Tax: $20.46
Estimated Tax:  $0.00
-----
**Grand Total:$20.46**

To view the status of your order, return to Order Summary.

**Please note:** This is not a VAT invoice.

Conditions of Use | Privacy Notice © 1996-2006, Amazon.com, Inc. or its affiliates

**EXHIBIT I**

**amazon**.com

### Final Details for Order #058-6981674-3443736

Print this page for your records.

**Order Placed:** January 22, 2005
**Amazon.com order number:** 058-6981674-3443736
**Order Total:** $6.39

## Shipped on January 22, 2005

**Items Ordered**                                                                                     **Price**
1 : *The Catcher in the Rye [Paperback] by Salinger, J.D.*, J.D. Salinger              $2.90

**Shipping Address:**
Amir Fatir #137010                                              Item(s) Subtotal: $2.90
SHU, Building 19, BU10                                     Shipping & Handling: $3.49
Delaware Correctional Center, 1181 Paddock Road                        -----
Smyrna, Delaware 19977                                      Total Before Tax: $6.39
United States                                                                           -----

**Shipping Speed:**                                         **Total for this Shipment: $6.39**
Standard Shipping

## Payment Information

**Payment Method:**                                              Item(s) Subtotal: $2.90
Visa | Last 5 digits: 70917                                Shipping & Handling: $3.49
                                                                                               -----
**Billing Address:**                                            Total Before Tax: $6.39
Helen Fatir                                                           Estimated Tax: $0.00
6 The Greenway                                                                       -----
Colletts Green                                                      **Grand Total: $6.39**
Powick, Worcester WR2 4RZ                             See tax and seller information
United Kingdom

To view the status of your order, return to Order Summary.

**Please note:** This is not a VAT invoice.

Conditions of Use | Privacy Notice © 1996-2006, Amazon.com, Inc. or its affiliates