## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DONALD BOYER, AMIR FATIR, and )
WARREN WYANT, )
)
        Plaintiff, )
)    C.A. No. 06-694-GMS
    v. )
)    Jury Trial Requested
COMMISSIONER STANELY TAYLOR, et al., )
)
        Defendants. )

### MOTION FOR PROTECTIVE ORDER

COMES NOW, State Defendants Thomas Carroll, Ronald Hosterman, David Pierce, Jeanette Havel, Janice Henry, Michael Little, Floyd Dixon, Marvin Creasy, James Satterfield, Maureen Whelan, Ralph Bailey, and David Hall (the "State Defendants"), by and through their undersigned counsel, and hereby move this Honorable Court (the "Motion") to enter a Protective Order. In support of the Motion, State Defendants state as follows:

1. Plaintiffs Donald Boyer, Amir Fatir, and Warren Wyant (the "Plaintiffs") are all inmates presently incarcerated at the Delaware Correctional Center ("DCC") in Smyrna, Delaware. Plaintiffs are appearing *pro se* in this matter with leave to proceed *in forma pauperis*.

2. On November 15, 2006, Plaintiffs, along with nine (9) other individuals who have since been dismissed from the case, filed a Complaint against 25 Defendants alleging various claims. (D.I. 10).

3. Less than two months later, on January 5, 2007, Plaintiff Boyer filed the First Amended Complaint against all of the defendants adding new claims and

allegations. (D.I. 18). On July 16, 2007, the Court issued a Memorandum Order and Opinion reviewing and screening the Complaints pursuant to 28 *U.S.C.* §§ 1915 and 1915A. (D.I. 39).

4. On July 30, 2007, Plaintiffs filed a Second Amended Complaint further refining their allegations and claims against the defendants. (D.I. 43). The Court entered an order reviewing and screening the Second Amended Complaint on January 14, 2007. (D.I. 65). Following the latter review, 20 counts of Plaintiffs Complaints remained against the State Defendants. On March 20, 2008, the State Defendants filed an Answer to the remaining claims. (D.I. 104).

5. Approximately two months later, on May 27, 2008, counsel for the State Defendants received from Plaintiff Fatir a document entitled "Plaintiffs' Request for Production of Documents", containing 150 separate document requests (the "Request for Production"). Plaintiff Fatir did not file the Request for Production with this Court, however, a copy of the Request is attached hereto as Exhibit A.

6. State Defendants assert that the Court should grant a protective order in accordance with Rule 26(c) of the Federal Rules of Civil Procedure (the "Federal Rules") for four reasons: (i) the number of documents requests is oppressive and burdensome; (ii) many of the requests seek documents protected from disclosure by statutory law; (iii) the majority of the requests are irrelevant to the issues in this case; and (iv) some of the requested information is time barred by the statute of limitations.

## I.    The Document Requests Are Oppressive And Burdensome In Violation Of The Federal Rules.

7. Federal Rule 26(b)(2)(C) states that, "The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall

be limited by the court if it determines that:  (iii) the burden or expense of the proposed discovery outweighs its likely benefit, …." FED. R. CIV. P 26(b)(2)(C)(iii).

8.    Plaintiffs have issued 150 requests upon the State Defendants.  In the requests Plaintiffs seek such documents as tests and inspections on water, air, soil, showers and noise levels for the past 8 years (Requests 2-3); a list of all inmates who returned to Delaware from out of state (Request 11); logbooks showing books and publications that were received and/or rejected over the past 8 years (Request 15); documents and other matters related to money, goods and services received from the federal government (Request 25); a list of all work assignments in DCC for the past 8 years (Request 26); the name and race of all job supervisors for the past 8 years (Request 27); all documents related to vehicles, guards, picnics, entertainment, pensions, uniforms, equipment, etc. for the past 37 years (Request 28); any expenditures from the inmate commissary account for the past 37 years (Request 29); all ledgers, bank statements, and account transfers pertaining to the inmate commissary account for the past 37 years (Request 30); all commissary account monthly and quarterly statements for the past 37 years (Request 34); all inmates from all five institutions who received or requested furloughs and special visits for the past 13 years (Requests 48-49); and documents regarding interest accrued for the past 37 years (Request 50).

