IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Boyer, et al., | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-694-GMS |
| | ) | |
| Taylor, et al., | ) | |
| | ) | |
|     Defendants. | ) | |

**BRIEF IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs submit the following in support of their motion for partial summary judgment.

1. Certain strains of mold have been recognized to be toxic, including stachybotrys which has been blamed with causing a variety of personal injuries.

2. Molds are microscopic and only become visible when individual structures or spores accumulate. They are measured and reported as 'colony forming units" (CFU). Mold requires moisture, food, proper temperature and ventilation to thrive. Mold spores are very tiny and lightweight, allowing them to travel through the air.

3. Mold combines with water in the residence or building from rain water infiltration, condensation on cold surfaces, or plumbing-related problems.

4. Commonly used construction materials and furnishings provide nutrients that support mold growth. If not properly and promptly remediated, mold can spread quickly causing extensive property damage and, in some cases, requiring the complete demolition of the building.

FILED
JUN 27 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

5. There is disagreement in the medical community as to the amount of exposure likely to cause injury.[1]

6. Plaintiffs were housed in D-Building for years, in some cases, and cumulatively for more than a decade.

7. Defendants were aware of the mold problem and made no effort to properly remove the mold.

8. Defendants' claim that inmates are cleaning the mold is disingenuous and omits the fact that inmate workers are provided no mold removing chemicals, have no training in removing mold, only make $9.60 a month, are totally unsupervised in their work and generally avoid the mold like the plague. They have no HAZMAT suits and are themselves unprotected and are not even provided as much as simple bleach to work on the showers.

9. The court in Amica Mut. Ins. Co. v. Henderson, 2003 WL 21196261 (N.D. Ill. 2003), denied a motion to dismiss finding that the homeowners pled allegations which could support claims for negligence for failure to tell the homeowners that the mold in the home could be toxic, failure to tell the homeowners that contact with the mold could be hazardous, and failure to tell the homeowners that the remediation work did not isolate and contain the mold contamination. The environmental testing firm inspected the house and found mold and water intrusion. The inspector subsequently collected air and surface samples for a microbial study. The inspector did not take any steps to isolate or contain the mold, which spread, and did not inform the homeowners of the toxic nature of the mold. The homeowners' insurer hired the inspector and the company performing the remediation to inspect, repair, and remediate the water damage and mold contamination,

---

[1] See Watters v. Department of Social Services, 849 So. 2d 724 (La. Ct. App. 4th Cir. 2003).

and the court found that the inspection company had a duty to the homeowner in light of their expertise in the field. Therefore the court declined to dismiss the negligence claim.

10. The court in New Haverford Partnership v. Stroot, 772 a.2d 792 (Del. 2001), reargument denied, (May 24, 2001), in which the tenants sued their landlord for negligence, seeking recovery for health problems allegedly caused by mold in their apartments, held that Delaware's Landlord Tenant Code imposes a duty on landlords to maintain the leased premised in a safe, sanitary condition and that an injured tenant may recover for personal injuries sustained as a result of the landlord's negligent failure to do so. The landlord argued that it had no duty that would support a claim for common law negligence because prior to enactment in 1972 of the Landlord Tenant code, landlords had no duty to maintain their buildings in a safe and sanitary condition. The landlord further argued that the Code abolished all tort liability unless the plaintiff could establish negligence per se. to state a claim for common law, or ordinary, negligence, one must allege that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty of care; and (3) the defendant's breach was the proximate cause of the plaintiff's injury, stated the court, which noted that the duty owed may be one recognized at common law or one imposed by statute. The court further found that the Landlord Tenant Code does not preclude claims for ordinary negligence against a landlord. Having found no error in the trial court's decision to allow the tenants to pursue an ordinary, or common law, negligence claim, the court declined to address the Landlord's arguments with respect to the negligence per se claim.

11. Plaintiffs are entitled to a presumption that the mold to which they were subjected is toxic and that visible injuries may not appear for years in the future.

12. Any burden of proof falls upon defendants to prove that the mold in D-Building is not toxic.

13. The United States District Court for the Western District of Pennsylvania dealt with a similar prison case involving unsanitary showers.

> "The showers are poorly maintained, as evidenced by broken and plugged shower heads and faucets. Although many are inoperable, others run continuously. When we toured the institution, several showers, not currently in use, were running at full blast. Like the cells, lighting is also insufficient in the showers because the electrical system has degenerated and become nonfunctional.
>
> "Body greases, bacterial slime and fungus stain the shower tiles, thus facilitating health and sanitation problems. The showers are encrusted with dirt, and slime has accumulated in the chronically wet areas. Passing the showers on our tour, we noticed a heavy septic smell emanating from the area and wondered how any inmate could tolerate the physical conditions of the shower long enough to wash himself." *Tillery v. Owens*, 719 F. Supp. 1256 at 1266-1267.

14. Although S/Lt. Pawlowski claims to "inspect" conditions at DCC and D-Building, the fact that no remedial actions have occurred causes one to conclude that his "inspections" are pretty much for show and amount to a waste of money and time, particularly when it comes to maintaining livable conditions for the prisoners.

For the above reasons, plaintiffs ask this honorable court to grant their motion for partial summary judgment.

Dated: June 23, 2008

                                                  Respectfully submitted,,

                                                  _____
                                                  Amir Fatir

                                                  _____
                                                  Warren Wyant

                                                  _____
                                                  Donald Boyer (in MHU &
                                                  Unable to sign)

## Certificate of Service

I, Amir Fatir, hereby certify that I have served a true and correct copy(ies) of the attached Motion for Partial Summary Judgement & Brief in Support of Partial Summary Judgment upon the following parties/persons:

To: Erika Y. Tross, Esq.

    Dept. of Justice

    820 N. French St.

    Wilm., DE  19801

To:

To:

To:

To:

To:

BY PLACING IN A SEALED ENVELOPE, and depositing same in the United States Mail at the Delaware Correction Center, Smyrna, DE 19977.

On this 23rd day of June, 2008

---------------------------------
Amir Fatir
SBI # 137010