IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Boyer, et al., )
)
      Plaintiffs, )
)
v. ) C.A. No. 06-694-GMS
)
Taylor, et al., )
)
      Defendants. )

FILED
JUL 25 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**PLAINTIFFS REPLY TO STATE DEFENDANTS'
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND/OR
A PRELIMINARY INJUNCTION
TO PROHIBIT RESTRICTION TO TWO BOOKS [RE: D.I. 136]**

COME NOW the plaintiffs, pro se, in reply to State Defendants' response in opposition to plaintiffs' motion for a Temporary Restraining Order and/or a Preliminary Injunction to Prohibit Restriction to Two Books.

1. Defendants claim that Plaintiff Fatir's claims are moot now that he has received his book.

2. The burden is upon defendants to prove that the issue is really moot, a burden they cannot meet since they cannot show that there is no reasonable expectation that the violations will happen again.

3. A violation of plaintiffs' rights is not moot just because it is over if it is "capable of repetition, but evading review." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).

4. Defendants claim that "A misunderstanding occurred [regarding plaintiff's right to receive the book *Understanding the Black Woman]* in the mailroom at DCC which resulted in Fatir being denied the third book. After the error was corrected the

mailroom notified Fatir that he was entitled to receive the third book.

5. Fatir received no such notification from the mailroom. The "misunderstanding" was not "corrected" until Fatir himself wrote the mailroom, the Support Services Officer and, ultimately, this honorable court. The impression given by defendants – that they somehow recognized their error – is patently false. If not for Fatir's diligence in this matter, the book would have been destroyed as Support Services Officer Carol Powell threatened to do even after Fatir wrote her about the book.

6. The four points that should be met before a court issues a preliminary injunction are all met in this instance. (1) Plaintiffs are likely to succeed on the merits since there is no legitimate penological interest served in restricting prisoners to two or three books. In fact, such a restriction is at variance with the Department of Correction's stated purpose. During slavery, African captives were denied the right to read. Delaware's Department of Correction – which disproportionately holds descendants of those same Africans captive (often for offenses for which whites are placed on probation) – is continuing that same type of intellectual subjugation by denying its captives the right to read by limiting their reading material to two or three books. Should a prisoner possess a Bible and a dictionary he's already maxed out his book allotment. Such an official conspiracy to commit mental impoverishment and intellectual genocide is highly unlikely to be upheld by any court in the 21st Century.

7. Denial of this request for an injunction will result in irreparable harm to plaintiffs since – according to defendants – they possess two options: 1) send the book someone outside to prison[1] (still depriving the prisoner of the book) or 2) "donating" (by

---

[1] Because the Support Services Manager and the mailroom were too lazy or too inept to learn how to calculate various mailing rates, books sent from this prison have to be sent out first class mail, which forces

force, which makes for an adhesion contract) to the prison library and still denying the prisoner him or herself of the book. In the case of plaintiffs – who are serving life – in either case they will never have that book again and if they need to refer to it again they will be forced to purchase the entire book anew and suffer enforced "charity" again and again.

8. Granting the injunction will not harm defendants whatsoever, except for harming some of their egos since they have cultivating a strong belief in their own infallibility and the need to "win" at all costs while refusing to acknowledge the existence of any rights whatsoever own the part of their disenfranchised captives.

9. Granting the injunction is definitely in the public interest. Numerous studies have shown that only two things have a positive impact on recidivism: education and religion. It is in the public interest for prisoners to read and develop their minds – instead of hours upon hours of glaring mindlessly at the utter stupidity that hypnotizes them on television. Reading stimulates an interest in a wide range of topics, encourages education and provides avenues of expression and achievement of objectives beyond such things as violence, crime and street hustling. Moreover, any religious devotion can only be buttressed and sustained if some knowledge is incorporated into the religious life. As St. Paul himself once wrote, "In all thy getting, get understanding." He also wrote that "Understanding comes by reason." Understanding and reason cannot be attained if a seeker is denied books which can help him process and digest those areas of faith and devotion he seeks to better understand. Hence, it is unquestionably in the public interest

---

prisoners to pay several times the proper mailing rate should they choose to "donate" their books to people outside the prison. Such an arrangement adds insult to injury.

for this court to grant plaintiffs' request for an injunction to prohibit a restriction to a two (or three) book limit.

10. Since all four factors favor relief, this court should grant plaintiffs' request for an injunction. *See S & R Corporation v. Jiffy Lube International, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992).

11. DCC's restriction to two or three books fails to me the *Turner* standards in that the regulation is not reasonably related to a legitimate penological interest.

12. DOC's primary interest and lawful purpose is to "rehabilitate offenders to return them to the community as soon as is practicable." Returning illiterate, non-reading prisoners to the community is a recipe for disaster, although, sadly, that is what the Delaware Department of Correction has long been "hell-bent" upon doing.

13. There is (1) no valid, **rational** connection between the prison regulation and a neutral and legitimate government interest. For there to be a rational connection, defendants would have had to go through some type of reasoning process. Reasoning requires that inductive, inductive reasoning occur as well as decisions arrived at via use of the principles of logic. Moreover, some type of tests would have to be relied upon and both sides of any issue be tested and contemplated for a **rational** connection to be established. Absent that, defendants have failed to meet the *Turner* test.

14. There exist no alternative means of exercising the right in question. Giving away our books is not an alternative means. Moreover, it is not plaintiffs' burden to come up with an alternative means that burden rests upon defendants.

WHEREFORE, plaintiffs ask that this honorable court grant their Motion for a Temporary Restraining Order and/or a Preliminary Injunction.

Dated: July 21, 2008

                                                Respectfully submitted,

                                                Amir Fatir

                                                Warren Wyant

                                                Donald Boyer (cannot sign)

## Certificate of Service

I, <u>AMIR FATIR</u>, hereby certify that I have served a true and correct cop(ies) of the attached: <u>Plaintiffs Reply to Defendants Opp to TRO</u> upon the following parties/person (s):

TO: <u>Erika Tross, Esq.</u>
<u>Dep. of Justice</u>
<u>820 N. French St.,</u>
<u>Wilm., DE 19801</u>

TO: _____

TO: _____

TO: _____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United States Mail at the Delaware Correctional Center, Smyrna, DE 19977.

On this <u>23rd</u> day of <u>July</u>, 200<u>8</u>

I/M Amir Fatir
SBI# 132616   UNIT W
JAMES T. VAUGHN CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

Clerk
U.S. District Court
844 N. King St. Lockbox 18
Wilm. DE 19801

U.S.M.S. X-RAY

WILMINGTON
MAILED FROM ZIP CODE
$00.17