IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMIR FATIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  06-694-GMS |
| | ) | |
| COMMISSIONER STANLEY TAYLOR, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM

### I.    INTRODUCTION

On November 15, 2006, Plaintiff Amir Fatir brought this lawsuit against current and former Delaware DOC employees Stanley Taylor, David Pierce, Janice Henry, James Satterfield, and Ronald Pawlowski (collectively the "Defendants").  (D.I. 10.)  Mr. Fatir asserts Eighth Amendment claims related to the inhumane conditions of confinement under 42 U.S.C. § 1983. *Id.* On February 6, 2015, Mr. Fatir added Defendants Joyce Talley, Jerry Platt, and Terry Yoder to the existing claims in a Fourth Amended Complaint.  (D.I. 379.)

Trial was held from July 6 to July 9, 2015.  (D.I. 15-18.)  At trial, both parties moved for judgment as a matter of law ("JMOL") pursuant to Rule 50(a) of the Federal Rules of Civil Procedure on a number of grounds. (Tr. 479-493; 493:2-10.)  The court denied the parties' motions.  On July 9, 2015, the jury returned a unanimous verdict in favor of the defendants. (D.I. 412.)  Judgment was entered in favor of the defendants on July 10, 2015.  (D.I. 413.) Presently before the court are the parties' post-trial motions.  (D.I. 419, 420, 421, 422.)  Having

1

considered the entire record in this case, the substantial evidence in the record, the parties' post-trial submissions, and the applicable law, the court will deny all the parties' post-trial motions. The court's reasoning follows.

## III.   STANDARD OF REVIEW

Fatir's motions assert that he is entitled to judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure or, alternatively, that he is entitled to a new trial pursuant to Rule 59 or Rule 60(b).

### A.   Renewed JMOL Motions

In order to grant a renewed motion for judgment as a matter of law following a jury trial and verdict, the court must determine that the jury's findings, "presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)). "Substantial evidence" is defined as "such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp.*, 732 F.2d at 893. "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citing *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992)). "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube*, 4 F.3d at 1166

2

(quoting *Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978)).

### B.     New Trial

Pursuant to Federal Rule of Civil Procedure 59, a court may grant a new trial "for any of the reasons for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  The decision to grant or deny a new trial is within the sound discretion of the trial court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).  In making this determination, the trial judge should consider the overall setting of the trial, the character of the evidence, and the complexity or simplicity of the legal principles which the jury had to apply to the facts.  *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 89 (3d Cir. 1960).  Unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner.  *Allied Chem. Corp.,* 449 U.S. at 36.  A court should grant a new trial in a jury case, however, only if "the verdict was against the weight of the evidence . . . [and] a miscarriage of justice would result if the verdict were to stand." *Williamson v. Conrail*, 926 F.2d 1344, 1352 (3d Cir. 1991).

Similarly, Federal Rule of Civil Procedure 60 permits a court to grant a new trial due to "fraud . . . , misrepresentation, or other misconduct by an adverse party."  Fed. R. Civ. P. 60(b)(3); *see Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 384-85 (3d Cir. 1996).  In order to prevail on a Rule 60 motion, the movant must show that the adverse party engaged in fraud or other misconduct, and this conduct prevented the movant from fully and fairly presenting his case.  *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983).  Additionally, the movant must demonstrate that the fraud or misrepresentation was material to the outcome of the case.  *Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73 (3d Cir. 1985).  Fraud or misrepresentation

3

must be proved by clear and convincing evidence.  *See Brown v. Pennsylvania R.R. Co.*, 282

F.2d 522, 527 (3d Cir. 1960).

## IV.    DISCUSSION

### A.    Deliberate Indifference Claims

The issue before the court is whether the jury's finding of no deliberate indifference was

supported by substantial evidence.  An Eighth Amendment claim against prison officials must

meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and

(2) the prison official must have been deliberately indifferent to the inmate's health or safety.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   Under the first prong, the plaintiff must

demonstrate that he has suffered a "sufficiently serious" constitutional deprivation.  *Id.*  This

means that a prison official's act or omission must result in the denial of "the minimal civilized

measure of life's necessities." *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347

(1981)).  Under the second prong, a prison official "must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Farmer*, 511 U.S. at 837.  However, "an Eighth Amendment claimant need not show

that a prison official acted or failed to act believing that harm actually would befall an inmate; it

is enough that the official acted or failed to act despite his knowledge of a substantial risk of

serious harm."  *Id.* at 842.  Ultimately, "[a] totality of the circumstances test must be applied to

determine whether the conditions of confinement constitute cruel and unusual punishment."