9.    The aforementioned documents are just a sampling of the Plaintiffs' many oppressive, broad and unduly burdensome requests.  Such a large number of requests, seeking documents covering many years, are oppressive and burdensome to produce. Moreover, the expense of responding to the requests and producing the documents outweigh any likely benefits to the Plaintiffs' case.

10.    The Request for Production violates the Federal Rules in that the 150 requests seeking many documents covering many years are burdensome and expensive. The Plaintiffs cannot show that the benefit to producing these documents outweighs the burden and expense of production.  Therefore the Motion for Protective Order should be granted.

## II.    The Requests For Production Seek Documents Protected From Disclosure By Law.

11.    Federal Rule 26(b)(1) states that parties may obtain discovery on matters that are not privileged.  Title 11, section 4322(d) of the Delaware Code states, "The Department of Correction Policies and Procedures, including any Policy, Procedure, Post Order, Facility Operational Procedure or Administrative Regulation adopted by a Bureau, facility or department of the Department of Correction shall be confidential, and not subject to disclosure …."  11 *Del. C.* § 4322(d).  Subsection (c) of § 4322 further states, "No inmate shall be provided a copy of the Department of Correction Policy and Procedures Manuals, The Bureau of Prisons Policy and Procedures Manuals, nor any of the Department of Correction Facilities Operational Procedures, Administrative Regulations and Post Orders."  11 *Del. C.* § 4322(c).

12.    Approximately 50 of Fatir's 150 requests seek policies, procedures, manuals, regulations, and/or training documents from the Department of Correction, the Bureau of Prisons and/or the DCC (Requests 4, 5, 7, 9, 10, 12, 14, 18, 20, 21, 22, 23, 24, 31, 35, 36, 37, 39, 40, 41, 42, 43, 44, 45, 46, 47, 51, 52, 54, 55, 58, 62, 74, 75, 77, 81, 86, 92, 96, 110, 111, 112, 113, 122, 123, 124, 129, 132, 145, and 148).  According to Delaware law these documents are confidential and protected from disclosure.

13.     Moreover, as incarcerated individuals, the Plaintiffs are specifically excluded, by Delaware law, from receiving access to the requested policies, procedures, manuals, regulations and training documents.   Therefore the State Defendants are protected from producing the requested documents and the Motion for Protective Order should be granted.

## III.    Many Of The Requested Documents Have No Relevance To The Issues In This Lawsuit.

14.     Federal Rule 26(b)(1) states, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, …."   This Court has held that a party should ordinarily be allowed to obtain discovery under the concept of relevancy.   *In re ML-Lee Acquisition Fund II, L.P.*, 151 F.R.D. 37, 39 (D. Del. 1993).   However, "'if it is clear that the information sought can have no possible bearing upon the subject matter of the action'" discovery should not be permitted.   *Id.* (quoting *La Chemise Lacoste v. Alligator Company, Inc.*, 60 F.R.D. 164, 171 (D. Del. 1973)). "'The party seeking discovery has the burden of demonstrating its merits.'"   *Id.* (quoting *McLaughlin v. Copeland*, 455 F.Supp. 749, 753 (D. Del. 1978)).