*Tillery v. Owens*, 907 F.2d 418, 426 (3d Cir. 1990).

### (1) Conditions in D-Building Sufficiently Serious

Fatir argues that the trial evidence proves as a matter of law that that the conditions in D-

4

Building were objectively, sufficiently serious and that this evidence was uncontested. (D.I. 420 at 17.)  Specifically, he points to evidence of contaminated water (Tr. 158:2-13, 18-20, 158:23-159:2, 159:3-6), a lack of ventilation and dirty air (Tr. 159:23-25), soiled mattresses that had bodily fluid stains (Tr. 165:3-4, 7-9), overheated cells (Tr. 163:3-4, 7-11, 12-20, 21-24), overcrowding (Tr. 161:10-11, 14-22; 357:6-11), extended periods of confinement in the cell (Tr. 161:12-13; 444:23-445:2; 162:4-6, 12-17), dirty mattresses (15:34:49-35:09), and roach infestation (14:43:59).  Mr. Fatir was also forced to share cells with inmates having communicable diseases and mental illness, and was at one point stabbed by a mentally ill cellmate.  (Tr. 185:7-186:8; PX-46.)  Finally, the parties stipulated that there was constantly mold in the showers that went unaddressed.  (D.I. 393, Ex. 1 at ¶ 24).  Fatir asserts that these conditions do not constitute mere deprivation of luxury or comfort, but deprivation of minimum necessities of life.  Additionally, Fatir argues that the length of time during which he suffered from these conditions amplifies the degree of deprivation.  (D.I. 420 at 21.)

Defendants respond that the conditions in D-Building were not inhumane.  They argue that there was conflicting evidence as to whether conditions rose to the level of causing a serious deprivation.  (D.I. 421 at 13-18.)  Ultimately, they point out that faced with conflicting evidence about the prison conditions, a reasonable jury could have rejected evidence suggesting that the conditions were sufficiently serious.  *Id.* at 17-18.

### 2.    Defendants knew about the conditions in D-Building

Fatir argues that the trial evidence proves as a matter of law that Defendants knew about the conditions in D Building.  (D.I. at 20.)  Fatir and other inmates notified Defendants of the conditions in D-Building so those problems could be addressed.  Mr. Fatir spoke to Mr.

Pawlowski, Mr. Satterfield, Ms. Henry and Mr. Pierce about each of the conditions. (Tr. 169:14-173:18.) Mr. Fatir and other inmates wrote letters to officials. (Tr. 168:8-13; PX-17.) Mr. Fatir coordinated a letter writing campaign to the top prison officials. (Tr. 168:14-19, 187:18-188:2.) Additionally, Mr. Fatir and other inmates filed grievances related to the problems in D Building. (Tr. 168:20-25; 190:11-191:12.) Finally, various prison accreditation standards suggested that D-Building was not meeting minimum standards for crowding. (Tr. 357:6-11.)

Yet, Fatir argues, the Defendants did not address these issues. For example, Fatir asserts that the Defendants kept performing the same ineffectual actions to redress the mold, knowing that they would not remedy the problem. (D.I. 420 at 12.) Fatir argues that this evidence proves, as a matter of law, that Defendants were deliberately indifferent to the conditions in D-Building. (D.I. at 22.)

The Defendants respond that under the deliberate indifference standard, Fatir must show that the defendants believed the conditions posed an unreasonable risk of serious damage. (D.I. at 16.) They argue that there was conflicting evidence as to whether the officials knew that conditions rose to the level of causing serious harm. (D.I. 421 at 13.) Second, defendants argue that the evidence demonstrated that the Defendants did not ignore the conditions, but discussed solutions, solicited funding, submitted work orders, and used available means to remedy the problem. (Tr. 439:3-442:2; 446:3-453:13.) In addition, the evidence at trial suggested there was confusion over whose responsibility it was to address the conditions at issue. Defendants Henry, Pawlowski, and Satterfield all testified that cleaning up mold issues was a maintenance issue. (Tr. 217:21-23; 247:22-24; 285:1-3.) In contrast, Defendants Talley, Platt, and Yoder all testified that they believed that remedying the mold issues was a housekeeping or janitorial issue,

6

not a maintenance issue. (Tr. 341:18-19; 333:8-11; 307:18-21.) While Fatir viewed this evidence as Defendants shirking their responsibility, the defendants argue that it was not clear whose responsibility it ultimately was to address the mold and other conditions.