15.     Plaintiffs request documents regarding noise levels (Request 6), names of inmates who returned to Delaware from out of state (Request 11), the original grievance policy from the 1980s (Request 23), name and race of job supervisors (Request 27), policies on special visits (Request 25), a diagram of the visiting room (Request 37), quotas for writing inmates up (Request 40), names and races of inmates who have received special visits and furloughs (Request 48), studies on problems caused by inmates owning a computer (Request 53), documentation regarding Vo-tech activities (Request 55), documents regarding bonuses or kickbacks received from companies which

sell box handcuffs (Request 68), census data (Request 69) and photographs of the mailroom equipment (Request 126).  All of these requests, along with Requests 4, 5, 7, 8, 9, 14, 15, 17, 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 38, 39, 41, 43, 45, 46, 47, 49, 50, 51, 52, 54, 56, 57, 60, 61, 62, 63, 64, 65, 66, 67, 70, 71, 72, 73, 74, 76, 77, 81, , 84, 87, 89, 90, 91, 93, 94, 95, 101, 105, 106, 107, 108, 110, 111, 112, 113, 116, 117, 119, 123, 125, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 147, 148, 149 and 150 have no relevance to the present action.  Therefore these documents are not discoverable under the Federal Rules and this Court should grant the Motion for Protective Order.

## IV.   The Requested Documents Are Time Barred Under The Applicable Statute Of Limitations.

16.   Plaintiffs have filed this lawsuit under 42 *U.S.C.* § 1983.  Section 1983 claims are characterized as personal injury actions for statute of limitations purposes.  *Wilson v. Garcia*, 471 U.S. 261, 275 (1985).  Therefore, courts apply the state statute of limitations for personal injury claims to determine the statute of limitations period.  *Id.*  It is well-established in Delaware that Section 1983 claims are subject to the two-year limitations period defined in 10 *Del. C.* § 8119.  *See McDowell v. Delaware State Police*, 88 F.3d 188, 290 (3d Cir. 1996).  *See also Gibbs v. Deckers*, 234 F. Supp. 2d 458, 461 (D. Del. 2002).  State Defendants assert that documents outside of the relevant two-year period are time barred from production by the statute of limitations.

17.   Plaintiffs' claims all stem from events that occurred around the time of filing – November 15, 2006.  Therefore Plaintiffs' document requests seeking documents dating back to 1971 (Requests 28, 29, 30, 32, 33, 34, 50, 51, 143, and 144), 1995 (Requests 48 and 49) and 2000 (Requests 1, 2, 3, 4, 6, 8, 1, 15, 19, 26, 27, 38, 56, 57, 69,

76, 79, 80, 82, 84, 128, 134, 135, 136, and 137) are time barred and have no relevance to the allegations in Plaintiffs' Complaints and the Motion for Protective Order should be granted.

18.     In light of the abusive, oppressive and burdensome nature of the Plaintiffs' Request for Production, State Defendants request that the Court award attorney's fees relating to the preparation and filing of this Motion for Protective Order.

WHEREFORE, State Defendants respectfully request that the Court grant the Motion, enter a Protective Order in this matter and award the State Defendants attorney's fees.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400
Attorney for State Defendants

Dated: June 11, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DONALD BOYER, AMIR FATIR, and )
WARREN WYANT, )
         )
         Plaintiff, )
         )    C.A. No. 06-694-GMS
         v. )
         )
COMMISSIONER STANELY TAYLOR, et al., )
         )
         Defendants. )

## CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 7.1.1

The undersigned counsel hereby certifies, pursuant to Rule 7.1.1 of the Local Rules for the District of Delaware, that:

1.      The Plaintiffs are inmates incarcerated at the Delaware Correctional Center in Smyrna, Delaware.

2.      The Plaintiffs are not able to be reached by telephone; therefore counsel has spent no time in attempting to reach an agreement on the subject of the Motion for Protective Order.