The court must agree with Defendants that a reasonable jury could have concluded that Fatir did not meet the deliberate indifference standard.[1]  A reasonable jury could have found that the conditions while uncomfortable, did not create a substantial risk of harm nor deprive Fatir of "the minimal civilized measure of life's necessities." *Id.* at 834 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)).  "[T]he Constitution does not mandate comfortable prisons, and prisons ... [that] house persons convicted of serious crimes, cannot be free of discomfort." *Chapman,* 452 U.S. at 349.  *See also Peterkin,* 661 F. Supp. at 907 (undesirable or uncomfortable conditions are insufficient to support a cruel and unusual punishment claim). Fatir argues that this case is different from other cases where a deliberate indifference claim was unsubstantiated because of the combined impact of multiple conditions.  (D.I. 422 at 10). However, the totality of the circumstances analysis is one that this court believes a jury is well-equipped to make.  The court will not substitute its view for that of the jury where a reasonable decision has been reached.  Additionally, even if the jury found that the conditions in this case

---

[1] The court feels constrained to comment further on its "agreement" with Defendants. As it typically does, after a verdict, the court met with the members of the jury to express its gratitude for their service. It is worth noting that during this meeting, the jury expressed significant frustration with the evidence it heard regarding the prison conditions which occasioned this trial. The source of their frustration was an insufficient factual record upon which to base a finding of deliberate indifference. The young lawyers who took on the representation of Mr. Fatir should not view this comment as criticism of their representation. To the contrary, these attorneys did and have performed in the best traditions of the Bar throughout the course of their involvement in this action. Rather, the message the jury asked that the court convey to the parties upon returning to the courtroom was that while the facts they found did not merit a verdict in Mr. Fatir's favor – they were deeply disturbed by the evidence they heard during the course of the trial concerning the conditions at the prison facility in question. The court believes this was an understandable expression of concern with the manner in which their fellow citizens, albeit inmates serving time, were being made to live and the limitations on their ability under the law to do anything about it. Put simply, this was an imminently reasonable jury that did not allow their emotions to cause them to venture from the path of their sworn duty.

were sufficiently serious, it still could have found that the individual defendants were not aware of the substantial risk of serious harm or did not have the authority or funding to provide redress. In conclusion, the court will not grant judgment as a matter of law nor will the court grant a new trial in this case where the verdict was not against the weight of the evidence. *Williamson v. Conrail*, 926 F.2d 1344, 1352 (3d Cir. 1991).

### B.    Defendants' Reliance on Impermissible Arguments and Evidence

Fatir argues that that Defendants' attorney conduct unfairly influenced the verdict. First, Fatir argues that the Defendants' Opening Statement contained gross misstatements of the law and other inappropriate commentary, including the inaccurate statement that "a cruel and unusual punishment claim . . . is usually done in the context of, say, torture," (Tr. 121:21-122:2.) Fatir also objects to several of the Defendants' attorney comments as prejudicial including that the VCC is funded by taxpayer money (Tr. 123:4-6; 458-16-23), that bleach was not used because of homosexual activity fights and assaults (Tr. 238:18-239:11), and that Mr. Fatir is "accommodated for Ramadan." (Tr. 126:16-17.) Next, Fatir argues that evidence of a lack of medical injury was inadmissible (Tr. 194:18-197:25). Finally, Fatir objects to testimony that there was not a mold problem in the D-Building showers (Tr. 289:21-23), when the parties stipulated that the D-Building showers had a mold problem. (D.I. 393, Ex. 1 at ¶ 24.) The Defense responds that these comments were not improperly motivated and that any prejudice was subsequently corrected through jury instructions. (D.I. 421 at 20-25.)

Here, the court cannot conclude that any of these statements was material to the outcome of the case. *Bandai Am. Inc. v. Bally Midway Mfg. Co.*, 775 F.2d 70, 73 (3d Cir. 1985). Indeed, the court delivered timely curative instructions sufficient to remediate any claimed prejudice.

8

(Tr. 149:6-18, 501:5-10.)  Thus, there is no basis for a new trial in this case.

## V.   CONCLUSION

For the reasons stated above, the court will deny all of the outstanding post-trial motions.

Dated: December 28, 2015

UNITED STATES DISTRICT JUDGE