3.      The undersigned counsel assumes that the Motion is opposed.

                                        **STATE OF DELAWARE
                                        DEPARTMENT OF JUSTICE**

                                        */s/ Erika Y. Tross*
                                        Erika Y. Tross (#4506)
                                        Deputy Attorney General
                                        820 North French Street, 6th Floor
                                        Wilmington, Delaware 19801
                                        (302)577-8400
                                        Attorney for State Defendants

Dated: June 11, 2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD BOYER, AMIR FATIR, and ) | |
| WARREN WYANT, ) | |
| ) | |
|        Plaintiff, ) | C.A. No. 06-694-GMS |
| ) | |
|     v. ) | |
| ) | |
| COMMISSIONER STANELY TAYLOR, et al., ) | |
| ) | |
|        Defendants. ) | |

### **ORDER**

Upon the Motion for Protective Order (the "Motion"); and it appearing that good and sufficient notice of the Motion has been given; and after due deliberation thereon:

**IT IS HEREBY ORDERED** as follows:

1. The Motion is **GRANTED**.

2. State Defendants are awarded attorney's fees for the preparation and filing of the Motion.

SO ORDERED this _____ day of _____, 2008.

_____

The Honorable Gregory M. Sleet
United States District Court Judge

## <u>CERTIFICATE OF SERVICE</u>

I, Erika Y. Tross, Esq., hereby certify that on June 11, 2008, I caused a true and correct copy of the attached ***Motion for Protective Order*** to be served on the following individuals in the form and manner indicated:

### **NAME AND ADDRESS OF RECIPIENT(S):**

**<u>Via First Class Mail</u>**

Donald Boyer
SBI # 082420
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Warren Wyant
SBI # 00176129
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Amir Fatir
SBI # 137010
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

**<u>Via Electronic Delivery</u>**

James E. Drnec, Esq.
Balick & Balick, LLC
711 King Street
Wilmington, DE 19801

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
Delaware Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Boyer, et al., | ) |
| | ) |
|         Plaintiffs, | ) |
| | ) |
|     v. | )       C.A. No. 06-694-GMS |
| | ) |
| Taylor, et al., | ) |
| | ) |
|         Defendants. | ) |

## PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34, Fed.R.Civ.P., plaintiffs requests that he defendants produce the documents listed herein within 30 days, either by providing the plaintiffs with copies or by making them available to the plaintiffs for inspection and copying.

1. All logbooks for D-building showing inspections and repairs from 2000-2008.

2. Results of all tests and inspections of water, air, soil, and showers at DCC from 2000-2008.

3. Dates of all inspections of water, air, soil, and showers at DCC from 2000-2008.

4. Policies regarding dissemination and use of bleach, disinfectants and cleaning supplies in DCC housing units during 2000-2008.

5. Policies and procedures regarding training of janitors, tiermen and environmental crew workers and the manner in which such workers are to conduct cleaning.

6. Results of tests of noise levels in the housing units during 2000-2008.

7. Policy on extermination of vermin and pests in DCC housing units.

8.  Schedule of extermination of vermin and pests in DCC housing units during
    2000-2008.

9.  Policy on the housing of people with infectious diseases.

10. Policies on the establishment, purpose, expenditures, use and maintenance of
    the inmate commissary account.

11. List of all inmates who returned to Delaware from out-of-state.  Indicate
    which were immediately placed in SHU and which were not.  Indicate race of
    all inmates who returned to Delaware from out-of-state.  These documents
    should cover the period during 2000-2008.

12. Department of Correction policy, Bureau of Prison policy and Delaware
    Correctional Center policy regarding books, magazines, and publications
    allowed and not allowed.

13. All forms which pertain to books, magazines and publications not allowed.

14. Training manual and all other documents regarding the training of
    classification officers and counselors in the use of the classification point
    system.

15. Mailroom logbooks showing books, publications and magazines received
    and/or rejected during 2000-2008.  Include relevant forms for publications
    received, discarded, and notification forms to and from inmates regarding
    rejected books.

16. All letters and publication/book appeals sent to mailroom, Warden, Warden's
    Designee and/or Support Services Office by Amir Fatir.

17. Job requirements for mailroom personnel.

18. Policy on censorship of publications indicating, inter alia, who can censor and upon what criteria censorship (i.e., rejection of publications) is based.

19. Provide list of names of books and inmates who appealed a rejection of books, magazines or publications and won their appeal during 2000-2008.

20. Copy of training manual and other documents which train personnel in proper censorship and rejection of publications.

21. Memo, policy or document which authorized the ceasing of providing second, third, fourth class mail, book rate, parcel post and overseas mail rates.

22. Documents or manuals which train mailroom personnel in the use of various rates of mail.

23. Copy of original grievance policy and procedure enacted in the early 1980s.

24. Training manual for mailroom personnel.

25. All documents, money transfers, checks, contracts, agreements and other materials related to money, gods and services received from the federal government to build, staff, house and maintain SHU and MHU units.

26. List of all work assignments in DCC from 2000-2008 including the name and race of each inmate holding each job.

27. Name and race of all job supervisors (staff employees who supervise inmate workers and crews) during 2000-2008.

28. All documents – including but not limited to – invoices, purchase orders, contracts, agreements, and memos related to spending inmate commissary account funds on:  vehicles, guards, picnics, entertainment, parties, officers' wages (including overtime), pension, guards' uniforms, inmate clothing or

3

uniforms, furniture, equipment such as computers, tools, fences, building erection or construction and/or maintenance from 1971 to 2008.

29. Any expenditures from the inmate commissary account other than for the usual materials which are available for inmates to purchase at the commissary such as snacks, cosmetics, or vitamins 1971-2008.

30. All ledgers, bank statements, account transfers, pertaining to the inmate commissary account from 1971 to 2008.

31. Policy regarding the audit of the inmate commissary account and commissary activities.

32. Copies of all previous audits conducted of the inmate commissary account and commissary activities from 1971-2008.

33. All expenditures of inmate commissary account to the gym/recreation department from 1971-2008.

34. All commissary account monthly or quarterly statements from 1971-2008.

35. Policy on special visits for visits from out-of-state or more than a 100 mile radius away from the prison.

36. Policy governing the visiting room and visiting procedures.

37. Diagram of visiting room.

38. Copies of all 24 hour lock up and/or Loss of Privileges written by Defendant Rosalie Vargas during 2000-2008.

39. Policy, procedure, memo and emails on crediting points to officers for writing up inmates.

40. Policy on quotas for writing inmates up.

4

41. Policy that allows withholding jobs from inmates who have gotten write-ups.

42. Policy regarding the number of books an inmate is permitted to receive by mail.

43. Policy regarding the number of books an inmate is permitted to have in his cell.

44. Policy regarding what is to be done with books sent in excess of the allowable number of books.

45. SOP's for maximum, medium and minimum security.

46. Administrative regulations for maximum, medium and minimum security.

47. Policy regarding furloughs, special visits, work release and education release.

48. List by name and race all inmates who have received furloughs, specials visits, and/or education release from all level 5 institutions from 1995-2008.

49. List by name and race all inmates who have requested (by MDT, ICC, IRCB or written or verbal request – including requests made on their behalf by others) furloughs, specials visits and/or education release from all level 5 institutions from 1995-2008.

50. Documents pertaining to all interest accrued from inmate commissary account and individual inmate accounts from 1971-2008.

51. Policy, bank statements and internal vouchers regarding which accounts receive the interest accrued from inmate commissary account and individual inmate accounts from 1971-2008.

52. Policy regarding use and ownership of personal computers, typewriters and/or word processors by inmates.

53. Studies, IR's (Incident Reports/404's) on any problems caused by inmates owning or using personal computers, typewriters and/or word processors.

54. Policy regarding the establishment and conduct of Vo-tech classes and programs.

55. Documentation that explains the nature and scope of all current Vo-tech activities.

56. All documents which indicate the source and amount of funds received, designated, held and/or spent relating to Vo-tech education during 2000-2008.

57. Provide names and race of all inmates employed at Concrete Design Systems, Commissary, Maintenance, Paint Crew, Plumbing Crew, Electrical Crew and Motor Pool during 2000-2008 at DCC.

58. Policy regarding use of box handcuffs.

59. Studies used by DOC on the safety and danger of box handcuffs.

60. All reports, forms and documents pertaining to injuries and illness caused and suspected to be caused by box handcuffs.

61. Contract with vendor(s) providing box handcuffs.

62. Policy on the bidding process in purchasing materials.

63. Copies of all complaints and/or grievances filed regarding box handcuffs throughout the state DOC.

64. Copies of all Incident Reports (404's) filed regarding box handcuffs.

65. All studies, tests, results on safety of box handcuffs.

66. All studies, tests, results regarding danger and health damage caused by box handcuffs.

67. All documents regarding contracts with vendors to purchase box handcuffs.

68. All documents regarding any bonuses, kickbacks or donations received from companies which sell or advertise or otherwise promote the use of box handcuffs.

69. Provide all census data showing percentage of Blacks, Whites and Latinos in DCC during 2000-2008.

70. Provide all inspection reports regarding mold in DCC housing units.

71. Provide documentation indicating actions taken to remove mold from housing units at DCC.

72. All documentation regarding education and other requirements for the following positions:  Commissioner, Bureau Chief, Warden, Deputy Warden, Security Chief, Treatment Administrator, Captain, Lieutenant, Counselor, Education Principal, Legal Services Administrator, and Support Services Manager.

73. All documentation which provides exceptions to the education requirements for the following positions:  Commissioner, Bureau Chief, Warden, Deputy Warden, Security Chief, Treatment Administrator, Captain, Lieutenant, Counselor, Education Principal, Legal Services Administrator, and Support Services Manager.

74. Policy on issuance of 24 hour loss of privileges.

75. Policy regarding the diagnosis and treatment of sleep apnea.

76. Provide number of all inmates treated for sleep apnea during 2000-2008.

7

77. Provide policy that states where inmates using machine for sleep apnea must be housed.

78. All IR's (404's) regarding mold and/or fungus.

79. All logbooks showing inspections during 2000-2008.

80. Documents which show actions taken to remove mold and/or fungus during 2000-2008.

81. Training manuals that teach inmate janitors how to remove mold and/or fungus.

82. All of Inspector Pawlowski's reports from building inspections during 2000-2008.

83. Emails, memos and complaints or reports by staff members regarding building mold and/or fungus.

84. All reports and documents from and/or to DENREC pertaining to all tests and inspections of water, air, soil, and showers at DCC from 2000-2008.

85. All memos and/or written communiqués re: mold/fungus at DCC.

86. Policy/procedure on mold/fungus inspection and removal.

87. Indicate the people responsible to act once mold has been identified.

88. Results of all tests and inspections of showers in D-building.

89. Reports to Warden, Deputy Warden, Commissioner and Bureau Chiefs re: mold/fungus.

90. All documents regarding mold/fungus in D-building initialed or signed by Defendants Dixon, Creasy, Henry, Taylor, Pierce, Satterfield or Howard (or any other defendant in this case).

91. Provide documentation (invoices, vouchers, purchase orders) for any cleaning supplies paid for by or via the inmate commissary account.

92. Policy, SOP, Administrative Regulations regarding officers' duties regarding mold/fungus in showers.

93. Provide a photograph of the mold in D-building showers and bathrooms.

94. All communiqués with DENREC or the Environmental Protection Agency (EPA) regarding mold/fungus and soil at DCC.

95. Provide documentation and names of any agencies or companies involved in testing and notification of mold/fungus, soil and water at DCC.

96. Provide policy, SOP's, regulations regarding actions taken to protect inmates (including workers) from mold/fungus.

97. All documents regarding air quality tests.

98. All documents regarding air quality standards.

99. All documents regarding building codes on ventilation.

100. Documents re: repairs to vents and coils in D-building.

101. All write-ups and convictions of inmates in D-building for allegedly clogging up outtake or intake vents.

102. Work orders, reports in cleaning clogged vents in D-building.

103. Emails, memos, reports, minutes re: ventilation system, coils, vents.

104. Logbooks on cleaning vents, ventilation and air quality.

105. All documents pertaining to federal grants, loans, subsidies, etc. for building upkeep, maintenance, air quality, and construction.

106. All DNREC documents related to air/ventilation.

107.    All EPA documents related to air/ventilation.

108.    All commissary account documents re: building maintenance, repair, construction, payment of staff and supplies.

109.    All documents pertaining to replacement of mattresses.

110.    All documents, policy, SOP's regarding what is to be done with a used mattress when a different inmate moves into a cell.

111.    Documents that show how often mattresses are replaced.

112.    Documents re: supervision of tiermen and Environmental Crew ("E-Crew") workers.

113.    Training of tiermen and E-Crew workers.

114.    Work orders and completed work forms for toilets and sinks in D-building.

115.    Documentation on soil, radon and other gases tested and found at DCC.

116.    Documentation on prior landfill and swamp upon which DCC sits.

117.    DNREC and EPA reports on soil and gases therein in DCC.

118.    Documentation on water and contaminants tested and found at DCC.

119.    DNREC and EPA reports on water and contaminants in DCC.

120.    Documents re: actions taken to improve water quality at DCC.

121.    Any memos advising officers, visitors or others to avoid drinking water at DCC.

122.    Policy on rooming healthy inmates with inmates who have infectious, communicable diseases.

123.    Policy on cleaning forks, sporks, spoons, glasses and dishes used by DOC inmates via the kitchens.

124.    Policy that defines "obscene" and "pornographic" for decision on rejecting publications.

125.    Provide a copy of the form which indicates whether and when an inmate was notified of a rejected publication.

126.    A photograph and description of all mailroom equipment paid for from the inmate commissary account.

127.    Copy of all studies, reports, tests and names of experts used to determine that nude pictures in books or magazines were detrimental to inmates and the prison's alleged effort to rehabilitate them.

128.    Copy of DOC and/or DCC's telephone contract with Verizon and other vendors during 2000-2008.

129.    Policy on phone calls made via counselor and chaplain.

130.    Provide written description of the job coordinators responsibilities.

131.    Provide name of supervisor of the job coordinators.

132.    Provide training manual for job coordinators.

133.    Provide all documents pertaining to cultural sensitivity and racial equality training provided to job coordinators.

134.    Provide racial breakdown on inmate kitchen jobs during 2000-2008.

135.    Provide racial breakdown on janitorial (tiermen, E-crew) jobs during 2000-2008.

136.    Provide racial breakdown on clerical jobs during 2000-2008.

137.    Provide racial breakdown on all teaching, maintenance, computer, electrical, plumbing and law library jobs during 2000-2008

138.    Provide documents of certification as paralegals for inmate paralegals in DCC.

139.    Provide documents of certification as paralegals for staff paralegals and law library supervisors (including Michael Little) in DCC.

140.    Provide the job pay scale for inmates for skilled, unskilled, etc.

141.    Documentation on establishment of Inmate Commissary Account Trust fund.

142.    Provide relevant statutes under which the commissary trust fund account operates.

143.    Provide gross income of inmate commissary account since 1971.

144.    Provide net of inmate commissary account since 1971.

145.    Provide regulations on supervision of inmate commissary account.

146.    All documents showing expenditures of commissary account signed by Jenny Havel for materials other than restocking of the commissary.

147.    Provide all documents that pertain to the auditing of the inmate commissary account.

148.    Provide policy pertaining to markup of the commissary items as well as the relevant statute and trust.

149.    Provide names of banks and/or other financial institutions which hold the inmate commissary account.

150.    Current address for the following defendants:  Rosalie Vargas, Cpl. Oney,

Stanley Taylor, Paul Howard, and First Correctional Medical, LLC.

Date:  05/21/08

Amir Fatir # 137010